IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS F. FAY                              ) | |
|            Plaintiff,           ) | |
| v.                                         ) | Civil No. 1:05CV01209 |
| STEVEN R. PERLES,                          ) | |
|            and                  ) | |
| GREENBERG TAURIG, LLP,                     ) | |
|            Defendants.          ) | |

**MEMORANDUM OF LAW IN SUPPPORT OF DEFENDANT PERLES'
MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS
OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT**

Defendant, Steven R. Perles ("Mr. Perles"), by and through his undersigned counsel, and pursuant to Rules 9(b), 12(b), 17(a), and 56 of the Federal Rules of Civil Procedure, moves for summary judgment as to the claims set forth in Plaintiff's Complaint or, alternatively, to dismiss the Complaint and in support thereof states as follows:

**I.      STATEMENT OF UNDISPUTED FACTS**

    **A.      Perles And Fay Partnership.**

Mr. Perles operates his own law practice known as the Perles Law Firm, P.C., located at 1146 19th Street, N.W., Washington, D.C. 20036. Mr. Perles represents the victims of terrorist attacks and other international outlaw conduct in lawsuits against foreign governments who have provided material support to the perpetrators of such conduct. In 1996, Mr. Perles was successful in persuading Congress to pass new

legislation under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605, to allow the victims of terrorist attacks to file suit in federal courts in the United States against foreign governments that sponsor and/or provide any form of assistance to facilitate acts of terrorism against American citizens abroad.

To assist Mr. Perles in representing persons qualified to the bring suit under FSIA, he retained the professional services of Mr. Fay to handle the intricate discovery aspects of those cases. At that time, Mr. Fay operated his own law practice in the District of Columbia known as Thomas F. Fay, P.C. (*See* Martindale Hubbell Listing, attached hereto as **Exhibit A**).[1] In that regard, the Perles and Fay law practices entered into a partnership agreement for the limited purpose of prosecuting claims under FSIA and labeled their partnership agreement "Fay and Perles, FSIA Litigation." On February 26, 2001, the Partnership Agreement ("Agreement") was reduced to writing. (*See* Partnership Agreement, attached hereto as **Exhibit B**). The partnership leased space at 501 G Street, N.W., Washington, D.C. 20001, where it established its central business location.[2] Mr. Fay currently maintains his law practice at that address.[3]

The Agreement was mutually advantageous for both law practices. Mr. Perles' primary area of expertise involved developing creative ways to bring and maintain lawsuits against foreign governments that aided and abetted terrorist attacks against American citizens abroad. Mr. Fay, on the other hand, focused on the development of

---

[1] Since in or about 2001, Mr. Fay has interchangeably referred to his law practice as either "Thomas F. Fay, Attorney-at-Law," or "Thomas F. Fay, P.A." Under either label, Mr. Fay has always maintained his law office in the District of Columbia where it operates today.

[2] Due to the inherently sensitive subject matter of the types of cases that Messrs. Perles and Fay handled in connection with lawsuits brought under FSIA, the partnership receives its mail at 601 Pennsylvania Avenue, N.W., Washington, D.C. 20004.

[3] Although Mr. Perles' name remains on the lease for that office space, Mr. Fay, by fiat, has taken over the space for his law practice and pays all of its rent.

facts necessary to bring these cases to trial. The partnership was successful in obtaining judgments for the families of American victims of terrorism in the Middle East in two landmark cases: (1) *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998); and (2) *Eisenfeld and Duker v. Islamic Republic of Iran*, 172 F. Supp.2d 1 (D.D.C. 2000). The plaintiffs in the *Flatow* and *Eisenfeld and Duker* cases were awarded compensatory damages in the amounts of $22,513,200.00 and $27,161,002.00 respectively, with post judgment interest thereon.

