## AFFIDAVIT OF STEVEN M. SCHNEEBAUM

STEVEN M. SCHNEEBAUM, being duly sworn, deposes and says:

1. I am a Member of the Bar of the District of Columbia Court of Appeals, having been admitted to practice on May 31, 1978. I am currently in private practice in the District of Columbia, as a shareholder in the firm of Greenberg Traurig LLP.

2. Sometime in December 2000/January 2001, I met with Steven R. Perles, Esq., at the law offices of Patton Boggs LLP, a firm in which I was then a partner. Mr. Perles and his professional corporation decided to retain my services in connection with a dispute with Anne Marie Kagy, Esq.. The issue concerned monies that she claimed were owed to her relating to legal services that she had provided in two cases in which the Perles firm represented the families of American victims of terrorism in the Middle East: *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998), and *Eisenfeld and Duker v. Islamic Republic of Iran*, 172 F. Supp.2d 1 (D.D.C. 2000).

3. Mr. Perles explained to me, in one of our early meetings, that he had worked on these two cases as co-counsel with Thomas Fortune Fay, Esq. He told me that they had an agreement according to which each bore an equal share of all of the costs and expenses of the two cases, and each would receive an equal share of the ultimate distributions. I remember specifically that he spoke very warmly about his relationship with Mr. Fay, and said that neither had ever questioned any decision of the other about how these funds should be allocated, to whom, or in what amounts. He described their professional association as one of trust and mutual respect.

4. At some point around the time I was hired, I met with Mr. Fay and Mr. Perles together. I assumed that the purpose of this meeting was to establish a "comfort level" with Mr. Fay, since he was going to be involved extensively as the representation proceeded.


EXHIBIT E

5. Ms. Kagy's attorney had purported to assert on her behalf an "equitable lien" on a share of the proceeds of the terrorism cases. On or about January 17, 2001, $2 million was wired to Patton Boggs, LLP's escrow account. In my view, $2 million was substantially more than any entitlement that Ms. Kagy might be found to have to the fees paid in the terrorism cases. I later learned that the money came from an account at Wachovia Bank held jointly in the names of the Perles and Fay practices, and that both Messrs. Perles and Fay had signed the "Wire Transfer Instructions" authorizing the transaction.

6. It was my understanding that the funds were to be held in escrow for two purposes: to pay any judgment or settlement of the case that we filed against Ms. Kagy, *Perles v. Kagy*, Civil No. 1:01CV105 (AK) ("the *Kagy* litigation"), and also to pay for my legal services in connection with the *Kagy* litigation.

7. My clients in the *Kagy* litigation were Mr. Perles and his law firm. I had many conversations about litigation strategy and tactics with Mr. Fay, and he was ultimately deposed and then testified at the trial before Judge Jackson. At no time did Mr. Fay give me written or oral instructions regarding the escrowed funds. Nor, to my knowledge, did he ever object to the use of the funds to pay for legal fees incurred in connection with the *Kagy* litigation.

8. During the course of the *Kagy* litigation, Mr. Perles approved disbursement of approximately $425,000 to pay legal fees. Approximately $375,000 of that amount was paid to Patton Boggs, and the remainder was paid to David Ross Rosenfeld, Esq., of Alexandria, Virginia, who assisted on a number of aspects of the case. No funds from the escrow account were ever disbursed directly to Mr. Perles.

9. I moved from Patton Boggs to Greenberg Traurig in October 2004, and Mr. Perles decided he wanted me to continue to work on his case. In January, 2005, the balance of the Patton Boggs escrow funds were transferred to Greenberg Traurig, LLP, escrow

account no. 2101-970278. This balance represented the original $2 million, plus the interest that had accrued, less the legal fees and expenses that were paid with Mr. Perles's express approval.

10. Since the transfer of these funds, the total amount withdrawn to pay legal fees of Greenberg Traurig has been some $7,500. The current balance in the account is slightly more than $1.6 million.

11. In May of this year, Magistrate Judge Kay entered a final judgment in the *Kagy* litigation, in favor of Ms. Kagy and against Mr. Perles, in the amount of $1,387,001.44, inclusive of interest through April 20, 2005. That judgment is now on appeal, and Ms. Kagy has cross-appealed. The balance in the escrow account is, therefore, more than adequate to cover the judgment, assuming that it is affirmed.

12. To date, approximately $432,000.00 has been withdrawn from the escrow account to pay for various legal expenses incurred with the *Kagy* litigation.

_____
Steven M. Schneebaum

SUBSCRIBED AND SWORN TO before me this 17th day of August 2005.

_____
Notary Public

JEAN C. McGRUDER-JACKSON
Notary Public, District of Columbia
My Commission Expires May 31, 2009

3