UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS FORTUNE FAY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STEVEN R. PERLES, )<br>)<br>and )<br>)<br>GREENBERG TRAURIG LLP, )<br>)<br>Defendants. )<br>) | Case Number 1:05CV01209 (PLF) |

**MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, Defendant Greenberg Traurig LLP respectfully moves that judgment be entered in its favor on the pleadings and that the action against it be dismissed with prejudice. Based upon the pleadings themselves and upon the Order and Memorandum Opinion of the Honorable United States Magistrate Judge Alan Kay dated August 29, 2005, denying Plaintiff's motion to intervene in *Perles v. Kagy*, 1:01CV0105 (Exhibit 1), the claims asserted in this action against Greenberg Traurig are barred by res judicata, and the Complaint fails to state a claim upon which relief can be granted.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**STATEMENT OF FACTS**

As set forth in the Complaint, the primary dispute in this case is between Plaintiff Thomas Fortune Fay ("Mr. Fay") and Defendant Steven R. Perles ("Mr. Perles"). Mr. Fay asserts that he and Mr. Perles acted as "equal share partners" in the prosecution of certain

lawsuits seeking recovery for state-sponsored terrorism (Complaint, first paragraph # 3),[1] that he and Mr. Perles were successful in doing so, and that they obtained (and collected) damage awards in excess of $50 million in two of the cases. (Id., first paragraph # 4). Mr. Fay contends in this action that one of the expenses of these two cases must be wholly borne by Mr. Perles and not as an "equal share" partnership expense.

According to the Complaint, in December 2000, a third attorney who had worked on the cases, Ms. Anne Marie Kagy ("Ms. Kagy"), who is alleged to have been an employee of Mr. Perles, demanded a share of the multi-million dollar fee recovery and asserted a lien on the net proceeds of the judgments. (Id., first paragraph # 5, second paragraph # 3). In response to the assertion of a lien by Ms. Kagy, Mr. Perles hired Steven M. Schneebaum, Esq., then a partner at Patton Boggs, LLP, to defend Ms. Kagy's claim, and Mr. Fay and Mr. Perles jointly transferred the sum of $2,000,000 from "the Fay and Perles escrow account" to a Patton Boggs trust account on January 18, 2001. (Id., second paragraph # 4, second paragraph #5).

According to the Complaint, in January 2001, Mr. Perles brought a declaratory judgment action in this Court against Ms. Kagy to determine the amount owed to Ms. Kagy. (Id., second paragraph # 5). During the course of the *Kagy* litigation, Mr. Perles, through counsel, and with no objection from Mr. Fay, represented to the Court that the money in the Patton Boggs trust account had been set aside as security for Ms. Kagy's lien, a fact that was memorialized in at least two written orders of the District Court in the *Kagy* case, the first of which was entered one year and ten months <u>before</u> the money was paid into the Greenberg Traurig trust account. See Docket # 60 in *Perles v. Kagy*, 1:01CV0105, Decision and Order dated April 10, 2003 at 8 ("Perles has placed a portion of his fee in escrow with his current

---

[1] In the Complaint, there are two paragraphs numbered 3, 4, 5 and 9. These are referred to as the "first" and "second" respectively.

2

counsel from which she will be paid the amount she is adjudged to receive"); Docket # 135 in *Perles v. Kagy*, 1:01CV0105, Memorandum Opinion dated August 29, 2005, at 11 ("For nearly five years, the District Court has relied on [Mr. Perles'] assertion, uncontested by Fay, that $2 million had been set aside as security for Kagy's lien").

In October 2004, Mr. Schneebaum left the Patton Boggs firm and joined Greenberg Traurig, and on December 22, 2004, the balance of the money in the trust account was transferred to a Greenberg Traurig trust account. (Complaint, paragraph 7).[2]

On April 21, 2005, the Court entered judgment in favor of Ms. Kagy and against Mr. Perles in the approximate amount of $1.3 million. (Id., second paragraph # 5, paragraph # 6). Mr. Fay now contends that Ms. Kagy's share of the fee must be borne entirely by Mr. Perles, and was not a joint expense of the litigation.[3]

Shortly after judgment was entered, on May 19, 2005, Mr. Fay demanded immediate repayment of his "one-half" of the money in the trust account, which had been on deposit as security for Ms. Kagy's lien for more than four years. (Complaint, paragraph # 8, first

---

[2] The amount transferred was approximately $1.6 million. Prior to the transfer, Patton Boggs' fees and expenses in the *Kagy* litigation had been paid from the account at Mr. Perles' instruction.

