# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Steven R. Perles, P.C., et al. | ) |
| Plaintiff/Counter Defendant | ) |
| v. | ) Civil No. 01-105 (ESH/AK) |
| Anne Marie Kagy, | ) |
| Defendant/Counter Plaintiff | ) |
| v. | ) |
| Steven R. Perles, Esq. | ) |
| Third Party Defendant | ) |

**OBJECTIONS OF INTERVENTION MOVANT TO ORDER AND MEMORANDUM OPINION ENTERED ON AUGUST 29, 2005**

Thomas Fortune Fay (hereafter, "Fay"), intervention movant, through counsel, pursuant to Fed. R. Civ. P. 72(b) and L.Cv. R 72.3, hereby objects to portions affecting him of the Order and Memorandum Opinion (Docket #134 and #135, respectively, hereafter collectively referred to as "#135") entered herein on August 29, 2005.[1] In his motion to intervene (Docket # 122), Mr. Fay did not consent to submission of issues raised in the motion. As held by this Court in the November 29, 2004 Memorandum Opinion Docket # 99):

---

[1] As noted by this Court in a Memorandum Opinion (Docket # 99, p. 4, n. 4) that accompanied an Order (Docket # 98) entered in this action on November 29, 2004, a magistrate-judge's order "is more properly characterized as a Report and Recommendation."

1



> The magistrate judge's decision must be reviewed de novo by this Court. When a dispositive matter has been referred "without consent of the parties," the district court judge "shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made...." Fed.R.Civ.P.72(b). *See* L.Cv.R.72.3(c); *Aitkens v. Shalala,* 956 F.Supp. 14,19 (D.D.C.1997). The magistrate judge's disposition is only a recommendation, and not a court judgment, until this determination is made. "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P.72(b). *Id.,* p.4.

The rationale for conclusions reached in # 135 was premised on assumptions or speculations reached without a hearing and having no testimonial or other evidentiary support in the record. In some instances, the record contradicted an assumption, and in others, an assumption appears to have been based on a misunderstanding as to the time sequence of events. Objections to each item will be taken in turn.

Mr. Fay was not sued by Ms. Kagy. Nor was he sued by Mr. Perles as a third-party defendant in Ms. Kagy's counterclaim. Nor was Mr. Fay joined as a party pursuant to Fed.R.Civ.P. 18 (a). Ms. Kagy has made no claim at any time that she was owed money by Mr. Fay or by Fay and Perles, P.C. The eventual ruling in this case was that Ms. Kagy was entitled to judgment for a sum equal to a percentage only of Mr. Perles's fees in *Flatow v. The Islamic Republic of Iran,* 999 F. Supp. 1 (D.D.C. 1998) And it was not until judgment was entered against Mr. Perles alone that Mr. Fay's claim to his half of the money escrowed four years earlier ripened.

Mr. Fay moved to intervene specifically to oppose use of his share of the escrowed money to pay for legal fees and other costs associated with Mr. Perles's defense of Ms. Kagy's claims or to serve as security for Ms. Kagy's judgment while Mr.

Perles appeals it. Mr. Fay objects to the findings in #135 that (page references are to pages of #135):

    1. His claim was untimely. (pp. 8-10)

    2. He voluntarily contributed $1 million to an account knowing and intending it to be used for security for Ms. Kagy's assertion of an "attorney's lien" of the net proceeds of the *Flatow* and *Eisenfeld* and *Duker* cases. (p. 9)

    3. Judge Penfield Jackson also understood Fay and Perles to have jointly set aside the two million in the Greenberg Traurig account specifically for the purpose of paying Kagy any amount to which the Court determined her to be entitled. (p. 9)

    4. If Fay believed that he was not liable to Kagy and that her lien inappropriately encumbered a portion of Fay's share, it was incumbent on him to make that assertion at some point in the last five years. (p. 9)

    5. He offered - or needed to offer - justification for not making the assertion mentioned in objection 4., above. (p. 9)

    6. Fay had been a participant in this litigation, albeit an informal one, virtually every step of the way. (p. 10)

    7. He wasn't aware that his interest was precariously situated is absurd. (p. 10)

    8. He cannot plausibly contend that he was unaware the account might be used to pay out a judgment in favor of Ms. Kagy. (p. 10)

    9. Mr. Fay filed a motion to intervene within two months of learning that Greenberg Traurig had made disbursements from the trust account without his approval is of no consequence. (p. 10)

10. Any understanding Fay had with Perles regarding management of the account is irrelevant to the issue of the existence of a lien and the use of the account as security for the judgment. (p. 10)

11. Intervention is unnecessary to protect Fay's interest. (p. 11)

On the second page of #135 it is asserted that in the *Flatow* case "the possibility of actually collecting on the judgment was remote" and that on "January 4, 2001 ... the Congress appropriated money to pay the judgments in *Flatow* and *Eisenfeld* and *Duker* cases, among others." Nowhere in the record is there any testimony that the possibility of payment was remote. Nowhere in the record is the source of money to pay judgments in these cases identified as a Congressional appropriation of taxpayers funds. As provided in Section 2002 of Public Law 106-386 funds used to pay these judgments were owned by the Islamic Public of Iran and represented the remaining balance of the Foreign Military Sales Act account of Iran and a real estate rental receipts account, which together became a designated account for the benefit of specified holders of judgments entered against Iran because of its terrorist activity in accordance with the sovereign immunity waiver provided in 28 U.S.C.§1605 and Public Law 104-208. Public Law 106-386 was enacted by Congress in October, 2000, and signed into law by President Clinton just before the 2000 election, not on January 4, 2001.

September 7, 2005                           Respectfully submitted,

                                            /s/ John W. Karr
                                            John W. Karr
                                            John W. Karr 57430
                                            Karr & Allison, P.C.
                                            1920 N Street, NW   Suite 300
                                            Washington, DC 20036

4

202-331-7600
Attorney for movant, Thomas Fortune Fay

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing objections, were mailed by me this 7th day of September, 2005 to: Steven M. Schneebaum, Esq., Greenberg Traurig, LLP, 800 Connecticut Av, NW, Washington, DC 20006, attorneys for counterclaim defendant and third-party defendant and to David E. Sher, Esq. and Mark D. Cummings, Esq., Sher, Cummings & Ellis, 3800 North Fairfax Drive, Suite 7 Arlington, VA 22203, attorneys for the counterclaim plaintiff and third-party plaintiff.

John W. Karr