# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Thomas Fortune Fay,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:05CV01209 (PLF) |
| | ) | |
| **Steven R. Perles,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **Greenberg Traurig LLP** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT GREENBERG TRAURIG LLP FOR JUDGMENT ON THE PLEADINGS

Plaintiff, Thomas Fortune Fay ("Fay"), by counsel, opposes the motion of defendant, Greenberg Traurig LLP, ("GrTr"), for judgment on the pleadings for the reason that the grounds given to justify such a judgment (*res judicata* and failure to state a claim) are unsupportable in the present record and flawed as a matter of law.

***Background***

In the spring of 1996, Messrs. Fay and Perles established an oral partnership agreement for the limited purpose of prosecuting cases under the Foreign Sovereign Immunities Act "FSIA"), under the name and style of "Fay and Perles, FSIA Litigation". They memorialized that agreement and its terms, under which they had been successfully prosecuting FSIA cases for nearly five years, on February 26, 2001 (Exhibit B, Perles Memorandum), two weeks after a

1

former employee of Mr. Perles, Anne Marie Kagy, sued Mr. Perles and his law firm for legal fees

she claimed were due her for work she had performed for him on three of the FSIA cases. Ms.

Kagy did not sue Mr. Fay; she did not move to amend her complaint to include him in the

litigation; Mr. Perles did not move to include his partner or their partnership – under any theory –

in the lawsuit.  Ms. Kagy obtained a final judgment against Mr. Perles on April 21, 2005.

Paragraph 10 of the February 26, 2001, Fay/Perles partnership agreement (*Id.*, p. 3) states,

in its entirety:

> Except as provided herein, no Partner shall make any contract for and on behalf
> of the Partnership without the prior approval of the other Partner.  All contracts
> shall be made in the name of the Partnership and in the case of any disagreement
> as to the making of any contract or assumption of any obligation by the Partnership,
> such contract or obligation shall not be made or executed except as directed by both
> of the Partners; further, no Partner shall release nor cancel any indebtedness or
> obligation due the Partnership, except on full payment thereof, or upon the mutual
> agreement of all the Partners, nor shall any Partner give, extend, or guarantee credit
> to or for any person, firm, corporation without the consent of the other Partner, nor
> at any time shall any Partner sign the firm's name nor pledge the firm's credit nor
> in any other manner act as surety or guarantor in any paper, bill, bond, note, or draft
> or other obligation whatsoever, nor assign, pledge, mortgage, sell or otherwise
> dispose of, any Partnership property or any interest therein or do anything or permit
> any act whereby the Partnership's money, interest or property or its interest therein,
> may be liable to seizure, attachment, or execution, except upon mutual consent of
> both of the Partners.

Three FSIA judgments were collected by Fay and Perles, FSIA Litigation in early

January, 2001, from Iranian-owned funds previously "blocked" and on deposit in and under

control of the U. S. Treasury Department.  Ms. Kagy had notified Mr. Perles that she was

asserting an undocumented (*i.e.,* not by authority of a written agreement or court decision)

attorney's lien of some $2 million against these proceeds. In order to unfetter the remaining

proceeds, and expressly for no other use, Messrs. Fay and Perles jointly authorized, on January

18, 2001, a wire transfer of $2 million from a bank account maintained in their joint individual

names (not partnership or law firm names)(Exhibit G, Perles Memorandum), to a client trust

fund bank account maintained by Steven Schneebaum, the lawyer Mr. Perles had hired to deal

with Ms. Kagy's claims.(*Id.*) At the time, Mr. Schneebaum was a partner at Patton Boggs, LLP.

It is undisputed that the sources of this deposit were legal fees Messrs. Fay and Perles

had earned from the FSIA judgments they had just collected. Likewise, there is no dispute that

each had deposited $1 million of his fees into the joint bank account to enable the wire transfer to

Mr. Schneebaum's trust account.

On January 19, 2001, Mr. Perles filed a complaint in this court in which he sought a

declaration of what, if anything, he owed to Ms. Kagy. On February 12th, Ms. Kagy answered,

counterclaimed and filed a third-party complaint against Mr. Perles's law firm. On February 26th,

as noted above, Messrs. Fay and Perles executed their written partnership agreement, with the

language quoted above that specifically regulated and constrained the exercise of authority by

either of them over money and obligations associated with FSIA cases.

Mr. Fay did not play a role in Mr. Perles's lawsuit, nor was he asked to do so. Other than

an early meeting at which Mr. Fay answered questions put to him by Messrs. Perles and

Schneebaum and appearances at deposition and trial in response to subpoenas issued by Ms.

