# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Thomas Fortune Fay,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:05CV01209 (PLF) |
| **Steven R. Perles,** | ) |
| and | ) |
| **Greenberg Traurig LLP** | ) |
| Defendants. | ) |

### PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
### STEVEN R. PERLES FOR SUMMARY JUDGMENT
### OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT

Plaintiff, Thomas Fortune Fay ("Fay"), by counsel, opposes the motion of defendant, Steven R. Perles ("Perles"), for summary judgment or, in the alternative, to dismiss the complaint, for the reasons that the ground offered to justify summary judgment (absence of disputed facts in record otherwise sufficient for judgment as a matter of law) is unsupportable in the present record; grounds for dismissal for failure to state a claim (*res judicata* and collateral estoppel) are legally flawed; the ground for dismissal for failure to satisfy pleading requirements of Fed. R. Civ. Pro. Rule 9 (b)), is, at best, based on disputed issues of fact; and other grounds for dismissal (lack of diversity jurisdiction; not real party in interest; *money had and received* not a justiciable claim in the District of Columbia) are frivolous.

1

*Background*

Parenthetical references to the record that follow are to plaintiff's statement of disputed genuine issues of material facts necessary to be litigated ("DisF"), Mr. Fay's declaration verifying the facts stated therein, the exhibits thereto, and exhibits attached to defendants' motions.

In the spring of 1996, Messrs. Fay and Perles established an oral partnership agreement for the limited purpose of prosecuting cases under the Foreign Sovereign Immunities Act "FSIA"), under the name and style of "Fay and Perles, FSIA Litigation". They memorialized that agreement and its terms, under which they had been successfully prosecuting FSIA cases for nearly five years, on February 26, 2001 (Exhibit B, Perles Memorandum), two weeks after a former employee of Mr. Perles, Anne Marie Kagy, sued Mr. Perles and his law firm for legal fees she claimed were due her for work she had performed for him on three of the FSIA cases. Ms. Kagy did not sue Mr. Fay; she did not move to amend her complaint to include him in the litigation; Mr. Perles did not move to include his partner or their partnership – under any theory – in the lawsuit. Ms. Kagy obtained a final judgment against Mr. Perles on April 21, 2005.

Paragraph 10 of the February 26, 2001, Fay/Perles partnership agreement (*Id.*, p. 3) states, in its entirety:

> Except as provided herein, no Partner shall make any contract for and on behalf
> of the Partnership without the prior approval of the other Partner. All contracts
> shall be made in the name of the Partnership and in the case of any disagreement
> as to the making of any contract or assumption of any obligation by the Partnership,
> such contract or obligation shall not be made or executed except as directed by both
> of the Partners; further, no Partner shall release nor cancel any indebtedness or
> obligation due the Partnership, except on full payment thereof, or upon the mutual
> agreement of all the Partners, nor shall any Partner give, extend, or guarantee credit
> to or for any person, firm, corporation without the consent of the other Partner, nor
> at any time shall any Partner sign the firm's name nor pledge the firm's credit nor
> in any other manner act as surety or guarantor in any paper, bill, bond, note, or draft

or other obligation whatsoever, nor assign, pledge, mortgage, sell or otherwise dispose of, any Partnership property or any interest therein or do anything or permit any act whereby the Partnership's money, interest or property or its interest therein, may be liable to seizure, attachment, or execution, except upon mutual consent of both of the Partners.

Three FSIA judgments were collected by Fay and Perles, FSIA Litigation in early January, 2001, from Iranian-owned funds previously "blocked" and on deposit in and under control of the U. S. Treasury Department. Ms. Kagy had notified Mr. Perles that she was asserting an undocumented (*i.e.,* not by authority of a written agreement or court decision) attorney's lien of some $2 million against these proceeds. In order to unfetter the remaining proceeds, and expressly for no other use, Messrs. Fay and Perles jointly authorized, on January 18, 2001, a wire transfer of $2 million from a bank account maintained in their joint individual names (not partnership or law firm names)(Exhibit G, Perles Memorandum), to a client trust fund bank account maintained by Steven Schneebaum, the lawyer Mr. Perles had hired to deal with Ms. Kagy's claims.(*Id.*) At the time, Mr. Schneebaum was a partner at Patton Boggs, LLP.

