IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS F. FAY           ) | |
|         Plaintiff,    ) | |
|         v.            ) | Civil No. 1:05CV01209 |
| STEVEN R. PERLES,       ) | |
|         and           ) | |
| GREENBERG TRAURIG, LLP, ) | |
|         Defendants.   ) | |

**DEFENDANT PERLES' REPLY TO PLAINTIFF'S OPPOSITION TO HIS
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
TO DISMISS THE COMPLAINT**

Defendant, Steven R. Perles ("Mr. Perles"), by and through his undersigned counsel, and pursuant to Local Rule 7(d), hereby submits his Reply to Plaintiff's Opposition to his Motion for Summary Judgment or, in the Alternative, to Dismiss the Complaint and in support thereof states as follows:

I.     Plaintiff's So-Called "Disputed Facts" Are Not Material To The Ultimate Issue As To Whether His Failure To Timely Intervene In The *Kagy* Litigation Precludes Him From Bringing The Present Litigation.

Accompanying Plaintiff's Opposition to Defendant Perles' Motion for Summary Judgment or, in the Alternative, to Dismiss ("Opposition"), is his Statement of Disputed Facts ("Statement") which he contends requires this action to be litigated before the Court. In this Statement, Plaintiff calls into dispute a number of facts set forth in Mr. Perles' Motion for Summary Judgment or, in the Alternative, to Dismiss the Complaint

("Motion"). These so-called "disputed facts" are not material to the ultimate issue before this Court: that is, whether Plaintiff is barred by the doctrines of *res judicata* and *collateral estoppel* from seeking any form of relief in the present action because he chose not to intervene in the matter known as *Perles, P.C. v. Kagy*, Civil No. 01-0105 ("*Kagy* litigation"). As found by Judge Kay, Plaintiff's failure to intervene in the *Kagy* litigation amounts to gross neglect especially where he participated in that litigation "virtually every step of the way." (*See* Judge Kay's August 29, 2005 Memorandum Opinion at 9-10).

For instance, Plaintiff disputes the following facts in his Statement: (1) that Mr. Perles was successful in persuading Congress to pass additional legislation under the Foreign Sovereign Immunities Act ("FSIA"); (2) that the Perles and Fay law practices entered into a partnership agreement;[1] (3) that the partnership leased space at 501 G Street, N.W., Washington, D.C. 20001;[2] (4) that Mr. Perles' primary area of expertise involves developing creative ways to bring suit against foreign governments that aid and abet terrorist attacks against Americans abroad;[3] and (5) that Mr. Perles was instrumental in persuading Congress to pass additional legislation under FSIA to allow the families of the victims of these terrorist attacks to attach the frozen funds of those rogue governments. (Statement at 1-4).

---

[1] Plaintiff disputes that a partnership arrangement existed between the Perles and Fay law practices. However, Plaintiff does not dispute that a partnership was formed between the two individuals for purposes of bringing claims under FSIA. (Statement at 2-3).

[2] Plaintiff contends that the partnership leased space at 700 5th Street, N.W., Washington, D.C. 20001. (Statement at 3).

[3] The fact that Plaintiff disputes Mr. Perles' area of legal expertise is disingenuous in light of the following representative cases where he serves or did serve as lead counsel: (1) *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998); (2) *Eisenfeld and Duker v. Islamic Republic of Iran*, 172 F. Supp. 2d 1 (D.D.C. 2000); and (3) *Peterson, et al. v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003). In each of these suits, Mr. Perles had to carefully construct cases, and prepare court papers, to ensure that his clients satisfied the exemptions under FSIA necessary to bring suit against those governments.

This Statement constitutes an attempt by Plaintiff to obfuscate the core facts which are material to the Court's decision as to whether to enter summary judgment in favor of Mr. Perles. Moreover, Plaintiff's so-called "disputed facts" cannot rescue him from the compass of decisions which hold that a party's failure to intervene in an action, despite his awareness of how non-intervention could impact his interests, precludes subsequent litigation as to claims and issues actually litigated or which could have been brought at the intervention proceeding. *See, e.g., Castro Convertible Corp. v. Castro*, 596 F.2d 123, 125 (5th Cir. 1979) (all issues raised in a motion to intervene were res judicata in a subsequent federal suit filed after the motion to intervene was denied); *Brotherhood of Locomotive Firemen and Enginemen, et al. v. Seaboard Coastline Railroad Company, et al.*, 413 F.2d 19, 24 (5th Cir. 1969) ("The principles of res judicata are applicable to fully litigated issues raised by a motion to intervene.").

