UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS FORTUNE FAY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STEVEN R. PERLES, )<br>)<br>and )<br>)<br>GREENBERG TRAURIG LLP, )<br>)<br>Defendants. )<br>) | Case Number 1:05CV01209 (PLF) |

**GREENBERG TRAURIG'S REPLY IN SUPPORT OF ITS MOTION FOR
JUDGMENT ON THE PLEADINGS**

Plaintiff's Response to the Motion For Judgment On The Pleadings establishes that the Motion must be granted and that Greenberg Traurig must be dismissed from this action.

I. **GREENBERG TRAURIG HAS NO LIABILITY FOR EVENTS OCCURRING BEFORE OCTOBER 11, 2004, AND MR. FAY'S RIGHTS IN THE FUND, IF ANY, WERE SUBORDINATED TO THOSE OF ANNE MARIE KAGY LONG PRIOR TO THAT DATE.**

Mr. Fay has not contested the fact that Greenberg Traurig has no responsibility for, or involvement in, events occurring prior to October 11, 2004, the date upon which Mr. Perles' counsel, Mr. Schneebaum, joined the firm. Mr. Fay concedes that, after January 19, 2001, and prior to October 11, 2004, Defendant Perles represented to the Court that the money in the account would be used to pay any judgment Ms. Kagy might obtain. Response at 4. Mr. Fay now contends that he (Mr. Fay) did not authorize this representation to be made to the Court, but that contention states no claim against Greenberg Traurig.[1]

---

[1] Mr. Fay does not contest the fact that these representations, upon which the Court itself relied, were made before October 11, 2004, because they were recited in an order entered by the Honorable United States District Judge Thomas Penfield Jackson dated April 10, 2003. Docket # 60 in *Perles v. Kagy*, 1:01CV0105.

Mr. Fay likewise does not contest the fact that Defendant Perles authorized distributions from the Patton Boggs trust account to pay Patton Boggs' legal fees on the *Kagy* litigation. Mr. Fay now contends that he (Mr. Fay) did not authorize these payments to be made, but that contention states no claim against Greenberg Traurig.

Thus, there is no viable claim against Greenberg Traurig based upon allegedly improper payments of Patton Boggs' legal fees, or based upon the allegedly unauthorized representations to the Court that the money had been paid into the account in order to pay whatever judgment Ms. Kagy might obtain. By the time the remainder of the funds were paid into the Greenberg Traurig account, Ms. Kagy's lien on the fund had already been established and the Patton Boggs fees had already been paid.

## II. WHILE MR. FAY ASSERTS THAT GREENBERG TRAURIG ASSERTED DOMINION AND CONTROL OVER THE FUND AT ISSUE, HIS REAL COMPLAINT IS THAT THE FIRM DID NOT DO SO.

Mr. Fay does not contend that Greenberg Traurig used the funds that were subject to Ms. Kagy's lien for its own account, and he does not contend that Greenberg Traurig has been unjustly enriched in any fashion. He complains only that the firm followed the instructions of its client, Mr. Perles. This does not establish "conversion" or "money had and received."

Mr. Fay's real complaint is that Greenberg Traurig did not rescue Mr. Fay from the consequences of the "mistake" that he says he made in January 2001.[2] When Mr. Fay "discovered" his "mistake" in May 2005, Mr. Fay asserts that the firm should have refused the instructions of its client, Mr. Perles, should have reneged upon the promises made to the Court and should have paid the money to him notwithstanding the lien held by Ms. Kagy.

---

[2] Mr. Fay's Response asserts that Mr. Fay "alleges that he deposited the money into the trust account in the mistaken belief that Mr. Perles and Mr. Schneebaum understood and agreed that Mr. Fay's half of the deposit remained his, and that the deposit was made solely to secure release of proceeds from the collected judgments over and above Ms. Kagy's claim of an attorney's lien of $2 million." Response at 5. This statement is, of course, yet another admission that the purpose of the deposit was to secure Ms. Kagy's claimed lien.

