UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS FORTUNE FAY, )<br> )<br>      Plaintiff, )<br> )<br>v. )<br> )<br>STEVEN R. PERLES, )<br> )<br>      and )<br> )<br>GREENBERG TRAURIG LLP, )<br> )<br>      Defendants. ) | Case Number 1:05CV01209 (PLF) |

### ANSWER AND COUNTERCLAIM OF DEFENDANT STEVEN R. PERLES

Defendant, Steven R. Perles ("Defendant"), by his undersigned counsel, and pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, hereby submits his Answer and Counterclaim to Plaintiff's Complaint and states as follows:

### RESPONSES TO PARAGRAPHS OF THE COMPLAINT

### JURISDICTION

1. The allegations contained in Paragraph 1 of the Complaint are admitted in that the Defendants are residents of the District of Columbia, and the amount in controversy is in excess of One Million Dollars. Except as admitted, the remaining allegations are denied and strict proof thereof is demanded.

### FACTS

2. The allegations contained in Paragraph 2 of the Complaint are admitted in that a judgment has been entered in favor of Anne Marie Kagy ("Ms. Kagy") in the related action styled *Perles v. Kagy*, Case no. 1:0lev 105 (AK). Except as admitted, the remaining allegations are denied and strict proof thereof is demanded.

3. The allegations contained in Paragraph 3 of the Complaint are admitted in

that a Plaintiff and Defendant were partners in the representation of a number of terrorism cases. Except as admitted, the remaining allegations are denied and strict proof thereof is demanded.

4. The allegations contained in the *First* Numbered Paragraph 4 of the Complaint are admitted.

5. The allegations contained in Paragraph 5 of the Complaint are admitted to the extent that both Ms. Kagy and Mr. Holm worked for Plaintiff and Defendant. The remaining allegations are denied and strict proof thereof is demanded.

6. The allegations contained in *Second* Numbered Paragraph 3 of the Complaint are admitted to the extent that Ms. Kagy asserted an attorney's lien on proceeds paid to Plaintiff from the terrorism cases. The remaining allegations are denied and strict proof thereof is demanded.

7. The allegations contained in *Second* Numbered Paragraph 4 of the Complaint are admitted in that on January 18, 2001, with respect to the lien and claim asserted by Ms. Kagy, Plaintiff and Defendant agreed to and did in fact jointly wire transfer the sum of $2,000,000 to a trust account maintained by Patton Boggs, LLP. It is further admitted that Steven M. Schneebaum was at that time a partner in that firm. Except as admitted, the remaining allegations are denied and strict proof thereof is demanded.

8. The allegations contained in *Second* Numbered Paragraph 5 of the Complaint are admitted.

9. The allegations contained in Paragraph 6 of the Complaint are admitted in that judgment was entered in the Perles/Kagy matter on April 21, 2005. Except as

admitted, the remaining allegations are denied and strict proof thereof is demanded.

10. The allegations contained in Paragraph 7 of the Complaint are admitted in that the balance of money relating to the *Kagy* matter in the Patton Boggs trust account was transferred to a trust account maintained by Greenberg Traurig, LLP. Except as admitted, the remaining allegations are denied and strict proof thereof is demanded.

11. The allegations contained in Paragraph 8 of the Complaint are denied.

12. The allegations contained in Paragraph 9 of the Complaint are admitted in that Plaintiff wrote a letter dated May 19, 2005, and that Plaintiff attended a meeting with Mr. Schneebaum and Plaintiff on May 27, 2005. Except as admitted, the remaining allegations are denied and strict proof thereof is demanded.

13. The allegations contained in the *Second* Numbered Paragraph 9 are admitted in that Plaintiff sent a letter to Defendant dated May 27, 2005. Except as admitted, the remaining allegations are denied and strict proof thereof is demanded.

14. The allegations contained in Paragraph 10 are admitted in that Defendant, through Mr. Schneebaum, sought agreement from Ms. Kagy's counsel to substitute the funds in the trust account for a supersedeas bond to secure the judgment pending appeal, and that Ms. Kagy's counsel declined to enter into such agreement. Except as admitted, the remaining allegations are denied and strict proof thereof is demanded.

15. Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 11 of the Complaint. To the extent that an answer is required, Defendant denies the allegations and demands strict proof thereof. Moreover, Defendant denies that any correspondence sent by Plaintiff to any bank had any legal effect.