Following the award of compensatory damages in the *Flatow* and *Eisenfeld and Duker* cases, Mr. Perles persuaded Congress to pass additional legislation allowing Steven R. Perles, P.C. and Thomas F. Fay, P.C., to submit to the U.S. Department of the Treasury ("Treasury Department") a Joint Application for Payment against the frozen assets of the Islamic Republic of Iran in connection with the judgments entered in those cases. (*See* Application for Payment to the Treasury Department, attached hereto as **Exhibit C**.). In January, 2001, the federal government made available to the plaintiffs in those cases the frozen funds of the Islamic Republic of Iran to satisfy those judgments.[4] Upon collection of these frozen assets, the contingent fees owed to Messrs. Perles and Fay were deposited into a trust account at Wachovia Bank held jointly in the names of the Perles and Fay law practices. After Messrs. Perles and Fay were reimbursed for their out-of-pocket expenses, and paid their co-equal shares of the contingent fees owed to them in connection with those cases, the remaining funds were disbursed to the plaintiffs.

---

[4] On January 4, 2001, funds equaling $49,674,222.00 were distributed into the partnership's trust account in connection with the judgments obtained in those cases.

3

B.   **The Kagy Litigation.**

In the Spring of 1996, Anne-Marie Kagy, a recent law school graduate, approached Mr. Perles about part-time employment opportunities with his law firm. Ms. Kagy had previously worked as a law clerk for Mr. Perles during law school to obtain credits towards her degree. Although Mr. Perles was unable to offer Ms. Kagy a set salary, he did offer to pay her $50.00 per hour plus an elevated rate in the event the partnership received fees in connection with the *Flatow* and *Eisenfeld and Duker* cases. (*See* Tr. Trans. at pp. 141, 154-156, attached hereto as **Exhibit D**).[5] For the next four years, Ms. Kagy assisted Messrs. Perles and Fay in prosecuting the *Flatow* case and, to a significantly lesser extent, the litigation involving the *Eisenfeld and Duker* cases.

Shortly after the partnership received the funds that it earned in connection with the *Flatow* and *Eisenfeld and Duker* cases, a dispute arose between Mr. Perles and Ms. Kagy over the compensation for her services in connection with those cases. Ms. Kagy demanded one-third of any net fee paid to Mr. Perles' law practice as a result of collection of contingent fees in those cases. Mr. Perles refused to pay Ms. Kagy the compensation that she demanded because no oral or written contract existed between them which required him to do so.

C.   **The Joint Account.**

In January, 2001, Mr. Perles' professional corporation retained the legal services of Steven M. Schneebaum, a principal at Patton Boggs, LLP, in connection with the money that Ms. Kagy claimed was owed to her for the legal services that she provided in the *Flatow* and *Eisenfeld and Duker* cases. At around that same time, Mr. Schneebaum

---

[5] Reference to the "Trial Transcript" means the January 21, 2003 trial in the *Kagy* litigation held before the Honorable Thomas P. Jackson.

met with Messrs. Perles and Fay to discuss trial strategy and the direction of the lawsuit. It was Mr. Schneebaum's understanding that Mr. Fay was going to be "extensively involved" in the lawsuit as the case progressed because Ms. Kagy attempted to assert an equitable lien on a share of the proceeds received by the partnership from the two cases. (*See* Schneebaum Aff. at ¶¶ 4-5, attached hereto as **Exhibit E**). Due to this concern, Messrs. Perles and Fay both discussed with Mr. Schneebaum how much money each of them should deposit in Patton Boggs, LLP's escrow account to cover legal fees and/or pay any judgment or settlement in connection with the *Kagy* litigation. Ultimately, Messrs. Perles and Fay jointly deposited $2,000,000.00 into the firm's escrow account. (*Id.* at ¶ 5). Messrs. Perles and Fay each signed the "Wire Transfer Instructions" authorizing the $2,000,000.00 transaction from their account at Wachovia Bank. (*See* Wire Transfer Instructions, attached hereto as **Exhibit F**).