[3] As proof that some of the expenses were not joint expenses, Mr. Fay recites in his Complaint that videographer Victor Holm was a contract employee of his firm (and not the Fay-Perles partnership) and that Mr. Fay paid Mr. Holm more than $2.6 million for work on the two cases involved in the *Kagy* matter. (Complaint, first paragraph # 5). At trial in the Kagy matter, however, Mr. Fay testified under oath that Mr. Holm had been paid only $200,000 for his work on the two matters, and that the remaining $2.4 million was compensation for work done on other cases. Exhibit 2, Excerpts from testimony of Thomas Fortune Fay, Transcript of Proceedings on January 21, 2003 [Docket # 48 in *Perles v. Kagy*, 1:01CV0105] at 96 ("For this case, I believe it was $200,000, but Mr. Holme [sic] had worked with me for years, so I paid him additional amounts that really were reflection [sic] of all the things he had done for me over the years."). Further, Mr. Fay testified under oath that while the "additional amounts" were paid out of his share, the $200,000 was paid by Mr. Fay and Mr. Perles as a joint expense. Id. at 97 ("The work on this he was paid $200,000 by Steve and I (sic) together."). And further, Mr. Fay testified under oath that after Ms. Kagy had demanded a share of the fee recovery, Mr. Fay told her that he was willing to contribute up to $500,000 to the amount to be paid her, explaining to the Court, "Well, I felt that it would be fair for me to throw something in because Steve had insisted on paying half the amount we were paying Vic Holm..." Id. at 104.

3

paragraph # 9). Knowing that Mr. Perles was intending to appeal the judgment, and despite Ms. Kagy's lien, Mr. Fay sought to forbid the use of "his half" of the fund as security for the judgment on appeal. (Id.).

On June 17, 2005, Mr. Perles moved in the *Kagy* matter for a stay pending appeal, without the necessity of posting a supersedeas bond, on the basis that the existence of Ms. Kagy's lien on the account provided sufficient security to Ms. Kagy in the event the judgment was affirmed. Docket # 121 in *Perles v. Kagy*, 1:01CV0105.

Mr. Fay brought this lawsuit three days later, on June 20, 2005, asserting that Greenberg Traurig committed the tort of conversion because it "rejected plaintiff's demand that [it] return his property and ... refused to deliver the $1,000,000.00. [sic] he owns to him." Complaint, paragraph 17. Further, he claims entitled to judgment for "money had and received." Id., Count 3.

On the same day that he filed this action, Mr. Fay filed a "Motion For Leave To Intervene To Oppose Motion Proposing Use Of Trust Funds" in the *Kagy* lawsuit. Exhibit 3, Docket # 122 in *Perles v. Kagy*, 1:01CV0105. This motion was supported by factual allegations that are identical to the allegations contained in the present lawsuit. *Compare* Complaint *to* "Statement of Facts" contained in Mr. Fay's Memorandum On Points And Authorities Supporting Motion To Intervene. (Exhibit 4.)

On August 29, 2005, the Court denied Mr. Fay's motion to intervene. Docket ## 134 (Order) and 135 (Opinion) in *Perles v. Kagy*, 1:01CV0105. In doing so, the Honorable United States Magistrate Judge Alan Kay concluded that Mr. Fay "cannot plausibly contend that he was unaware the account might be used to pay out a judgment in favor of Ms. Kagy."

Exhibit 1, Slip Opinion at 10. For him to contend otherwise now, Judge Kay recited, "is absurd." Id.[4]

Judge Kay determined that Mr. Fay had admitted that he contributed one-half of the money originally paid into the Patton Boggs trust account "knowing and intending it to be used as security for Ms. Kagy's assertion of an 'attorney's lien' against the net proceeds of the *Flatow* and *Eisenfeld* and *Duker* cases." Slip Opinion at 9. Judge Kay further described how Judge Thomas Penfield Jackson also understood Mr. Fay to have set aside the money, jointly with Mr. Perles, "specifically for the purpose of paying Kagy any amount to which the Court determined her to be entitled."[5] Id. Judge Kay further stated that "For nearly five years, the District Court has relied upon [Mr. Perles'] assertions, uncontested by Fay, that $2 million had been set aside as security for Kagy's lien." Id. at 11.

Mr. Fay did not seek a stay of this order pending appeal, and has not otherwise sought injunctive relief. Following Judge Kay's ruling, Mr. Perles directed Greenberg Traurig to pay $1.45 million from the account into court as a security for the judgment on appeal. Pursuant to those instructions, that money was paid into court, and Mr. Perles' motion to stay execution on the judgment was granted on September 2, 2005. Docket # 137 in *Perles v. Kagy*, 1:01CV0105.

## ARGUMENT

Under either Rule 12(b)(6) or Rule 12(c), dismissal is warranted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Jung v. Association of American Medical Colleges*, 339 F. Supp.2d 26, 36 (D.D.C. 2004). In considering this issue, and in addition to reviewing the allegations of the

---

[4] On December 10, 2004, the parties to the Kagy case had consented to the exercise of jurisdiction by Judge Kay for all purposes. Docket # 100 in *Perles v. Kagy*, 1:01CV0105.