Kagy (which included separate preparation sessions with lawyers for both sides), Mr. Fay did not

participate in the Kagy/Perles litigation. (DisF ¶¶ 7,11,12)

In October, 2004, Mr. Schneebaum moved his law practice from Patton Boggs to GrTr,

and in December, 2004, moved the trust account from Patton Boggs's bank to GrTr's bank.

Mr. Fay first learned, in May, 2005, that the "attorney's lien" deposit into a lawyer's trust

fund had in fact been substantially used for purposes other than that to which it had been expressly limited.  Having made no effort to consult with Mr. Fay, to apprise Mr. Fay of his wish to do so, or to obtain Mr. Fay's prior approval,  Mr. Perles (a) authorized disbursements totaling more than $400,000. from the $2 million deposit in his lawyer's trust account, (b) more than once  represented to the court in the *Perles/Kagy* law suit that this deposit was available to secure any judgment Ms. Kagy might obtain, and (c) proposed to deposit what remained in his lawyer's trust account as security for the judgment Ms. Kagy ultimately obtained, in lieu of a supersedeas bond, during the pendency of  his appeal from that judgment.

After learning of Mr. Perles's actions, Mr. Fay sent Mr. Perles and Mr. Schneebaum a letter disavowing authorization to pledge Mr. Fay's million dollar component of the entrusted money as security for payment of a judgment against Mr. Perles, and demanded return of his money from the Schneebaum/GrTr trust account, where it was then on deposit.(Exhibit A, p. 2, Perles Memorandum) When Mr. Perles rejected Mr. Fay's demand, Mr. Fay notified Greenberg Traurig and its bank of his adverse claim on $1 million of the funds on deposit there, filed a post-judgment motion in the *Perles/Kagy* case seeking to intervene solely to oppose Mr. Perles's proposal to substitute the trust funds for a supersedeas bond, and filed the instant action to recover the money that  belongs to him.

GrTr likewise rejected Mr. Fay's demand for return of his money, decided not to file an interpleader action, and, following the denial of Mr. Fay's motion to intervene in the *Perles/Kagy* case for the limited purpose of opposing use of his money to secure Ms. Kagy's judgment, paid most of the balance of the trust account into the registry of the court for just that purpose.

4

*Argument*

**1.** *Res Judicata*

    Mr. Fay's core claim is that he owns $1 million of the money deposited in Greenberg Traurig's client trust fund account, a claim that until the instant case has never been litigated.  Mr. Fay was shielded from discovery that he had such a claim until the *Perles/Kagy* lawsuit was over and that the trust fund had been reduced by more than $400,000. for legal expenses he had not retained or incurred or approved.  His complaint contends that  Mr. Perles's retention and use of Mr. Fay's money in contravention of their mutual understanding and without Mr. Fay's approval unjustly enriched Mr. Perles, and that Mr.Perles and GrTr have tortiously converted this property.  He alleges that he deposited the money into the trust account in the mistaken belief that Mr. Perles and Mr. Schneebaum understood and agreed that Mr. Fay's half of the deposit remained his,  and that the deposit was made soley to secure release of proceeds from the collected judgments over and above Ms. Kagy's claim of an attorney's lien of $2 million. Mr. Schneebaum brought that understanding to GrTr when he transferred his practice and the entrusted money there. GrTr's admitted use of that money – some for payment of GrTr's legal fees – supports both of the causes pleaded against GrTr.

   Ms. Kagy's entitlement to legal fees from Mr. Perles is not at issue in this case; that issue has been fully litigated, at least at the trial level. Mr. Fay's ownership of half the money entrusted to the Schneebaum/GrTr's client fund account was not mentioned in the *Perles/Kagy* litigation, and could not have been tried in that action unless Mr. Fay became a party in that case. The only party aware that the issue existed at all and was building momentum every time he unilaterally authorized a disbursement was Mr. Perles, and he chose not to join Mr. Fay as a party, an

election whose motive shines in hindsight..  Mr. Fay certainly had no reason to know or even suspect that it was an issue. Ownership of Mr. Fay's money never surfaced as an issue until the *Perles/Kagy* case was completed, and it was only then that Mr. Fay discovered that Mr. Perles had not kept his bargain or his word. Hence, the necessary elements for preclusion of Mr. Fay's present claim are obviously missing.

Also known as claim preclusion, the doctrine of *res judicata* holds that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n.5, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979).   Mr. Fay was not a party, and without revelation that an issue of ownership of the entrusted funds existed, he could have had no privy there. If the issue had been revealed, Mr. Perles could hardly be regarded as an appropriate privy.