It is undisputed that the sources of this deposit were legal fees Messrs. Fay and Perles had earned from the FSIA judgments they had just collected. Likewise, there is no dispute that each had deposited $1 million of his fees into the joint bank account to enable the wire transfer to Mr. Schneebaum's trust account.

On January 19, 2001, Mr. Perles filed a complaint in this court in which he sought a declaration of what, if anything, he owed to Ms. Kagy. On February 12th, Ms. Kagy answered, counterclaimed and filed a third-party complaint against Mr. Perles's law firm. On February 26th, as noted above, Messrs. Fay and Perles executed their written partnership agreement, with the language quoted above that specifically regulated and constrained the exercise of authority by

3

either of them over money and obligations associated with FSIA cases.

Mr. Fay did not play a role in Mr. Perles's lawsuit, nor was he asked to do so. Other than an early meeting at which Mr. Fay answered questions put to him by Messrs. Perles and Schneebaum and appearances at deposition and trial in response to subpoenas issued by Ms. Kagy (which included separate preparation sessions with lawyers for both sides), Mr. Fay did not participate in the Kagy/Perles litigation. (DisF ¶¶ 7,11,12)

In October, 2004, Mr. Schneebaum moved his law practice from Patton Boggs to GrTr, and in December, 2004, moved the trust account from Patton Boggs's bank to GrTr's bank.

Mr. Fay first learned, in May, 2005, that the "attorney's lien" deposit into a lawyer's trust fund had in fact been substantially used for purposes other than that to which it had been expressly limited. Having made no effort to consult with Mr. Fay, to apprise Mr. Fay of his wish to do so, or to obtain Mr. Fay's prior approval, Mr. Perles (a) authorized disbursements totaling more than $400,000. from the $2 million deposit in his lawyer's trust account, (b) more than once represented to the court in the *Perles/Kagy* law suit that this deposit was available to secure any judgment Ms. Kagy might obtain, and (c) proposed to deposit what remained in his lawyer's trust account as security for the judgment Ms. Kagy ultimately obtained, in lieu of a supersedeas bond, during the pendency of his appeal from that judgment.

After learning of Mr. Perles's actions, Mr. Fay sent Mr. Perles and Mr. Schneebaum a letter disavowing authorization to pledge Mr. Fay's million dollar component of the entrusted money as security for payment of a judgment against Mr. Perles, and demanded return of his money from the Schneebaum/GrTr trust account, where it was then on deposit.(Exhibit A, p. 2, Perles Memorandum) When Mr. Perles rejected Mr. Fay's demand, Mr. Fay notified Greenberg

Traurig and its bank of his adverse claim on $1 million of the funds on deposit there, filed a post-judgment motion in the *Perles/Kagy* case seeking to intervene solely to oppose Mr. Perles's proposal to substitute the trust funds for a supersedeas bond, and filed the instant action to recover the money that belongs to him.

GrTr likewise rejected Mr. Fay's demand for return of his money, decided not to file an interpleader action, and, following the denial of Mr. Fay's motion to intervene in the *Perles/Kagy* case for the limited purpose of opposing use of his money to secure Ms. Kagy's judgment, paid most of the balance of the trust account into the registry of the court for just that purpose.

*Argument*

*A. Summary Judgment is Unavailable.*

 1. *Preamble*

Given Mr. Perles's election to rest his summary judgment claim on *res judicata* and collateral estoppel contentions tied to an August 29, 2005, order rejecting Mr. Fay's motion to intervene in *Perles v. Kagy,* Case No.1:01cv00105 (D.D.C. 2005) (Motion for Summary Judgment, ¶ 1, pp.1,2), it is unclear what purpose he intended with his narrative entitled "Statement of Undisputed Facts." In the event it is his purpose to use the proffered "undisputed facts" to somehow fill in the obvious gaps in a *res judicata*/collateral estoppel defense, Mr. Fay has disputed the accuracy of the bulk of Mr. Perles's statement. Mr. Fay does not, of course, dispute that an order denying his motion to intervene for the limited purpose of opposing the proposed use of a client trust fund was entered. What he does argue is that the court entering the order did not have or could not have, based upon his motion and without evidence, hearing or briefing, proper authority to determine ownership of the client trust fund at issue here and,

therefore, that such a determination could not have been intended by the court making it.