Furthermore, Plaintiff's Statement is directly at odds with the findings of fact set forth in Judge Kay's August 29, 2005, Memorandum Opinion ("Opinion I"), and affirmed in his September 27, 2005, Memorandum Opinion ("Opinion II"). As determined by Judge Kay, the following facts are incontrovertible: (1) on January 18, 2005, Plaintiff and Mr. Perles jointly transferred $2 million from their joint bank account into a separate trust account at Patton Boggs, LLP, for the purpose of responding to Ms. Kagy's assertion of a lien on the net proceeds paid to these attorneys from the judgments obtained in the *Flatow* and *Eisenfeld and Duker* cases ("terrorism cases"); (2) Plaintiff and Mr. Perles contributed their co-equal shares to the trust account; (3) Plaintiff was aware that Mr. Perles had represented to the trial court during the *Kagy* litigation that the escrowed proceeds were being held in trust for the purpose of paying out any judgment

3

ordered by the Court to Ms. Kagy; (4) Ms. Kagy did not assert a lien solely on Mr. Perles' share of the proceeds paid out from the terrorism cases; (5) at no time prior to entry of judgment in favor of Ms. Kagy, did Plaintiff seek to intervene in that litigation or modify the amount of the escrowed proceeds to reflect that she had filed a claim solely against Mr. Perles. (Op. II at 2-3, 10-12).[4]

Continuing, Judge Kay also determined that: (6) Plaintiff's contribution of the $2 million was "... voluntary because he was not obligated to co-mingle the $1 million contribution with Perles' share, thereby giving Perles equal control over the funds in the account"; (7) Plaintiff actively participated in the *Kagy* litigation — he was deposed and testified at trial; (8) if Plaintiff had chosen to intervene at any time during the *Kagy* litigation, he would have been aware that his interest in the trust account could have been adversely affected by the outcome of that litigation; and (9) Plaintiff waited until June 20, 2005, precisely two months after a judgment had been entered in the *Kagy* litigation, to file a motion to intervene asserting his interest in the escrowed proceeds and opposing Mr. Perles' use of the trust funds. (*Id.* at 10-13).

In light of these findings of fact, Plaintiff's failure to intervene in the *Kagy* litigation bars him from seeking relief in the present action. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 94 (1980) (the doctrine of res judicata "... precludes the parties or their privies from relitigating issues that were or could have been raised in that action" after a final judgment on the merits has been entered). It makes no difference that Plaintiff's

---

[4] Curiously, Plaintiff takes issue with a number of Judge Kay's findings as set forth in his September 27, 2005, Memorandum Opinion. For instance, Plaintiff asserts that "Mr. Fay did not play a role in Perles' lawsuit, nor was he asked to do so ... Mr. Fay did not participate in the *Perles/Kagy* litigation." (Plf.'s Opp. to Mot. Summ. J. at 4). This Court found to the contrary. In Judge Kay's August 29, 2005, Memorandum Opinion, he determined that Plaintiff actively participated in the Kagy litigation "virtually every step of the way." (Op. I at 9). As further stated by Judge Kay, "[F]or Fay to complain, nearly five years later and after judgment has been entered, that he wasn't aware that his interest was precariously situated, is absurd." (*Id.* at 10).

4

motion to intervene was denied on the basis that it was filed untimely. *See, e.g., Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999) (holding that where the necessity of intervention arises pre-judgment, and a party fails to intervene, a motion for intervention filed post-judgment will be denied). The denial of Plaintiff's motion to intervene was a final order which bars further litigation of issues and claims that could have been brought by Plaintiff. *See Castro, supra*.

II. **Plaintiff Fails To Comprehend That The Doctrines of *Res Judicata* and *Collateral Estoppel* Bar Claims And Issues *That Could Have Been Brought In A Prior Proceeding*.**

In support of his Opposition to Mr. Perles' Motion, Plaintiff contends that he is not precluded from bringing the instant litigation because:

> Mr. Fay's ownership of half of the money deposited in Mr. Schneebaum's client fund trust account was not an issue in the *Perles/Kagy* litigation, *and could not have been tried in that action because Mr. Fay was not a party in that case*, and the only party who could have been aware that the issue existed at all, Mr. Perles, elected not to join Mr. Fay as a party. *Mr. Fay certainly had no reason to know or even to suspect that it was an issue. Ownership of Mr. Fay's money never surfaced as an issue until the Perles/Kagy case was completed* ...