Mr. Fay, however, was not a client of Greenberg Traurig, and no duty was owed to Mr. Fay to rectify the consequences of his own inaction.

The conversion claim further fails because Mr. Fay cannot establish that Greenberg Traurig made an "unauthorized transfer of property or goods to one who is not entitled to them." Response at 7. Each of the transfers was authorized by Mr. Perles, and Mr. Fay does not contend otherwise. Further, when the money was paid into the registry of this Court as security for Ms. Kagy's judgment on appeal, it was paid following an order of this Court establishing that Mr. Fay's rights in the fund, if any, were subordinate to the lien claimed by Ms. Kagy on the fund.

Mr. Fay asserts that the order by Judge Kay denying his motion to intervene should have been ignored because it was "uninformed by litigation on the merits."[3] Response at 8. However, in seeking to intervene, Mr. Fay was required to demonstrate his interest in the property at issue, and based upon the proof that Mr. Fay himself submitted, the Court found Mr. Fay to have voluntarily paid the money into the account as security for any judgment Ms. Kagy might obtain. If the factual findings were in error, then Mr. Fay's remedy was to appeal, not to engage in a collateral attack. The Court rejected Mr. Fay's claim that the money should not to be used as security for Ms. Kagy's judgment. The payment of the money into court as security for the judgment on appeal was specifically approved by order of Judge Kay, and no conversion claim exists.

Moreover, as noted by Judge Kay in his Order, Mr. Fay could have, if he had chosen to, sought to enjoin Mr. Perles from further using the money in the account to secure the *Kagy* judgment. Mr. Fay did not do so. Nor did Mr. Fay seek a stay of the order denying his motion to intervene pending appeal. To obtain an injunction or a stay, Mr. Fay would have

---

[3] Mr. Fay has not addressed the cases cited by Greenberg Traurig in which denials of motions to intervene were given res judicata effect. In seeking to intervene, Mr. Fay had to establish an interest in the fund as an essential element of his claim. F.R.Civ.P, Rule 24(a).

3

had to post a bond to protect Mr. Perles and Ms. Kagy from any damages resulting from the injunctive relief. Instead, and to avoid that requirement, Mr. Fay sued Greenberg Traurig and demanded that it institute an interpleader proceeding, asserting that interpleader was "risk free" to the firm. Response at 8. As Mr. Fay himself must ultimately concede, interpleader was "risk free" for Greenberg Traurig, at least with respect to Mr. Fay's claims, because Greenberg Traurig had no liability to Mr. Fay for the creation of the lien on the account in favor of Ms. Kagy, for the payment of the Patton Boggs legal fees, or for any of the disbursements that Mr. Perles had authorized. This same facts, however, defeated any duty owed by Greenberg Traurig to Mr. Fay to disregard its client's instructions and to disregard the orders of this Court that resolved the issue as to whether Mr. Perles could use the money in the account to secure the *Kagy* judgment pending appeal.

## CONCLUSION

Mr. Fay has not asserted any viable claim against Greenberg Traurig upon which relief can be granted. The Court must therefore enter judgment on the pleadings in favor of Greenberg Traurig.

Respectfully submitted this **25** day of October, 2005.

For Defendant Greenberg Traurig LLP:

_/s/ Eric C. Rowe_
Eric C. Rowe, 466182
Geoffrey J. Greeves, 463035
Greenberg Traurig LLP
800 Connecticut Avenue, N.W.
Washington, D.C. 20006
(202) 331-3100 (phone)
(202) 331-3101 (fax)
email: rowee@gtlaw.com
       greevesg@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion was served upon the following by first-class mail, postage prepaid, and by email:

John W. Karr, Esq.
Karr & Allison
Suite 300
1920 N Street, N.W.
Washington, D.C. 20036
jwkarr@msn.com

Douglas Bregman, Esq.
Edward Paul Henneberry, Esq.
Bregman, Berbert, Schwartz & Gilday PLLC
7315 Wisconsin Avenue
Bethesda, Maryland 20814
dbregman@bregmanlaw.com
thennebery@bregmanlaw.com

_____
Eric C. Rowe