16. The allegations contained in Paragraph 12 of the Complaint relate to parties other than the Defendant. In that regard, Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 12 of the Complaint. To the extent that an answer is required, Defendant denies the allegations and demands strict proof thereof.

## FIRST CASUSE OF ACTION

17. Defendant hereby incorporates and adopts by reference the responses contained in Paragraphs 1 through 16 of this Answer in response to Paragraph 14 of the Complaint.

19. The allegations contained in Paragraph 15 of the Complaint are denied.

## SECOND CAUSE OF ACTION

20. Defendant hereby incorporates and adopts by reference the responses contained in paragraphs 1 through 19 of this Answer in response to Paragraph 16 of the Complaint.

21. The allegations contained in Paragraph 17 of the Complaint are denied.

22. The allegations contained in Paragraph 18 of the Complaint are denied.

## THIRD CAUSE OF ACTION

23. Defendant hereby incorporates and adopts by reference the responses contained in paragraphs 1 through 22 of this Answer in response to Paragraph 19 of the Complaint.

24. The allegations contained in Paragraph 20 of the Complaint are denied.

**AFFIRMATIVE DEFENSES**

1. Plaintiff has failed to join parties indispensable under Rule 19, which parties are Thomas Fortune Fay, P.A. (a Maryland professional association with its principal place of business in the District of Columbia) and Thomas Fortune Fay, P.C., a now-dissolved professional corporation organized under the laws of the District of Columbia and having its principal place of business in the District of Columbia.

2. Plaintiff is not the real party in interest and lacks standing to pursue this action.

3. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

4. Plaintiff's claims are or may be barred, in whole or part, by the doctrine of estoppel in that having voluntarily subjected his one-half of the fund to the lien claimed by Ms. Kagy, Plaintiff is estopped from pursuing this action.

5. Plaintiff's claims are or may be barred, in whole or part, by the doctrine of ratification.

6. Plaintiff's claims are or may be barred, in whole or part, by his failure to suffer an economic loss.

7. Plaintiff's claims are or may be barred, in whole or part, by the doctrine of waiver.

8. Plaintiff's claims are or may be barred, in whole or part, by his own breach.

9. Plaintiff's claims are or may be barred, in whole or part, by the doctrine of payment.

10. Plaintiff's claims are or may be barred, in whole or part, by the doctrine of

set-off.

11. Plaintiff's claims are or may be barred, in whole or part, by the doctrine of laches as Plaintiff has waited an unreasonably long time to assert his alleged rights, and the Defendants have been prejudiced by his failure to act in a timely manner.

12. Plaintiff cannot satisfy his burden of proof with respect to the money damages he seeks to recover.

13. Defendant affirmatively states that the money damages claimed by Plaintiff in the Complaint and his Prayer for Relief are not due.

14. Defendant reserves the right to assert additional affirmative defenses, as appropriate.

## COUNTERCLAIM

Defendant, Steven R. Perles ("Perles"), by his undersigned counsel, and pursuant to Rule 12 of the Federal Rules of Civil Procedure, hereby submits his Counterclaim to Plaintiff Thomas Fortune Fay's ("Fay") Complaint and states as follows:

## FACTS COMMON TO ALL COUNTS

1. Mr. Perles operates his own law practice known as the Perles Law Firm, P.C., located at 1146 19th Street, N.W., Washington, D.C. 20036.

2. Mr. Fay operates his own law practice in the District of Columbia known as Thomas F. Fay, P.C.

3. On February 26, 2001, the Perles and Fay law practices entered into a partnership agreement for the limited purpose of prosecuting certain matters under the Foreign Sovereign Immunities Act ("FSIA"). The parties labeled their partnership agreement "Fay and Perles, FSIA Litigation."

4. The purpose of the agreement was to represent the victims of terrorist attacks to file suit in federal courts in the United States against foreign governments that sponsor and/or provide any form of assistance to facilitate acts of terrorism against American citizens abroad.

5. Under the agreement, the parties agreed to share equally in their out-of-pocket expenses and in any contingent fees owed to them in connection with those cases. In that regard, the partnership leased space at 501 G Street, N.W., Washington, D.C. 20001, and Messrs. Perles and Fay split the costs in connection with that lease on an equal basis. Mr. Fay currently maintains his law practice at that address.

6. Likewise, the parties agreed to equally front the costs in connection with the

engagement of any experts or part-time lawyers needed to prosecute their cases.