As the Account Activity Report reveals, Messrs. Perles and Fay set aside $2,000,000.00 from the fees that they collected in the *Flatow* and *Eisenfeld and Duker* cases for two purposes: to cover Patton Boggs, LLP's legal fees and/or pay any potential judgment or settlement in connection with the *Kagy* litigation. (*See* Wachovia Bank Activity Report, attached hereto as **Exhibit G**). It was Mr. Schneebaum's understanding that Messrs. Perles and Fay had wired the funds to Patton Boggs, LLP's escrow account in pursuit of those objectives. (Schneebaum Aff. at ¶ 6).

At no time during the course of Patton Boggs, LLP's almost five (5) year representation of Mr. Perles, did Mr. Fay give that firm, or any of its attorneys, written or oral instructions concerning the use of the escrowed funds. (*Id.* at ¶ 7). Moreover, Mr. Fay never stated that the funds could not be applied to pay for the legal fees incurred in

5

connection with the *Kagy* litigation. (*Id.*). During the course of the *Kagy* litigation, Mr. Fay was an active participant virtually every step of the way. Mr. Fay had many discussions with Mr. Schneebaum concerning litigation strategy and trial tactics and ultimately testified at the trial of that proceeding. (*Id.*). At trial, Mr. Fay testified that he wanted to contribute $500,000.00 towards Ms. Kagy's fee demand because both partners had agreed to bear an equal share in the fees owed to experts, investigators, and attorneys who provided professional services in connection with their terrorism cases. (Tr. Trans. at pp. 96, 104). Consistent with this agreement, Mr. Fay agreed to bear his co-equal share of the legal fees incurred in connection with the *Kagy* litigation and wired his co-equal share of $1,000,000.00 to Patton Boggs, LLP's escrow account.

The Honorable Alan Kay, in a August 29, 2005 Memorandum Opinion ("Opinion") issued in the matter known as *Perles, P.C. v. Kagy*, Civil No. 01-0105 (AK), also found this understanding to be the case. (*See* Opinion at pp. 9-10, attached hereto as **Exhibit H**). In that Opinion, Judge Kay understood Messrs. Perles and Fay to have jointly set aside the $2,000,000.00 in the law firm's escrow account for the purpose of paying Ms. Kagy any amount to which the Court determined her to be entitled. (*Id.* at p. 9). Judge Kay also determined that Mr. Fay had "voluntarily contributed" his co-equal share of the escrowed proceeds "… knowing and intending it to be used as security for Ms. Kagy's assertion of an 'attorney's lien' against $2,000,000.00 of the net proceeds" from the *Flatow* and *Eisenfeld and Duker* cases. (*Id.*). Therefore, Judge Kay found it "absurd" for Mr. Fay to complain, nearly five years later and after judgment had been entered in that suit in favor of Ms. Kagy, that he did not know that his share of these escrowed proceeds might be used to pay Ms. Kagy. (*Id.* at pp. 9-10).

In October, 2004, Mr. Schneebaum moved from Patton Boggs, LLP, to Greenberg Traurig, LLP. Mr. Perles decided that he wanted Mr. Schneebaum to continue working on the *Kagy* litigation because of his investment of time in that case and the posture of the lawsuit. In January, 2005, the balance of the escrow proceeds was transferred from Patton Boggs, LLP (after deduction of that firm's legal fees), to Greenberg Traurig, LLP, into escrow account no. 2101-970278. (*Id.* at ¶ 9). The balance transferred to Greenberg Traurig, LLP, represents the entire $2,000,000.00 initially deposited by Messrs. Perles and Fay into Patton Boggs, LLP's escrow account less payment of legal fees. (*Id.*). Since the transfer of these funds, the total amount withdrawn to pay Greenberg Traurig, LLP's legal fees is approximately $7,500.00. (*Id.* at ¶ 10). To date, approximately $432,000.00 has been withdrawn from the two firms' escrow accounts to pay for the legal fees incurred in the *Kagy* litigation.