[5] Judge Jackson's order to which Judge Kay referred was entered on April 10, 2003, long before the account was moved to Greenberg Traurig. Docket # 60 in *Perles v. Kagy*, 1:01CV0105.

5

complaint, the Court may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment. *Baker v. Henderson*, 150 F.Supp.2d 17, 19 n. 1 (D.D.C. 2001). Among other things, a court may take judicial notice of the factual findings of another court as part of the public record. *United States ex rel. New v. Rumsfeld*, 350 F.Supp.2d 80, 89 (D.D.C. 2004).

In this case, as set forth below, Plaintiff has already litigated and lost the issue of his immediate entitlement to the fund at issue in this case, a fact that defeats all of his claims against Greenberg Traurig, and the Complaint otherwise fails to state a cause of action.

## I. MR. FAY'S CLAIMS AGAINST GREENBERG TRAURIG ARE BARRED BY RES JUDICATA.

The Court's denial of Mr. Fay's motion to intervene in the *Kagy* lawsuit is a final order. *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004). As such, it bars further litigation of issues actually litigated and decided. *Cheyenne River Sioux Tribe v. United States*, 338 F.2d 906, 911 (8th Cir. 1964) (denial of Tribe's motion to intervene in condemnation action was res judicata with respect to subsequent lawsuit to enjoin and enforce judgment). *See also Castro Convertible Corp. v. Castro*, 596 F.2d 123 (5th Cir. 1979) (all issues raised by motion to intervene in state court action were res judicata on subsequent federal lawsuit filed after motion to intervene was denied); *Brotherhood of Locomotive Firemen and Enginemen v. Seaboard Coast Line Railroad Company*, 413 F.2d 19, 24 (5th Cir. 1969) ("The principles of res judicata are applicable to fully litigated issues raised by a motion to intervene.").

In this action, Mr. Fay asserts that his interest in the fund mandated the immediate payment of "his share" of the fund to him, and that funds were "converted" when, instead of paying $1 million from the account to Mr. Fay, Mr. Schneebaum "sent a letter to Ms. Kagy's counsel seeking to substitute the funds in the trust account for a supersedeas bond to secure the judgment on appeal." In the motion to intervene, which was based on the same facts

alleged in the Complaint, the Court was confronted with the same issues. In denying Mr. Fay's motion to intervene, the Honorable United States Magistrate Judge Alan Kay concluded that Mr. Fay "cannot plausibly contend that he was unaware the account might be used to pay out a judgment in favor of Ms. Kagy." Slip Opinion at 10. For him to contend otherwise now, Judge Kay recited, "is absurd." Id. Further, Judge Kay noted that "Any understanding Fay had with Perles regarding management of the account is irrelevant to the existence of a lien and the use of the account as security for the judgment." Id.

It was thus established in the intervention proceedings that Mr. Fay voluntarily consented to the use of the fund as security to Ms. Kagy's lien during the *Kagy* lawsuit, from its commencement until after judgment was entered, and the Court has ruled that Mr. Fay cannot now contest the use of the fund as security for the judgment. Greenberg Traurig, therefore, owed no duty to Mr. Fay to refuse to allow the funds to be used for this purpose and was obliged to follow the instructions of its client, Mr. Perles. *See* Exhibit 2, Slip Opinion at 6 ("In the absence of any legal restraint on the use of the funds in the Greenberg Traurig trust account, [Mr. Perles] may, if he so elects, use such funds in a way that protects [Ms. Kagy's] judgment on appeal.").[6]

---

[6] In recognition of the preclusive effects of Judge Kay's order, Mr. Fay has now filed "Objections" to that order. (Exhibit 5). Notably, these objections bear a file stamp of 9:12 p.m. on September 7, 2005 – after both defendants had filed (and served by e-mail) pleadings asserting res judicata as a defense. In his objections, Mr. Fay contends (as, apparently, he does in this case) that it was not until the court ruled in April 2005 that Ms. Kagy was entitled to one-third of Mr. Perles's net share of the fees in the *Flatow* case (as opposed to a share of the net fees of the Perles-Fay partnership) that he was entitled to repayment of his "one-half" of the money. Exhibit 5 at 2. Mr. Fay forgets that, more than two years earlier, Judge Jackson's Memorandum Opinion dated April 10, 2003, [Docket # 60 in *Perles v. Kagy*, 1:01CV0105] specifically recited (on page 8) that Ms. Kagy was entitled to "a one-third percentage of the net fee retained by Perles" in the *Flatow* case and (on page 11) Judge Jackson directed Magistrate Judge Kay to determine "the amount of the net fee or fees paid to Stephen R. Perles, P.C."