That cause of action was not the same as the cause of action here.  Moreover, even arguendo, if Mr. Fay had been aware of the details of the *Perles/Kagy* lawsuit, "[j]oinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are ... bound by a judgment or decree." *Martin v. Wilks,* 490 U.S. 755, 765, 104 L. Ed. 2d 835, 109 S. Ct. 2180 (1989).  This was precisely the result reached in *Holland v. Nat'l Mining Ass'n,* 353 U.S. App. D.C. 417, 309 F.3d  808 (D.C. Cir. 2002), in which claim preclusion on a *res judicata* theory was denied.

The issue involved in the instant case was unknown to Mr. Fay, undisclosed by Mr. Perles and never raised or discussed  – much less "fully litigated" – at any stage by the parties in the *Perles/Kagy* litigation, from beginning to end.  Except for representations by Messrs. Perles and Schneebaum to the court – unknown to Mr. Fay and certainly unauthorized by him –

ownership of the money in trust has never been put to a test.

The predicate of the cases cited by GrTr is no different. In any action underwriting claim preclusion, the issue must have been "fully litigated," whether the antecedent proceeding was a trial or a motion to intervene.

## 2.  *Failure To State a Claim: Conversion and Money Had and Received*

Greenberg Traurig misconstrues the requisite elements of conversion by adding an element not present in the cases it has cited.  Laying aside for the nonce the fact that GrTr has been paid legal fees from the entrusted funds, no requirement that a tort feasor "misappropriated any of the funds for itself" exists. "The conversion is complete when the defendant takes, detains or disposes of the chattel. *DeKine v. District of Columbia,* 422 A.2d 981, 986 (D.C.1980). Prosser states, 'Perhaps the most common way in which conversion is committed is by an unauthorized transfer or disposal of the goods to one who is not entitled to them. It is not a necessary element of the tort that the convertor benefit from his act.'" *Harrell v. Anderson,* 294 F. Supp. 405, 407 (S.D. Ga. 1968).

The gravamen of this tort is the "unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." *Blanken v. Harris, Upham & Co.,* 359 A.2d 281, 283 (D.C. 1976), citing *Shea v. Fridley,* 123 A.2d 358, 361 (D.C.1956).

Mr. Schneebaum is a GrTr shareholder, and GrT is, therefore, charged with his knowledge of the history and progression of this dispute and responsibility for his actions.  GrTr was on notice of Mr. Fay's ownership claim when he discovered it in May, 2005,  and presumably was aware of its client's partnership agreement with Mr. Fay, a document Mr. Perles

executed well into Mr. Schneebaum's representation and one that had to impact on decisions to pay legal bills from the trust account, both before and after Mr. Schneebaum joined GrTr. If Mr. Schneebaum was aware of the constraints of ¶ 10 of the agreement, it hardly matters that payments from the account "were directed by Mr. Perles."

RGrT evidently derived its license to exercise dominion and control over the trust account from the court decision on August 29th ("the very suggestion made by the court"), a decision uninformed by litigation on the merits of Mr. Fay's claim which, if undertaken, would have unearthed such limitations as those imposed by the partnership agreement, Mr. Fay's inactive non-role in the *Perles/Kagy* case, and avoided the incorrect finding that GrTr flaunts in its argument – based upon a Perles misrepresentation to the court – that Mr. Fay had "voluntarily paid the money into the account as security for the judgment."

GrTr had options. It could have returned Mr. Fay's money; it might have pursued a risk free course and filed an interpleader action; or, as it chose to do, exercise dominion *and* control over Mr. Fay's component of the entrusted funds – in the face of a lawsuit in which he claims ownership – and deposit the money as security for a judgment against its client.

The same considerations apply to the money had and received cause of action. We disagree that the underpinning is unjust enrichment. Rather, as discussed in the opposition to Mr. Perles's motions, the gist of this equitable remedy is an unjust deprivation to the victim of an honest mistake. By rejecting a demand for return of the money, GrTr has exacted just such a deprivation of Mr. Fay.

### Conclusion

For the foregoing reasons, the motion of Greenberg Traurig, LLP for judgment on the

pleadings should be denied.

Respectfully submitted,

/s/_____
John W. Karr     57430
Karr & Allison, P.C.
1920 N Street, NW   Suite 300
Washington, DC 20036
(202) 331-7600
Attorneys for defendant

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing opposition to the motion of defendant Greenberg

Traurig LLP,  for judgment on the pleadings, were served by e-mail and by prepaid first-class

mail this 7th day of October, 2005,  to:

Douglas Bregman, Esq.
Edward Paul Henneberry, Esq.
Bregman, Berbert, Schwartz & Gilday PLLC
7315 Wisconsin Avenue
Washington, DC   20036
Attorneys for defendant, Steven R. Perles

Eric C. Rowe
Geoffrey J. Greeves
Greenberg Traurig, LLP
800 Connecticut Avenue, NW
Washington, DC   20006
Attorneys for defendant Greenberg Traurig LLP

/s/_____
John W. Karr

9