    2. *Res Judicata and Collateral Estoppel*

Mr. Fay's core claim is that he owns $1 million of the money deposited in Greenberg Traurig's client trust fund account. His complaint contends that Mr. Perles's retention and use of Mr. Fay's money in contravention of their mutual understanding and without Mr. Fay's approval unjustly enriched Mr. Perles, and that Mr.Perles and Greenberg Traurig have tortiously converted this property. He alleges that he deposited the money into the trust account in the mistaken belief that Mr. Perles and Mr. Schneebaum understood and agreed that Mr. Fay's half of the deposit remained his and was made in order to secure release of proceeds from the collected judgments over and above Ms. Kagy's claim of an attorney's lien of $2 Million, and that Mr. Schneebaum brought that understanding to Greenberg Traurig when he transferred his practice and the entrusted money there, and that Greenberg Traurig's admitted use of that money supports both of the causes pleaded against GT.

Ms. Kagy's entitlement to legal fees from Mr. Perles is not at issue in this case and will not be litigated here. Mr. Fay's ownership of half the money deposited in Mr. Schneebaum's client fund trust account was not an issue in the *Perles/Kagy* litigation, and could not have been tried in that action because Mr. Fay was not a party in that case, and the only party who could have been aware that the issue existed at all, Mr. Perles, elected not to join Mr. Fay as a party. Mr. Fay certainly had no reason to know or even suspect that it was an issue. Ownership of Mr. Fay's money was never surfaced as an issue until the *Perles/Kagy* case was completed, and it was only then that Mr. Fay discovered that Mr. Perles had not kept his bargain or his word. Hence, the necessary elements for preclusion of Mr. Fay's present claim are obviously missing.

Also known as claim preclusion, the doctrine of *res judicata* holds that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n.5, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979).   Mr. Fay was not a party, and without the issue of ownership of the trust account present in the *Perles/Kagy* action, he could have had no privy there.  That cause of action is not the same as the one here.  Moreover, "[j]oinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are ... bound by a judgment or decree." *Martin v. Wilks,* 490 U.S. 755, 765, 104 L. Ed. 2d 835, 109 S. Ct. 2180 (1989).  This was precisely the result reached in *Holland v. Nat'l Mining Ass'n,* 353 U.S. App. D.C. 417, 309 F.3d  808 (D.C. Cir. 2002), in which claim preclusion on a res judicata theory was denied.

And that is precisely why Mr. Perles's reliance on *Marine Power & Equipment Co. v. United States,* 594 F. Supp. 997, 1003 (D.D.C. 1984) is misplaced and unavailing.  *Marine Power* held a government contract that a competing bidder, Bollinger, successfully sued to revoke on the ground that the contract had been unlawfully awarded to *Marine Power.*  *Marine Power's* subsequent lawsuit challenging the reaward to Bollinger was held barred by *res judicata.*  The court stated:

> As noted above, plaintiff MPE chose not to intervene in Bollinger, even though its contract award was being challenged and its interests were at stake. However, MPE [Marine Power] actively assisted the Coast Guard in that action. It furnished affidavits, did legal research and suggested arguments, consulted with the Coast Guard on discovery matters, benefitted by a stipulation regarding its Parent Craft engine size that preserved its proprietary privilege, was on notice of the case from the outset, and attended all court proceedings. As the Supreme

Court held in *Montana v. United States,* 440 U.S. 147, 154, 99 S. Ct. 970, 975, 59 L. Ed. 2d 210 (1979), the interests fostered by the doctrines of collateral estoppel and res judicata are implicated when non-parties assume control over litigation "in which they have a direct financial or proprietary interest" if they "then seek to redetermine issues previously resolved." In fact, the Court went so far as holding that one who "assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . . as he would be if he had been a party to the record." Id. (citations omitted) Under this reasoning, courts have held that a party that fails to intervene in an action directly challenging its interests may be barred from bringing a later collateral attack. (citations omitted) Thus, for purposes of the Court's estoppel analysis, MPE [Marine Power]is bound by the Bollinger litigation as if it had been a party.