(Plf.'s Opp. to Mot. Summ. J. at 6). Plaintiff's contentions are directly at odds with the findings of fact set forth in Judge Kay's two Memorandum Opinions. Additionally, Plaintiff misunderstands the reach of the doctrines of *res judicata* and *collateral estoppel*.

In denying Plaintiff's motion to intervene, Judge Kay firmly stated: "[Fay] cannot plausibly contend that he was unaware the account might be used to pay out a judgment in favor of Ms. Kagy." (Op. I at 10). Accordingly, the Court determined at the intervention proceeding that Plaintiff consented to the use of the escrowed proceeds as security to pay a potential judgment entered in favor of Ms. Kagy. Plaintiff was fully aware that Ms. Kagy had asserted a lien against the proceeds paid to him and Mr. Perles

5

from the judgments obtained in the terrorism cases but failed to take action. As such, Plaintiff slept on his rights and for him to "*... complain, nearly five years later and after judgment had been entered, that he wasn't aware that this interest was precariously situated is absurd.*" (*Id.* at 10) (emphasis added).

Moreover, in Judge Kay's September 27, 2005, Memorandum Opinion, he underscored Plaintiff's awareness that his interest in the escrowed proceeds was at risk in the *Kagy* litigation and could have been litigated in that proceeding: "It is clear from Fay's own motion that he was fully aware of the risk to his interest from the outset of the [*Kagy*] litigation ... **Had Fay intervened at any point in the five years prior to judgment being entered, this issue could have been litigated.**" (Op. II at 13) (emphasis added). Thus, this Court has conclusively determined that Plaintiff had every opportunity to litigate the claims and issues now before the Court in the *Kagy* litigation. Plaintiff, however, chose to slumber on his rights and, in effect, gambled by having Mr. Perles litigate these issues for him. *See Gross v. SEC*, 418 F.2d 103, 108 (2d. Cir. 1969) (a party cannot be permitted "to gamble on one course of action and, upon an unfavorable decision, to try another course of action.").

The doctrine of *res judicata* opertates to bar claims and matters which could have been raised in an earlier action but were not:

> The doctrine of *res judicata* provides that when a final judgment has been entered on the merits of case, "it is finality as to the claim or demand in controversy, including parties and those in privity with them, *not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.*

*Nevada v. United States*, 463 U.S. 110, 129-30 (1983) (quoting *Cromwell v. Sac County*, 94 U.S. 351, 352 (1876)); *Velikonja v. Ashcroft*, 355 F. Supp. 2d 197, 201 (D.D.C. 2005)

6

("In contrast to issue preclusion, new claims need not have actually been adjudicated in an earlier action to be barred by the doctrine of res judicata. It is sufficient that the claims "could have been raised" at an earlier juncture). In determining whether the doctrine applies, the Court decides: (1) whether the parties are identical or are in privity with each other in both suits; (2) whether the present claim is the same claim that was raised or might have been raised in the first proceeding; and (3) whether the judgment in the earlier proceeding was a final judgment. *See Elliot v. FDIC, et al.*, 305 F. Supp. 2d 79, 83 (D.D.C. 2004).

There can be no dispute that Plaintiff and Mr. Perles were in *privity* with each other in the *Kagy* litigation. As determined by Judge Kay, Plaintiff was intimately involved in the *Kagy* litigation "virtually every step of the way." (Op. I at 9). Plaintiff was deposed in that litigation and testified at trial on Mr. Perles' behalf. (Op. II at 11). Moreover, Plaintiff was Mr. Perles' co-counsel in the terrorism cases and he was aware that Ms. Kagy had asserted a lien on the net fees collected from those cases. (*Id.*). Plaintiff and Mr. Perles created the joint trust account for the purpose of responding to that lien. (*Id.*). In brief, Plaintiff had a pecuniary and legal interest in seeing that case resolved in favor of Mr. Perles. In regard to the *second factor*, the present claims could have been raised by Plaintiff in the *Kagy* litigation. As determined by Judge Kay, Plaintiff had every opportunity to intervene in the *Kagy* litigation to attempt to segregate his portion of the escrowed proceeds from the lien asserted by Ms. Kagy against the trust fund. (*Id.* at 10). ***"Had Fay intervened at any point in the five years prior to judgment being entered, this issue could have been litigated."*** (*Id.* at 13) (emphasis added).