7. Shortly after the partnership received the funds that it earned in connection with two (2) terrorism cases, a dispute arose between Mr. Perles and Ms. Kagy (an independent contractor working on some of these terrorism cases) over the compensation for her services in connection with those cases. Ms. Kagy demanded one-third of any net fee paid to Mr. Perles' law practice as a result of collection of contingent fees in those cases. Mr. Perles refused to pay Ms. Kagy the compensation that she demanded because no contract existed between them which required him to do so.

8. Due to Ms. Kagy's demand, and with Mr. Fay's concurrence, in January, 2001, Mr. Perles' professional corporation retained the legal services of Steven M. Schneebaum, a principal at Patton Boggs, LLP, in connection with the money that Ms. Kagy claimed was owed to her for the legal services that she provided in those terrorism cases.

9. At around that same time, Mr. Schneebaum met with Messrs. Perles and Fay to discuss trial strategy and the direction of the lawsuit. It was Mr. Schneebaum's understanding that Mr. Fay was going to be "extensively involved" in the lawsuit as the case progressed because Ms. Kagy attempted to assert a lien on a share of the proceeds received by Mr. Perles from the two (2) terrorism cases.

10. Due to this concern, Messrs. Perles and Fay discussed with Mr. Schneebaum how much money each of them should deposit in Patton Boggs, LLP's escrow account to cover legal fees and/or pay any judgment or settlement in connection with the *Kagy* litigation.

11. Pursuant to the terms of the partnership agreement, Messrs. Perles and Fay jointly

deposited $2,000,000.00 into the firm's escrow account. It was Mr. Perles' understanding from discussions with Mr. Fay that he would equally share in the costs to cover Patton Boggs, LLP's legal fees and/or pay any potential judgment or settlement in connection with the *Kagy* litigation as had been consistent with the parties' course of dealing in connection with the partnership. Messrs. Perles and Fay each signed the "Wire Transfer Instructions" authorizing the $2,000,000.00 transaction from their account at Wachovia Bank.

12. Up and until a judgment was entered in the *Kagy* litigation, Mr. Fay never stated to Mr. Perles that the funds could not be applied to pay for the legal fees incurred in connection with the *Kagy* litigation or any judgment entered therein.

13. During the course of the *Kagy* litigation, Mr. Fay was an active participant virtually every step of the way. Mr. Fay had many discussions with Mr. Schneebaum concerning litigation strategy and trial tactics and ultimately testified at the trial of that proceeding.

14. At trial of the *Kagy* litigation, Mr. Fay testified that he had offered to Ms. Kagy to contribute $500,000.00 towards her fee demand because both partners had agreed to bear an equal share in the fees owed to experts, investigators, and attorneys who provided professional services in connection with their terrorism cases.

15. Consistent with this agreement, Judge Kay also determined that Mr. Fay had "voluntarily contributed" his co-equal share of the escrowed proceeds "… knowing and intending it to be used as security for Ms. Kagy's assertion of an 'attorney's lien' against $2,000,000.00 of the net proceeds" from the *Flatow* and *Eisenfeld and Duker* cases.

16. However, and in derogation of that agreement and the parties' course of dealing,

Mr. Fay now demands a return of his money and refuses to contribute his one-half, co-equal share to cover the legal fees, costs, and any judgment arising out of the *Kagy* litigation.

17. Moreover, in *Jenco v. The Islamic Republic of Iran*, Civ. No. 00-549 (D.D.C.), Messrs. Fay, Perles, and Anthony LaSpadea, were successful in obtaining a $315 million judgment against the Government of Iran of which the Perles and Fay Partnership collected approximately $14.5 million.

18. Under the fee arrangement negotiated with the clients in *Jenco*, the partnership was to receive approximately forty percent (40%) of that judgment. However, Mr. Fay negligently calculated the fee at one-third (33%) of the judgment which has cost Mr. Perles about $300,000.00.

19. Since the filing of this lawsuit, and in connection with matter known as *Beecham v. the Socialist People's Libyan Arab Jamahiriya, et al.*, Case No. 01-2243 (D.D.C.), Mr. Fay attempted to secretly negotiate the settlement of claims filed in this matter without consulting Mr. Perles and further established a bank account in Switzerland, without informing Mr. Perles, in an effort to take receipt of the settlement proceeds. When Mr. Perles learned of Mr. Fay's surreptitious conduct, he compelled Mr. Fay to open up a new trust account at Bank of America.