## II.  SUMMARY OF ALLEGATIONS

Thomas F. Fay filed a complaint against Mr. Perles in connection with his alleged misuse of $2,000,000.00 held jointly in the name of the Perles and Fay law practices at escrow accounts maintained at two law firms.[6] Mr. Fay's complaint alleges claims of unjust enrichment, conversion of funds, and "money had and received"[7] against both Mr. Perles and the law firm of Greenberg Traurig, LLP. The factual basis underlying Mr.

---

[6] Plaintiff's counsel, Mr. John W. Karr, needs to explain to this Court his reason(s) for representing Mr. Fay in the present lawsuit. Much like Ms. Kagy, Mr. Karr works for the Perles/Fay Partnership in the matter known as *Peterson, et al. v. The Islamic Republic of Iran*, Civil No. 1:01CV02094 (RCL) (D.D.C. 2001) ("*Peterson* litigation"). In the *Peterson* litigation, Mr. Karr is responsible for the development of facts related to the damages suffered by twelve (12) families of deceased Marines who were the victims of terrorist attacks sponsored by that foreign government. Pursuant to the Perles/Fay Partnership Agreement, Mr. Perles is responsible for his co-equal share of the fee earned by Mr. Karr in that litigation. Accordingly, Mr. Karr may be called as a fact witness in this litigation to testify as to the agreement between the partners to share equally in the fees and expenses of the professionals that they retain to perform various services.

[7] District of Columbia law does not recognize a cause of action for "money had and received."

Fay's claims is that, without his approval, disbursements were made from the escrow accounts at both Patton Boggs, LLP, and Greenberg Traurig, LLP, to cover Mr. Perles' legal expenses with these firms in connection with the *Kagy* litigation. Mr. Fay further alleges that after a judgment was entered in that action in favor of the defendant/counterclaimant, his co-equal share of the $2,000,000.00 should have been remitted to him. Accordingly, Mr. Fay seeks to recover $1,000,000.00 in compensatory damages from these defendants and $1,000,000.00 in punitive damages.

## III.   LEGAL STANDARD

### A.   Motion For Summary Judgment.

Under Fed. R. Civ. P. 56, a district court is authorized to grant summary judgment where "… there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate in circumstances where "… the evidence is such that a reasonable jury could not return a verdict for the non-moving party." *Id.* In deciding a motion for summary judgment, the district court views the evidence in the light most favorable to the non-moving party. *See Washington Post Co. v. U.S. Dept. Of Health And Human Services, et al.*, 865 F.2d 320, 324 (D.C. Cir. 1989). To stave-off a properly presented motion for summary judgment, the non-moving party may not rest upon the mere allegations in his pleadings, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 250. Only disputes over facts which might affect the outcome of the suit will preclude entry of summary judgment. *Id.* at 248.

### B.   Motion To Dismiss.

####   1.   Failure To State A Claim Upon Which Relief Can Be Granted.

Pursuant to Fed. R. Civ. P. 12(b)(6), a court will dismiss a complaint when a plaintiff can prove no set of facts in support of his claims. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. 1994). A court need not accept inferences unsupported by the facts set out in the complaint nor legal conclusions cast in the form of factual allegations. *Id.* A real-party-in-interest defense qualifies as a Rule 12(b)(6) motion because it states, in effect, that due to the fact that the plaintiff is not the person entitled to bring the action, he has "failed to state a claim upon which relief can be granted." *Whelan v. Abell, et al.*, 953 F.2d 663, 672 (D.C. Cir 1992).

####   2.   Lack of Diversity Jurisdiction.

Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction over the subject matter of the lawsuit. *See Grand Lodge at Fraternal Order of Police v. Ashcroft*, 185 F. Supp.2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). Subject matter jurisdiction will not exist unless the amount in controversy exceeds $75,000.00 and the parties are diverse in citizenship. 28 U.S.C. § 1332(a). For the purpose of diversity jurisdiction, "domicile is determined by two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984). In resolving a 12(b)(1) motion, courts closely scrutinize the factual allegations contained in the plaintiff's complaint. *Id.* at 13-14. Under that analysis, a court may consider material outside of the complaint to determine whether it has jurisdiction to hear the case. *See*

*EEOC v. St. Francis Xavier Parochial Schools*, 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997).