II.  **THE COMPLAINT FAILS TO STATE A CLAIM FOR "CONVERSION" OR FOR "MONEY HAD AND RECEIVED."**

Mr. Fay cannot satisfy the elements of a conversion claim against Greenberg Traurig. Under District of Columbia law, "conversion" has generally been defined as "unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." *Chase Manhattan Bank v. Burden*, 489 A.2d 494, 495 (D.C. 1985), *quoting Shea v. Fridley*, 123 A.2d 358, 361 (D.C. 1956). Mr. Fay has made no contention that Greenberg Traurig misappropriated any of the funds for itself, or that Greenberg Traurig has asserted any "ownership, dominion or control" over the fund at all for that matter. Nor can Mr. Fay establish that any payments from the account, all of which were directed by Mr. Perles, were in any manner "in denial or repudiation of" Mr. Fay's rights. In fact, because it has been judicially established that Mr. Fay voluntarily subjected the money in the account to Ms. Kagy's lien, and voluntarily paid the money into the account as security for the judgment Ms. Kagy might obtain, Mr. Fay's rights to the account were subordinate to Ms. Kagy's lien. Thus, complying with Mr. Perles' instructions to continue to use the fund as security for the judgment (in fact, the very suggestion made by the Court) did not constitute conversion by Greenberg Traurig.

Mr. Fay's claim for "money had and received" likewise fails to state a claim because there is no allegation that Greenberg Traurig has treated the money as its own. As explained by the D.C. Municipal Court of Appeals more than a half-century ago, "money had and received" derives from the equitable doctrine of unjust enrichment:

> This form of action was invented by the common-law judges to secure relief from the narrow restrictions of common-law procedure, which afforded no remedy in too many cases of merit. It is founded on the principle that no one ought unjustly to enrich himself at the expense of another, and the gist of the action is that the defendant has received money which in equity and good conscience should be paid to the plaintiff.

*Hillyard v. Smither & Mayton, Inc.*, 76 A.2d 166, 167 (D.C. Mun. Ct. App. 1950). See *Barlow v. McLeod*, 666 F.Supp. 222, 229 (D.D.C. 1986) ("Money had and received basically

8

requires proof that [the defendant] has been unjustly enriched at [the plaintiff's] expense by receiving money from him which in equity and good conscience should be returned."). Because no unjust enrichment has been alleged, there is no claim for "money had and received."

### III.  GREENBERG TRAURIG HAS NO LIABILITY UNDER ANY THEORY FOR EVENTS OCCURRING BEFORE OCTOBER 11, 2004.

Finally, as set forth in the Complaint, the money was originally paid into a trust account of a firm other than Greenberg Traurig, and the defense of the claims made by Ms. Kagy were undertaken by a firm other than Greenberg Traurig. Greenberg Traurig became involved in this matter effective October 11, 2004, when Mr. Schneebaum, Mr. Perles' counsel, joined Greenberg Traurig. *See* Complaint ¶ 7, Answer ¶ 10. Greenberg Traurig had no involvement in, and thus has no liability for, any events that occurred prior to that date. Thus, to the extent that Mr. Fay contends that it was improper for Mr. Perles to have paid Patton Boggs' legal fees and expenses from the fund while it was maintained in the Patton Boggs trust account, such contentions state no claim against Greenberg Traurig. Similarly, should Mr. Fay blame someone else for his agreement in 2001 to subject the money in the account to Ms. Kagy's lien, that lien was established long prior to October 11, 2004, and Greenberg Traurig has no responsibility for it.

### CONCLUSION

For the foregoing reasons, the claims asserted against Greenberg Traurig are barred by res judicata, and the Complaint further fails to state a claim against Greenberg Traurig upon which relief can be granted. Thus, judgment must be entered in favor of Greenberg Traurig, and Greenberg Traurig must be dismissed from this action with prejudice.

Respectfully submitted this 9 day of September, 2005.

        For Defendant Greenberg Traurig LLP:

        */s/ Eric C. Rowe*
        _____
        Eric C. Rowe, 466182
        Geoffrey J. Greeves, 463035
        Greenberg Traurig LLP
        800 Connecticut Avenue, N.W.
        Washington, D.C. 20006
        (202) 331-3100 (phone)
        (202) 331-3101 (fax)
        email: rowee@gtlaw.com
                greevesg@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion was served upon the following by first-class mail, postage prepaid, and by email:

John W. Karr, Esq.
Karr & Allison
Suite 300
1920 N Street, N.W.
Washington, D.C. 20036
jwkarr@msn.com

Douglas Bregman, Esq.
Edward Paul Henneberry, Esq.
Bregman, Berbert, Schwartz & Gilday PLLC
7315 Wisconsin Avenue
Bethesda, Maryland 20814
dbregman@bregmanlaw.com
thennebery@bregmanlaw.com

_____
Eric C. Rowe