The issue involved in the instant case was unknown to Mr. Fay, undisclosed by Mr. Perles and never raised or discussed at any stage by the parties in the Perles/Kagy litigation – much less "fully litigated" – from beginning to end. Except for representations by Messrs. Perles and Schneebaum to the court – unknown to Mr. Fay and certainly unauthorized by him – ownership of the money in trust has never been put to the test  Thus, despite the effort to fit this theory into a square hole, *res judicata* cannot be forced to fit into the facts of this case.

As to collateral estoppel, the *res judicata* rules apply. In *Jack Faucett Associates, Inc. v. American  Tel. & Tel. Co.*, 744 F.2d 118, 125 (D.C. Cir. 1984), the following rules were recited:

> Briefly stated, three conditions must be satisfied before a party can use issue preclusion to estop a party from relitigating an identical issue previously decided:
> (1) The issue must have been actually litigated, that is contested by the parties and submitted for determination by the court.
> (2) The issue must have been "actually and necessarily determined by a court of competent jurisdiction" in the first trial.
> (3) Preclusion in the second trial must not work an unfairness.

Not one of these requirements can be met by Mr. Perles's argument.

**B. Motion To Dismiss**

*1. Money Had and Received*

Other than to drop a footnote in section II (styled, "Summary of Allegations") of his memorandum asserting, but citing no authority for the assertion, that "District of Columbia law does not recognize a cause of action for 'money had and received,'" Mr. Perles has elected to ignore the complaint's third cause of action and not to discuss its substance. However, in the event he intended the footnote to be a ground for dismissal of this cause of action, its viability is discussed here.

A cause of action for money had and received is alive and well in the District's jurisprudence, having been revisited recently in *Association of American R.Rs. v. Connerton,* 723 A.2d 858, 862 (D.C. 1999), in which the court tracked its durability:

> For more than a century, the courts of this jurisdiction have "followed the established rule that one who pays money to another under an honest mistake of fact may, in the absence of an equitable defense, recover the money so paid." *Lanston v. American Sec. & Trust Co.,* 32 A.2d 482, 483 (D.C. 1943) (citing, inter alia, *Strauss v. Hensey,* 9 App. D.C. 541, 547-48 (1896)). "To [this] rule . . . there is no exception." *Prowinsky v. Second Nat'l Bank,* 49 App. D.C. 363, 364, 265 F. 1003, 1004 (1920). . . "If there is any question[, in a case of money paid by the plaintiff under a mistake of fact,] whether it would be inequitable to require the defendant to refund, the burden of proving the fact rests upon him." *Hibbs v. Beall,* 41 App. D.C. 592, 598 (1914)

Here, Mr. Fay's claim is that he deposited $1 million to an escrow account in response to the claim of Mr. Perles's employee that she was owed a fee out of the proceeds from three cases

9

whose judgments had just been collected, in the belief that his deposit related to a claim against the entire proceeds. As it turned out, when Ms. Kagy sued only Mr. Perles and the Perles law firm, her claim was limited to a portion of Mr. Perles's proceeds, and it was for that she has obtained judgment against Mr. Perles and his law firm.

In *Association of American R.R.s, id.* at 862, the court canvassed the theoretical underpinning for money had and received thusly:

> In *Strauss v. Hensey, supra,* the court, speaking through Mr. Chief Justice Alvey, explicated the controlling principle: The leading case upon the subject of the right to recover back money paid by mistake of fact, is that of *Kelly v. Solari,* 9 Mees & Welsb. 54. In that case the money had been paid by the plaintiff to the defendant under a bona fide forgetfulness of facts which disentitled the defendant to receive it, and it was held that the plaintiff could recover back the money *in an action for money had and received.* [emphasis supplied] In the course of his opinion Mr. Baron Parke said, "I think that where money is paid to another under the influence of a mistake, that is, upon the supposition that a specific fact is true, which would entitle the other to the money, but which fact is untrue, and the [**11] money would not have been paid if it had been known to the payer that the fact was untrue, an action will lie to recover it back, and it is against conscience to retain it, though a demand may be necessary in those cases in which the party receiving may have been ignorant of the mistake." 9 App. D.C. at 547-48   *Strauss* thus stands for the proposition that, where no equitable defense has been established, "bona fide forgetfulness of facts" -- i.e., negligence -- will not bar a plaintiff's recovery of sums paid out under a mistake of fact.