Finally, the Court's rulings on Plaintiff's failure to timely intervene in the *Kagy* litigation constitute final orders for which he is not without recourse.

For similar reasons, Plaintiff's Complaint fails under the doctrine of *collateral estoppel*. During the *Kagy* litigation, this Court decided an issue of law and fact in connection with Plaintiff's attempt to intervene in that proceeding and seek immediate possession of the escrowed funds. Accordingly, the Court's decision in that litigation precludes relitigation of the same issue (through similar claims) involving a party to that first proceeding. *See Elliott*, 305 F. Supp. 2d at 83-84.

### III. Plaintiff Is Not The Real Party In Interest Nor Does Complete Diversity Of Citizenship Exist Between The Parties.

In his Opposition, Plaintiff erroneously contends that he is the real party in interest entitled to bring suit because he is an "individual practioner" and his share of the escrowed proceeds are owed to him personally, not as a lawyer. (Opp. at 11). Likewise, Plaintiff asserts that diversity of citizenship exists between the parties because he is an individual who resides in Maryland. (*Id.*). Plaintiff's arguments are flawed and contradicted by the exhibits attached to Mr. Perles' Motion.

Plaintiff does not dispute that he and Mr. Perles entered into a partnership agreement for the limited purpose of litigating claims under FSIA. (*Id.* at 2). Plaintiff and Mr. Perles labeled their partnership "Fay and Perles, FSIA Litigation" and set up a joint office in Washington, D.C. (*Id.* at 2). The money which Plaintiff seeks to recover from Mr. Perles in this action stems directly from the $2 million deposited into Patton Boggs, LLP's escrow account from a joint account maintained at Wachovia Bank by the

partnership in connection with the terrorism cases. (*See* **Ex. F**).[5] Moreover, the funds wired from this account stem directly from payments made by the Treasury Department to the partnership's account as a result of their Joint Application for Payment arising out of the judgments entered in the terrorism cases. (*See* **Ex. C**).

In light of the foregoing, if any claim exists by Plaintiff to recover a portion of these fees, it must be asserted by his law practice (or by the partnership) which received, and paid out, the disputed funds. Whether Plaintiff labels his law practice "Thomas F. Fay, P.C.," "Thomas F. Fay, P.A.," or Thomas F. Fay, Attorney-at-Law," he cannot escape this undisputed fact: that he has always maintained his law practice in the District of Columbia and the fees, if owing, are owed to his law practice as a result of the District of Columbia partnership entered into with Mr. Perles' law practice. Plaintiff and his law practice are distinct legal entities and, therefore, he lacks standing to maintain this suit in his own name. *See Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112. Accordingly, Plaintiff is not the person entitled to enforce the asserted right in this matter. As such, Plaintiff is not the real party in interest and, concomitantly, diversity of citizenship does not exist between the parties because they all reside and conduct business in the District of Columbia.

For all the reasons set forth above, Defendant Steven R. Perles respectfully requests this Court to enter summary judgment in his favor as to all of Plaintiff's claims or, in the alternative, to dismiss the Complaint.

---

[5] Any references to "Ex." mean the exhibits previously marked and attached to Mr. Perles' Motion for Summary Judgment or, in the Alternative, to Dismiss the Complaint.

                                          Respectfully submitted,

                                          BREGMAN, BERBERT, SCHWARTZ
                                          & GILDAY, LLC

Date:_____        By:_____/s/_____
                                          Douglas M. Bregman, 218354
                                          Edward P. Henneberry, 456202
                                          7315 Wisconsin Avenue
                                          Suite 800 West
                                          Bethesda, Maryland 20814
                                          (301) 656-2707
                                          *Counsel for Defendant Steven R. Perles*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of October, 2005, a copy of the foregoing Reply Memorandum was served upon the following by first class mail, postage prepaid, and by electronic mail:

John W. Karr, Esq.
Karr & Allison
Suite 300
1920 N Street, N.W.
Washington, D.C. 20036
*Counsel for Plaintiff*

Eric C. Rowe, Esq.
Geoffrey J. Greeves, Esq.
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Washington, D.C. 20006
*Counsel for Defendant Greenberg Traurig, LLP*

_____/s/_____
Edward P. Henneberry