**COUNT I**
**(Breach of Contract)**

20. Defendant/Counterclaimant incorporates and adopts by reference Paragraphs 1 through 19 as if fully set forth herein.

21. By agreement entered into between the parties, Mr. Fay agreed to split the costs and legal fees with Mr. Perles in connection with the *Kagy* litigation.

22. Pursuant to that agreement, Messrs. Perles and Fay jointly deposited $2,000,000.00 into the firm's escrow account to cover the costs and legal fees associated with that litigation.

23. Mr. Fay's own course of performance confirms his understanding to equally share with Mr. Perles in the legal fees and costs associated with the *Kagy* litigation because he voluntarily contributed his co-equal share of the escrowed proceeds knowing and intending it to be used as security for Ms. Kagy's assertion of an 'attorney's lien' against $2,000,000.00 of the net proceeds from the *Flatow* and *Eisenfeld and Duker* cases.

24. Furthermore, Mr. Fay testified at trial that he that he wanted to contribute $500,000.00 towards Ms. Kagy's fee demand because both partners had agreed to bear an equal share in the fees owed to experts, investigators, and attorneys who provided professional services in connection with their terrorism cases.

25. However, and without legal excuse or justification, Mr. Fay now refuses to honor his agreement and demands a return of his co-equal share of the proceeds.

26. In doing so, Mr. Fay has breached his contractual and fiduciary obligations to Mr. Perles and the partnership because Mr. Fay's refusal to honor the agreement means that Mr. Perles must pay all legal fees and costs in connection with the *Kagy* litigation.

27. By virtue of Mr. Fay's breach of the agreement, Mr. Perles has suffered significant monetary losses in the form of paying all legal fees and costs in connection with the *Kagy* litigation.

WHEREFORE, Defendant/Counterclaimant demands judgment against the Plaintiff/Counterdefendant in compensatory damages in an amount estimated to be at least Five Hundred Thousand Dollars ($500,000.00), plus pre- and post-judgment interest

and costs, and such other additional relief as the Court deems appropriate.

## COUNT II
### (Breach of Fiduciary Duty)

28. Defendant/Counterclaimant incorporates and adopts by reference Paragraphs 1 through 19 as if fully set forth herein.

29. Mr. Fay, as Mr. Perles' legal partner, owed a duty to Mr. Perles to act with loyalty and in good faith and to adhere to his contractual obligations as set forth in the partnership agreement with them.

30. Mr. Fay was accountable to Mr. Perles as a fiduciary and had a duty to act for his benefit and without self-interest or prejudicing the lawful objectives of their professional relationship.

31. Mr. Fay breached his fiduciary duties to Mr. Perles by: (a) refusing to share equally in the legal fees and costs in connection with the *Kagy* litigation as required under the terms of the agreement and by his own course of performance; (b) unilaterally terminating his agreement with Mr. Perles in order to elevate his own financial interests above the legal objectives of Mr. Perles and the partnership; (c) causing Mr. Perles irreparable injury by requiring him to pay for all the legal fees and expenses in connection with the *Kagy* litigation; (d) causing Mr. Perles irreparable injury by improperly calculating the fee award in the *Jenco* case which cost Mr. Perles about $300,000.00.; and (e) surreptitiously negotiating the settlement of claims filed in the *Beecham* case without consulting Mr. Perles or the partnership and in an effort to take receipt of the settlement proceeds.

WHEREFORE, Defendant/Counterclaimant demands judgment against the Plaintiff/Counterdefendant in compensatory damages in an amount estimated to be at

least Eight Hundred Thousand Dollars ($800,000.00), plus pre- and post-judgment interest and costs, and such other additional relief as the Court deems appropriate.

## COUNT III
## (Negligence)

32. Defendant/Counterclaimant incorporates and adopts by reference Paragraphs 1 through 19 as if fully set forth herein.

33. As a result of Mr. Fay's dealings with clients and as Mr. Perles' partner, he owed a duty to Mr. Perles and their partnership to use the skill and care of a reasonably competent attorney in preparing and calculating the fee awards owed to them in connection with their representation of victims of terrorist attacks abroad.

34. By failing to properly calculate the fee award owed to the partnership at forty percent (40%) in connection with the *Jenco* case, Mr. Fay negligently breached the duty owed to Mr. Perles and the partnership to act with the skill and care of a reasonably competent attorney.