IV.   **LEGAL ARGUMENT**

   A.   **Judge Kay Made A Final Determination In The *Kagy* Litigation That Plaintiff Had Every Opportunity To Litigate The Issues And Claims Which He Now Raises In The Present Suit And, Therefore, The Doctrines Of Collateral Estoppel And Res Judicata Bar His Claims.**

Under the doctrine of collateral estoppel, once an issue is "actually and necessarily litigated by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action including a party or [an active non-party] to the prior litigation." *Marine Power And Equipment, Inc. v. United States,* 594 F. Supp. 997, 1003 (D.D.C. 1984) (quoting *Montana v. United States,* 440 U.S. 147, 153 (1979)). Likewise, the doctrine of res judicata "…precludes the parties or their privies from relitigating issues ***that were or could have been raised*** in that action" after a final judgment on the merits has been entered. *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added).

The interests advanced by both doctrines are also implicated when non-parties become involved in litigation "in which they have a direct financial or proprietary interest" if they "then seek to redetermine issues previously resolved." *Montana*, 440 U.S. at 154. In *Montana*, the Supreme Court went so far as to hold that a non-party who assists "***…in the prosecution or defense of an action in aid of some interest of his own…is as much bound…as he would be had he been a party to the record.***" 440 U.S. at 154 (emphasis added). This Court has applied this reasoning with force in circumstances where a non-party has failed to intervene in an action directly challenging his own interests. *See, e.g., Marine Power And Equipment, Inc., * 594 F. Supp. at 1003-04

10

(holding that a plaintiff was collaterally estopped from bringing a subsequent suit collaterally attacking issues and claims that could have been raised in a prior action, where he was aware that his interests in a contract were at stake in that action but chose not to intervene).

*Marine Power* is strikingly similar to the facts of this case and provides useful instruction. There, a plaintiff/contractor brought suit against the federal government for improperly setting aside its government contract award to the plaintiff to build ships for the Coast Guard. In a prior proceeding, plaintiff's chief competitor filed suit against the federal government contending that it should have received the award because its proposal, as opposed to plaintiff's proposal, adhered to the government's procurement requirements. Plaintiff was put on notice of that prior litigation but chose not to intervene even though its award was being directly challenged. However, plaintiff did assist the government in that litigation by providing affidavits, suggesting legal arguments, working on discovery matters, and attending all court proceedings. When plaintiff's award was set aside by this Court due to the government's failure to adhere to its procurement requirements, the plaintiff filed a second suit seeking injunctive relief. This Court found that the plaintiff was collaterally estopped from bringing suit because he had an opportunity to intervene in the prior litigation and raise the issues and claims which he was attempting to litigate in the second suit. In brief, the Court found that the plaintiff in *Marine Power* had "slept on its rights" in such a manner that it was precluded from seeking equitable relief in the subsequent action. *Id.* at 1002-03.

Applying these principles, Mr. Fay is barred from seeking any form of relief in this action because he chose not to intervene in the *Kagy* litigation even though he was an

11

active, non-party to that litigation.[8] As found by Judge Kay, Mr. Fay knew that his share of the escrowed proceeds was at risk. Mr. Fay was fully aware that Ms. Kagy had asserted a lien against the net proceeds paid to Messrs. Perles and Fay in connection with the terrorism cases. (Opinion at p. 9). However, Mr. Fay failed to take any action despite being put on notice of that litigation from its outset and provided every opportunity to intervene. Similar to the plaintiff in *Marine Power*, Mr. Fay actively participated in the *Kagy* litigation and assisted Mr. Perles "virtually every step of the way." (*Id.*). As found by Judge Kay, Mr. Fay voluntarily deposited $1,000,000.00 into the escrow account at Patton Boggs, LLP, in response to Ms. Kagy's assertion of a lien against the net proceeds. (*Id.* at p.10). Throughout the course of that litigation, Mr. Fay had many discussions with Mr. Perles' counsel concerning litigation strategy and trial tactics. (Schneebaum Aff. at ¶7). Mr. Fay was deposed in that litigation and testified as a witness at its trial. (*Id.*). Mr. Fay even testified at that trial that he wanted to contribute $500,000.00 toward Ms. Kagy's fee demand because both he and Mr. Perles had always agreed to bear a co-equal share in the fees owed to professionals who provided services in connection with their terrorism cases. (Tr. Trans. at pp. 96, 104-105).[9]