The court cited with approval the reasoning of the Supreme Court of Pennsylvania in *Smith v. Capital Bank & Trust Co.,* 325 Pa. 369, 191 A. 124 (Pa. 1937):

> It is immaterial whether the [plaintiff] was guilty of negligence or not. The circumstance that plaintiff had ready and ample means of information, which, if taken advantage of, would have avoided the wrong payment, was not sufficient to prevent recovery. Negligence in making a mistake does not deprive a party of his remedy on account thereof; it is the fact that one by mistake unintentionally pays money to another to which the latter is not entitled from the former, that gives the right of action.

10

Mr. Fay's mistake was to proceed in the belief that the money was being escrowed in order to release the rest of the proceeds for disbursement and certainly not for the purpose of paying legal fees and litigation expenses for representation he had not retained in a lawsuit in which he was not a party. Mr. Fay's expectation was clearly stated in the February 26th partnership agreement. His mistake was to believe that Mr. Perles's intent was similarly reflected therein.

2.  *Real Party in Interest*

This argument is grounded, if at all, on a premise contradicted by the record supplied by Mr. Perles. In his Memorandum, p. 14, he states: "The $2,000,000.00 deposited into Patton Boggs, LLP's escrow account was wired from a trust account at Wachovia Bank held jointly in the names of both professional corporations." Exhibit G, filed in support of his memorandum, states on its face that the owners of the account are two individuals, "Stevn Perles and Thomas Fortune Fay." And it is utterly captious to contend that Mr. Fay "does not possess a personal stake in this controversy." If he does not, who does? Indeed, at the time of the transfer of the money, he was an individual practioner and not a professional corporation, a fact certainly known to his FSIA cases partner. Finally, the partnership agreement itself (Exhibit B to the Perles Memorandum) is between two individuals, Messrs. Perles and Fay, and not between corporations.

This argument is frivolous.

3.  *No Diversity.*

The complaint identifies the plaintiff as a resident of Maryland and the defendants as residents of the District of Columbia. The Perles Memorandum acknowledges that the defendants are domiciled here, and to Mr. Perles's certain knowledge, Mr. Fay has resided and been domiciled in Maryland for the past 35 years. See also, Fay Declaration and disputed fact response

11

¶ 15.  Mr. Perles attempts to bootstrap his contention on the real party in interest argument, urging that even if the partnership, the bank account, the law practices were all corporations, that could somehow twist the facts into an alteration of Mr. Fay's domicile.  The complaint states the required allegations, and no authority exists for reshaping an allegation of a party's domicile – an allegation which must be presumed to be true at this point –  on a motion to dismiss.

This argument is frivolous.

4.  *Inadequate Pleading.*

Mr. Fay's complaint is not "grounded in fraud."  Accordingly, the decisional law cited in support of this argument is inapposite.  In his argument, Mr. Perles attempts to recast the complaint into one for fraud.  Fraud is not claimed and has not been pled.  But even if the complaint did sound in fraud, the transactions on which the unjust enrichment, conversion and money had and received causes of action are based are stated with fine particularity on pages 3, 4 and 5 of the complaint.  There can be no question what the plaintiff is complaining happened: the defendants took his money and will not give it back, notwithstanding plaintiff's right to it.

This argument is altogether frivolous.

                                    Respectfully submitted,

                                    /s/_____
                                  John W. Karr     57430
                                  Theodore S. Allison  441089
                                  Karr & Allison, P.C.
                                  1920 N Street, NW   Suite 300
                                  Washington, DC 20036
                                  (202) 331-7600
                                  Attorneys for defendant

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing opposition to the motions of defendant Steven Perles, for summary judgment or, alternatively, to dismiss the complaint, together with a copy of the statement of disputed facts and proposed order were served by e-mail and by prepaid first-class mail this 7th day of October, 2005, to:

>Douglas Bregman, Esq.
>Edward Paul Henneberry, Esq.
>Bregman, Berbert, Schwartz & Gilday PLLC
>7315 Wisconsin Avenue
>Washington, DC  20036
>Attorneys for defendant, Steven R. Perles
>
>Eric C. Rowe
>Geoffrey J. Greeves
>Greenberg Traurig, LLP
>800 Connecticut Avenue, NW
>Washington, DC  20006
>Attorneys for defendant Greenberg Traurig LLP

                                                                   /s/_____
                                                                  John W. Karr