35. Due to Mr. Fay's negligence in calculating the fee award owed to their partnership at one-third of the judgment collected, Mr. Perles would have received approximately Three Hundred Thousand Dollars ($300,000.00).

36. As a direct and proximate result of Mr. Fay's negligent actions, Mr. Perles has suffered economic damages.

WHEREFORE, Defendant/Counterclaimant demands judgment against the Plaintiff/Counterdefendant in compensatory damages in an amount estimated to be at least Three Hundred Thousand Dollars ($300,000.00), plus pre- and post-judgment interest and costs, and such other additional relief as the Court deems appropriate.

## COUNT IV
### (Subrogation)

37.  Defendant/Counterclaimant incorporates and adopts by reference Paragraphs 1 through 19 as if fully set forth herein.

38.  By asserting that Mr. Perles should pay for all the legal fees and costs in the connection with the *Kagy* litigation, including any judgment entered in that suit, Mr. Fay is refusing to honor his obligations owed to Mr. Perles in connection with the partnership.

39.  In doing so, Mr. Fay is causing Mr. Perles to expend non-partnership funds that otherwise would have been distributed from the partnership to cover legal fees and costs in connection with the *Kagy* litigation.

40.  Mr. Fay is wrongfully retaining and/or asserting a claim over money which does not belong to him and which should be paid to Mr. Perles to cover the legal fees and costs and the payment of any judgment in connection with the *Kagy* litigation.  Under such circumstances, it would be inequitable for Mr. Fay to retain or assert a claim over this money for which he is primarily liable to pay his co-equal share.

41.  As a result of Mr. Fay's actions, he has been unjustly enriched by acquiring property which rightfully belongs to Mr. Perles.  In that regard, Mr. Fay has caused Mr. Perles who was neither a volunteer nor an intermeddler to pay a portion of Mr. Fay's agreed-upon debt obligations.

42.  Accordingly, this Court should create for Mr. Perles a benefit equal to the equitable obligation that was agreed to by Mr. Fay.

WHEREFORE, Defendant/Counterclaimant demands judgment against the Plaintiff/Counterdefendant in compensatory damages in an amount estimated to be at

least Five Hundred Thousand Dollars ($500,000.00), plus pre- and post-judgment interest and costs, and such other additional relief as the Court deems appropriate.

## COUNT V
### (Equitable Disgorgement)

43.     Defendant/Counterclaimant incorporates and adopts by reference Paragraphs 1 through 19 as if fully set forth herein.

44.     To the extent that Mr. Fay asserts that he is under no obligation to pay his co-equal share of the legal fees and/or pay any potential judgment or settlement in connection with the *Kagy* litigation, then he should be required to equitably disgorge to Mr. Perles all payments made by him relating to Mr. Fay's sole use and occupancy of the leased space at 501 G Street, N.W., Washington, D.C. 20001, where Mr. Fay maintained his office.

45.     Additionally, Mr. Fay should be required to disgorge all fees paid by Mr. Perles in connection with any experts, investigators, and attorneys who provided professional services in connection with their terrorism cases.

WHEREFORE, Defendant/Counterclaimant demands judgment against the Plaintiff/Counterdefendant in compensatory damages in an amount estimated to be at least One Million Dollars ($1,000,000.00), plus pre- and post-judgment interest and costs, and such other additional relief as the Court deems appropriate.

Respectfully submitted,

BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC

Date: <u>April 9, 2007</u>  By:  _____/s/_____
Edward P. Henneberry, Bar No. 15251
7315 Wisconsin Avenue
Suite 800 West
Bethesda, Maryland 20814
*Counsel for Defendant Steven R. Perles*

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this __9th___ day of April, 2007, a copy of the foregoing Answer and Counterclaim was served upon the following by first class mail, postage prepaid, and by electronic mail:

>John W. Karr, Esq.
>Karr & Allison
>Suite 300
>1920 N Street, N.W.
>Washington, D.C. 20036
>*Counsel for Plaintiff*
>
>Eric C. Rowe, Esq.
>Geoffrey J. Greeves, Esq.
>Greenberg Traurig, LLP
>800 Connecticut Avenue, N.W.
>Washington, D.C. 20006
>*Counsel for Defendant Greenberg Traurig, LLP*

                                      /s/
                               Edward P. Henneberry