Under any analysis, Mr. Fay was intimately involved in the *Kagy* litigation because he had a pecuniary interest in seeing that it resolved in Mr. Perles' favor. Instead

---

[8] On April 20, 2005, the Court entered a final judgment in the *Kagy* litigation. On June 20, 2005, precisely two months after judgment had been entered in the *Kagy* matter, Mr. Fay filed a motion to intervene in that litigation asserting an interest in his co-equal share of the $2,000,000.00 and opposing the use of the trust account as an alternative to posting a supersedeas bond. By Order dated August 29, 2005, Judge Kay denied Mr. Fay's motion to intervene finding it to be untimely and "absurd."

[9] Fearing that he might be a defendant in a potential lawsuit filed by Ms. Kagy, Mr. Fay scheduled a meeting with her to discuss a settlement of her fee demand. (Tr. Trans. at p. 75). Mr. Fay even engaged in discussions with Mr. Perles concerning the monetary value of her services which the partners determined was between $75,000.00 and $125,000.00. (*Id.* at pp. 76, 79). The partners were prepared to offer her a "multiple" of that figure to settle her fee demand. (*Id.* at pp.79-80).

of intervening and protecting his interests, Mr. Fay chose to slumber on his rights. As Judge Kay stated, "*[F]or Fay to complain, nearly five years later and after judgment has been entered, that he wasn't aware that this interest was precariously situated **is absurd**.*" (Opinion at p. 10) (emphasis added). Accordingly, Mr. Fay is bound by Judge Kay's ruling that Mr. Perles can deposit into the registry of the Court the amount necessary to pay Ms. Kagy's judgment from the trust account. (*Id.*).

In that regard, Mr. Fay is collaterally estopped from litigating the issue of Mr. Perles' use of the escrowed proceeds to pay the legal fees incurred in connection with the *Kagy* litigation or to satisfy the judgment entered therein. More importantly, the doctrine of res judicata bars Mr. Fay from relitigating this issue because *he could have raised it* in that action but failed to do so. *Marine Power And Equipment Co., Inc.*, 594 F. Supp. at 1004-05 (emphasis added). Thus, Mr. Perles is entitled to summary judgment as to Mr. Fay's claims because there exists no genuine issue of material fact in dispute as to whether Mr. Fay's claims have been rendered moot based on the findings of fact set forth in Judge Kay's ruling.

**B.    Plaintiff's Complaint Should Be Dismissed Because Mr. Fay Is Not The Real Party In Interest Entitled To Bring Suit.**

Rule 17(a) requires that "every action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). In other words, the action must be bought by the person entitled to enforce the asserted right. *See Whelan, supra*. There is a standing requirement associated with this doctrine because the ultimate inquiry is whether a plaintiff has a personal stake in the controversy. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim on the legal rights and interests of third parties.").

This longstanding doctrine has been applied with force by this Court where parties attempt to disregard the corporate form and bring suit in their individual capacities. *See, e.g.*, *Whelan*, 953 F.2d at 672 (affirming lower court's ruling that the principals of a corporation could not bring suit in their individual capacities against some investors based on the lost value of their investments because the investors' fiduciary duties were owed to the company and not to the principals); *Lans v. Gateway 2000, Inc.*, 84 F. Supp.2d 112 (D.D.C. 1992) (finding that the plaintiff lacked standing to maintain a patent infringement action against the defendants in his personal capacity because although he was the sole shareholder and managing director of his corporation, which owned the patent, he and the corporation were not one and the same person).  In essence, District of Columbia law does not allow the option of "reverse piercing" the corporate veil when a plaintiff is disadvantaged by the use of the corporate form. *Id.* at 123.

Applying these principles, Mr. Fay's attempt to bring suit in his individual capacity against the defendants is fatally defective because he does not possess a personal stake in the outcome of this controversy.  The $2,000,000.00 deposited into Patton Boggs, LLP's escrow account was wired from a trust account at Wachovia Bank held jointly in the names of both professional corporations.  In fact, the money wired into this escrow account stems directly from the payments made by the Treasury Department to the Perles and Fay law practices as a result of their Joint Application for Payment arising out of the judgments entered in the *Flatow* and *Eisenfeld and Duker* cases.

Likewise, the $1,000,000.00 contribution from Mr. Fay's law practice came directly from this joint account.  Accordingly, if any claim exists for recovery of a portion of these proceeds, it must be asserted by the law practice which received, and

paid out, the $1,000,000.00 which is now in dispute. In short, Mr. Fay fails to grasp that he and his law practice are two distinct legal entities and that he lacks standing to prosecute this action on his own behalf. *See Lans*, 87 F. Supp.2d at 123 n.10 ("A corporation is an entity irrespective of, and entirely distinct from, the persons who own the stock…nor does the fact that one person owns all the stock, make him and the corporation the same person…"). Mr. Fay's present suit is tantamount to "reverse piercing" because he is attempting to dispense with his law practice's corporate status and bring suit in his own name in an effort to fabricate diversity of citizenship.

    **C.**    **This Court Lacks Subject Matter Jurisdiction To Hear This Action Because There Is Not Complete Diversity Between The Parties As They Are All Domiciled In The District Of Columbia.**

For the purpose of diversity jurisdiction, federal courts look to the domicile of the parties. *See Naegele v. Albers, et al.*, 355 F. Supp.2d 129, 134 (D.D.C. 2005). The issue of domicile is a mixed question of law and fact and involves a consideration of two factors: (1) physical presence in a state; and (2) an intent to remain there for an indefinite period of time. *See Prakash*, 727 F.2d at 1180; *Shafer v. Children's Hosp. Soc. of Los Angeles, Cal.*, 265 F.2d 107, 122 (D.C. Cir. 1959) ("Citizenship depends upon domicile, and, as domicile and residence are two separate things, it follows that citizenship is not determined by residence.").

In the present case, Mr. Fay has attempted to manufacture diversity of citizenship between the parties by bringing suit in his own name. For the reasons set forth in Section IV.B. of this Memorandum of Law, the law practice of Thomas F. Fay, P.A., and not Thomas F. Fay in his individual capacity, is the real party in interest entitled to maintain the present action. Moreover, regardless of how Mr. Fay labels his law practice, the

inescapable fact remains that he has always maintained his law practice in the District of Columbia.

In addition, the partnership formed between the Perles and Fay law practices established its central business location at the very address where Mr. Fay currently practices law – 501 G Street, N.W., Washington, D.C. 20001.  The escrowed funds at issue stem directly from the Joint Application for Payment submitted to the Treasury Department by the Perles and Fay law practices in connection with the judgments entered against the Islamic Republic of Iran in the *Flatow* and *Eisenfeld and Duker* cases.  The application for payment made by these firms led to the eventual payment by the Treasury Department into the two firms' joint account at Wachovia Bank.  In brief, the funds that Mr. Fay seeks to recover from the Defendants stem from the litigation work of the partnership, and to a lesser extent his law practice, both of which are domiciled and conduct business in the District of Columbia.

Furthermore, as Plaintiff concedes in his Complaint, "…the defendants are residents of the District of Columbia." (*See* Compl. at ¶ 1).  Mr. Perles lives at 1754 Kenyon Street, N.W., Washington, D.C. 20007 and has resided at that address since 1986.  In addition, Mr. Perles' law practice is also located in the District of Columbia.  Greenberg Traurig, LLP, is also a domiciliary of the District of Columbia because it is a law firm which maintains its principal place of business at 800 Connecticut Avenue, N.W., Washington, D.C. 20006.  Accordingly, this Court cannot exercise jurisdiction over the subject matter of this action because there is not complete diversity between the parties as they are all domiciled in the District of Columbia.

### D. Plaintiff's Complaint Fails To Satisfy The Pleading Requirements of Fed. R. Civ. P. 9(b).

Rule 9(b) of the Federal Rules of Civil Procedure requires that all allegations of fraud or mistake be "…stated with particularity."[10] Fed. R. Civ. P. 9(b). In addition, allegations which hint at fraud must be pled with specificity. *See, e.g., Vess v. Ciba-Geigy Corp., USA*, 317 F.2d 1097, 1107 (9th Cir. 2003) ("When an entire complaint, or an entire claim within a complaint, is grounded in fraud, and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim.").

Under each count in the Complaint, Plaintiff lumps the Defendants together and suggests that they have engaged in some unified course of fraudulent conduct to deprive him of his money. (Compl. at ¶ 8-9, 17-18). Such a manner of pleading is improper because a "complaint…may not rely upon blanket references to acts or omissions by all of the 'defendants.'" *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 522 n.7 (S.D.N.Y. 1977). The Federal Rules of Civil Procedure require plaintiffs to provide defendants with notice of the precise claims alleged against them so they can formulate a response. *See Vess*, 317 F.3d at 1106 (holding that Rule 9(b) demands that circumstances of fraud be "specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge…").

By grouping the Defendants together under each claim for relief set forth in the Complaint, and by failing to specify the particular role played by each Defendant in causing the alleged conduct, Mr. Fay falls far short of the pleading requirements imposed

---

[10] A Rule 9(b) defense is often raised in the context of a Rule 12(b)(6) motion to dismiss because it states, in essence, that due to the fact that a plaintiff has failed to allege claims with specificity, he has failed to state a claim upon which relief can be granted. *See Vess v. Ciba-Geigy Corp., USA*, 317 F.2d 1097, 1102-03 (9th Cir. 2003).

by Fed. R. Civ. P. 9(b).[11] *See Jacobson*, 445 F. Supp. at 522 n.7 (holding that grouping all defendants under a single cause of action is improper because "…for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged."). The necessary averments of "the who, what, when, where, and how" of the misconduct charged is completely absent from the Complaint. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Accordingly, the complete absence of particularity in Mr. Fay's Complaint fails to satisfy Rule 9(b) and, therefore, merits dismissal.

## V.     CONCLUSION

For all the reasons set forth above, Defendant Steven R. Perles respectfully requests this Court to enter summary judgment in his favor as to all of Plaintiff's claims or, in the alternative, to dismiss the Complaint.

Respectfully submitted,

BREGMAN, BERBERT, SCHWARTZ
& GILDAY, LLC

Date:  9-7-05

By:           /s/
Douglas M. Bregman, 218354
Edward P. Henneberry, 456202
7315 Wisconsin Avenue
Suite 800 West
Bethesda, Maryland 20814
(301) 656-2707
*Counsel for Defendant Steven R. Perles*

---

[11] Rule 9(b)'s particularity requirement applies to state law causes of action. *Vess*, 317 F.3d at 1103.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of September, 2005, a copy of the foregoing Memorandum of Law was served upon the following by first class mail, postage prepaid, and by electronic mail:

> John W. Karr, Esq.
> Karr & Allison
> Suite 300
> 1920 N Street, N.W.
> Washington, D.C. 20036
> *Counsel for Plaintiff*
>
> Eric C. Rowe, Esq.
> Geoffrey J. Greeves, Esq.
> Greenberg Traurig, LLP
> 800 Connecticut Avenue, N.W.
> Washington, D.C. 20006
> *Counsel for Defendant Greenberg Traurig, LLP*

_____/s/_____
Edward P. Henneberry