IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS F. FAY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STEVEN R. PERLES, )<br>)<br>and )<br>)<br>GREENBERG TAURIG, LLP, )<br>)<br>Defendants. ) | Civil No. 1:05CV01209 |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PERLES'
MOTION TO STAY COURT PROCEEDINGS

Defendant, Steven R. Perles ("Perles"), by and through his undersigned counsel, and pursuant to Rule 7 of the Federal Rules of Civil Procedure, hereby moves to stay this proceeding pending final resolution of the matter known as *Perles, P.C. v. Kagy*, Civil No. 01-0105 (D.D.C. 2001). Defendant Greenberg Taurig, LLP ("Greenberg") consents to the Motion. In support thereof, Defendant Perles states as follows:

I. **BACKGROUND**

This proceeding arises out of and is directly related to an action currently before this Court known as *Perles, P.C. v. Kagy*, Civil No. 01-0105 (D.D.C. 2001) ("*Kagy* litigation"). Indeed, Plaintiff Thomas F. Fay ("Mr. Fay") alleges in his Complaint that "This action is related to and involves funds affected in an action pending in this court, *Perles v. Kagy*, Civil No. 1:01CV105 (AK)." Compl. at ¶ 2. The *Kagy* litigation involves a dispute over the amount of compensation that should be awarded to Ms. Anne Marie Kagy, an attorney who provided legal services, on a part-time basis, in connection

with two terrorism cases: (1) *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998); and (2) *Eisenfeld and Duker v. Islamic Republic of Iran*, 172 F. Supp.2d 1 (D.D.C. 2000).

Eventually, the Perles and Fay law practices were successful in obtaining judgments for the plaintiffs in connection with the *Flatow* and *Eisenfeld and Duker* cases.[1] In January, 2001, the Treasury Department made available to the plaintiffs in those cases the amounts of $22,513,200.00 and $27,161,002.00 respectively in frozen funds of the Islamic Republic of Iran to satisfy the compensatory damages portions of those judgments.[2] Shortly before the Perles and Fay law practices received the funds that they earned in connection with the *Flatow* and *Eisenfeld and Duker* cases, a dispute arose between Mr. Perles and Ms. Kagy over the compensation for her services in connection with those cases. Ms. Kagy demanded one-third of any net fee paid to Mr. Perles' law practice as a result of the collection of contingent fees in those cases. Mr. Perles offered to pay Ms. Kagy an hourly rate of $150.00 for the time that she reasonably expended working on the two terrorism cases.

In January, 2001, and with Mr. Fay's concurrence, Mr. Perles' professional corporation retained the legal services of Steven M. Schneebaum, a partner at Patton Boggs, LLP, in connection with the compensation dispute with Ms. Kagy. At around that same time, Mr. Schneebaum met with Messrs. Perles and Fay to discuss the direction of the lawsuit. Messrs. Perles and Fay jointly deposited $2 million (or $1 million each) into

---

[1] Eventually, the Perles and Fay law practices established a partnership agreement for the purpose of representing persons qualified to bring suit under the Foreign Sovereign Immunities Act ("FSIA") and labeled it, "Fay and Perles, FSIA Litigation."

[2] On January 4, 2001, funds equaling $49,674,222.00 were distributed into the partnership's trust account in connection with the judgments obtained in those cases.

the firm's escrow account from their partnership account at Wachovia Bank. *See* Schneebaum Aff. at ¶¶ 5-6, attached hereto as **Ex. A**.[3]

On January 19, 2001, represented by Mr. Schneebaum, Mr. Perles filed suit in the United States District Court for the District of Columbia ("District Court") against Ms. Kagy seeking a declaratory judgment that she was only entitled to be paid on an hourly basis for the legal services that she rendered in connection with the two terrorism cases. On February 12, 2001, Ms. Kagy filed a counterclaim for one-third of the fees or, in the alternative, for a judgment in *quantum meruit* for the value of her work in connection with the *Flatow* and *Eisenfeld and Duker* cases.

The *Kagy* litigation was tried in late January 2003. At trial, Mr. Fay testified that "[Mr. Perles and I] agreed that the people we owed money to that worked on the case would all be paid without trying to go through a lot of scrambling arithmetic on who paid that expert or whatever," and that "I felt it would be fair for me to throw something in [for Ms. Kagy] because Steve had insisted on paying half the amount we were paying Vic Holm, who would primarily work for me." *See* Tr. Trans. at pp. 96, 104, attached hereto as **Ex. B**.

On April 10, 2003, the District Court found that there was a contract between Mr. Perles and Ms. Kagy in *Flatow* only, and it entered judgment in favor of Ms. Kagy in the amount of one-third of any net fee paid to the law firm of Steven R. Perles, P.C. from the *Flatow* case. The District Court did not set forth a dollar amount owed to Ms. Kagy in that decision. The case was then referred to Magistrate Judge Kay to determine,

---

[3] In October, 2004, Mr. Schneebaum moved from Patton Boggs, LLP, to Greenberg Traurig, LLP. In December 2004, the balance of the escrow proceeds was transferred from Patton Boggs, LLP (after deduction of that firm's legal fees), to a Greenberg escrow account. The balance transferred to Greenberg represents the entire $2,000,000.00 initially deposited by Messrs. Perles and Fay into Patton Boggs, LLP's escrow account less payment of legal fees and costs.

among other things, the precise damage amount owed to Ms. Kagy. Beginning on December 16, 2003, Judge Kay held an evidentiary hearing to determine the "net fees" received by Mr. Perles in the *Flatow* case and to decide Ms. Kagy's *quantum meruit* claim regarding her work on *Eisenfeld and Duker* case. In April 2005, the District Court entered an amended final order and judgment, awarding Ms. Kagy $1,261,745.71 plus accrued interest in the *Flatow* case, and $47,326.09 plus accrued interest for the value of her services in the *Eisenfeld and Duker* case.

Following entry of the judgment on April 20, 2005, the parties filed cross-appeals. On June 17, 2005, Mr. Perles moved for a stay pending appeal and waiver of the supersedeas bond. Mr. Perles sought to use the Greenberg trust account as security for the judgment pending the cross-appeals. On June 20, 2005, Mr. Fay filed a motion to intervene solely for purposes of opposing Mr. Perles' motion. The Court denied Mr. Fay's motion finding that he had been a participant in *Kagy* litigation "virtually every step of the way" and had voluntarily contributed $ 1 million into a trust account in response to Ms. Kagy's assertion of a lien against the net proceeds.[4]

In a August 29, 2005 Memorandum Opinion ("Opinion") issued in that litigation, Judge Kay determined that Mr. Fay had "voluntarily contributed" his co-equal share of the escrowed proceeds "... knowing and intending it to be used as security for Ms. Kagy's assertion of an 'attorney's lien' against $2,000,000.00 of the net proceeds" from the *Flatow* and *Eisenfeld and Duker* cases. *See* Mem. Op. at pp. 9-10.[5]

---

[4] In fact, Judge Kay stated that "[f]or Fay to now complain, nearly five years later and after judgment has been entered, that he wasn't aware that his interest was precariously situated is *absurd*." *See Perles, P.C. v. Kagy*, 2005 U.S. Dist. LEXIS 18894, at *16 (D.D.C. 2005).

[5] In brief, the Court determined that Messrs. Perles and Fay to have jointly set aside the $2,000,000.00 in the law firm's escrow account for the purpose of paying Ms. Kagy any amount to which the Court

4

On January 16, 2007, the United States Court of Appeals for the District of Columbia Circuit vacated the judgment in favor of Ms. Kagy. *Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244 (D.C. Cir. 2007) (rehearing en banc denied April 3, 2007). The Court of Appeals ruled that Ms. Kagy had no contract entitling her to payment, but that she "is entitled to recover equitable compensation for her work on *Flatow* and *Eisenfeld* cases." 473 F.3d at 1253. The Court of Appeals remanded for the District Court to assess the total number of hours Ms. Kagy reasonably worked on the *Flatow* case, and to decide her "reasonable hourly rate."[6] The trial – before Magistrate Judge Kay – will take place on September 24-26, 2007.

On April 9, 2007, Mr. Perles filed a Counterclaim in this suit against Mr. Fay alleging, among other things, that Mr. Fay breached the fiduciary and contractual duties owed to him by refusing to share equally in the legal fees and costs in connection with the *Kagy* litigation as he agreed to and by improperly calculating fee awards in ongoing cases which cost Mr. Perles about $300,000.00. (Counterclaim at ¶¶ 23-26, 31, 33-35).

The *Kagy* litigation has a direct impact on this litigation. At issue in the *Kagy* litigation is the fee owed to her in connection with the legal services that she rendered in the two terrorism cases. Moreover, the total legal costs incurred as a result of *Kagy* litigation will not be known until that litigation is concluded in September 2007. At issue in this proceeding is the amount of contribution to be paid by Messrs. Perles and Fay towards Ms. Kagy's fee and the litigation costs involved with that suit. Thus, the

---

determined her to be entitled. In fact, Judge Kay found it "absurd" for Mr. Fay to complain, nearly five years later and after judgment had been entered in that suit in favor of Ms. Kagy, that he did not know that his share of these escrowed proceeds might be used to pay Ms. Kagy. *See* Mem. Op. at pp. 9-10.

[6] The findings and conclusions of the Court of Appeals decision are set forth in *Perles, P.C., et al. v. Kagy*, 473 F.3d 1244 (D.D.C. 2007), and have been summarized herein for the Court's convenience.

damages asserted by Mr. Fay in this action cannot be calculated until the *Kagy* case is concluded. Further, the Court's decision in the *Kagy* case may serve to narrow the issues presented here.

## II. STANDARD FOR GRANTING A MOTION FOR STAY

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). A court has broad discretion to stay a proceeding pending resolution of another action ongoing in another court or before the same court. *GFL Advantage Fund, Ltd v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003). A decision staying an action involves an "exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* A stay of an action is particularly appropriate if that action will impact the rights of both parties in another proceeding. *Landis*, 299 U.S. at 254-55.

## III. LEGAL ARGUMENT

### A. This Proceeding Should Be Stayed Because Plaintiff's Damages Are Unascertainable With Any Reasonable Certainty Until The *Kagy* Litigation Has Been Resolved.

It is well-established that a federal court may stay one proceeding pending resolution of another action upon a proper showing. *See, e.g., Marsh v. Johnson*, 263 F. Supp.2d 49, 52 (D.D.C. 2003) ("[a] trial court has broad discretion to stay all proceedings in an action pending resolution of independent proceedings elsewhere."); *Bechtel Corp., et al. v. Laborers' Int'l Union of North America, et al.*, 544 F.2d 1207, 1215 (3rd Cir. 1976) ("… a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."). Indeed, the Supreme

Court has held that where the limits of a stay are narrowly confined and do not run the risk of stretching for an inordinate amount of time, a stay will be considered reasonable. *Landis*, 299 U.S. 256-58.

In that regard, the *Betchel* case provides useful guidance. There, a federal district court stayed an employer's tort claim against a union under section 303 of the Labor Management Relations Act ("LMRA") pending outcome of its contract claim against the union under section 301 of the LMRA on the basis on the same conduct-an improper work stoppage. The employer's two claims against the union alleged identical damages -- $12,000 per day for each day of the alleged work stoppage. The lower court determined that if the employer prevailed in the arbitration of its breach of contract claim and was awarded damages, it could have no further claim against the union under its tort claim because it could not recover the same damages more than once. The Court of Appeals affirmed and found that this possibility alone was sufficient justification to warrant the stay.

Applying these principles, a stay of the instant proceeding is particularly warranted and falls well within the bounds of moderation. In the present suit, Mr. Fay has filed a score of claims in an effort to recoup the $1 million that he voluntarily contributed towards the defense of the *Kagy* litigation. However, the damage component of each of these claims cannot be even remotely ascertained until this Court has resolved the amount of money owed to Ms. Kagy from Mr. Perles. Clearly, that issue cannot be resolved until after conclusion of the trial before this Court in September, 2007.

Even then, the Court is hindered in its ability to determine the amount of money, if any, to be paid to Mr. Fay because Mr. Perles has asserted in his Counterclaim that

Mr. Fay agreed to pay one-half of any judgment obtained in the *Kagy* litigation. Mr. Perles' position is backed by Mr. Fay's own testimony at the *Kagy* litigation (*E.g.*, Tr. Trans. at pp. 96, 104, attached hereto) and by the fact that Messrs. Perles and Fay jointly wired $2 million to Patton Boggs, LLP's escrow account to pay their co-equal shares of the legal fees incurred in that litigation.

Finally, the Court's grant of a stay of this proceeding is more than moderate because its force will not stretch for an unreasonable period of time. The stay requested herein is limited to the time it takes for this Court to decide the damages in the *Kagy* litigation. Defendants are not asking this Court to indefinitely stay this proceeding. *Landis*, 299 U.S. 256-58 (holding that the "limits of a fair discretion" in staying a suit to enjoin the enforcement of the Public Utility Holding Company Act of 1935 were exceeded so as to await the outcome of another suit to restrain enforcement of the statute where the stay had no time parameters). Once damages have been determined in the *Kagy* litigation, the stay should expire and its "fetters should fall off." *Id.* at 257. Accordingly, the limits of the requested stay are fair and in no way prejudice Plaintiff or the pace of the litigation.

In short, damages in this proceeding, whether from the perspective of Mr. Perles or Mr. Fay' claims, cannot be proven or reasonably ascertained until final resolution of the *Kagy* litigation. As such, this suit should be deferred.

### B. The Interests Of Judicial Economy Favor A Stay Of This Litigation.

It is settled that "courts possess the inherent authority to stay proceedings in the interests of judicial economy and efficiency." *Landis*, 299 U.S. at 254-55; *Painters' Pension Trust Fund v. Manganaro Corp.*, 693 F. Supp. 1222, 1224 (D.D.C. 1988) (holding that "… stays are not infrequently granted when simultaneously pending NLRB proceedings might illuminate or resolve matters also confronting courts."). When considering whether to stay a proceeding, a federal court will consider "the true value that would follow" prior to the completion of the related proceeding. *See. e.g., Rohr Industries v. Washington Metro Area Trans. Authority*, 720 F.2d 1319, 1325 (D.C. Cir. 1983) ("[w]henever possible courts should avoid duplicated or drawn-out proceedings. The efficient administration of justice demands it."). Value will be found where a court is confronted with a case the resolution of which could benefit from the prior conclusion of a related proceeding. *See, e.g., Von Hoffburg v. Alexander*, 615 F.2d 633, 641 (5th Cir. 1980) (where the "practical notions of judicial efficiency" justified the postponement of a federal district court suit pending an administrative agency's review of related claims concerning plaintiff's claim of improper discharge on the basis of her sexual preference).

Applying these principles, the interests of enhanced efficiency dictate that this proceeding should be deferred pending resolution of the *Kagy* litigation. First, significant value will flow if the Court stays this proceeding pending outcome of the *Kagy* litigation. At issue in that litigation is the amount of money owed by Mr. Perles to Ms. Kagy in connection with her legal services. Among other things, at stake in this proceeding is the amount of contribution owed by Mr. Fay towards this amount. However, both these monetary items remain uncertain because damages have not been determined in the *Kagy*

litigation. In that connection, it makes little if any sense to compel the parties to start discovery in this matter when a number of unresolved, discoverable issues relating to the components of their respective damage claims are pending before the Court in a collateral suit.

Furthermore, based on the shortness of time between commencement of discovery in this proceeding, or on after the June 8, 2007 scheduling conference, and resolution of the *Kagy* litigation, set for trial on September 24-26, 2007, there exists little risk of this matter being deferred for an immoderate period of time. The evidentiary hearing in the *Kagy* case is scheduled to end in late September, 2007. Accordingly, the Defendants are only asking this Court to postpone this litigation for a short time period. In light of this reality, there exists no risk of this proceeding being held in abeyance for longer than approximately (90) days or so. Such is not the case here where the *Kagy* litigation runs the risk of extending indefinitely into the future. *See Rohr*, 720 F.2d at 1326 (when the process "threatens to drag on . . . for many years, then the rationale supporting deference is much weaker"). Finally, testimony at the *Kagy* trial may narrow the scope of discovery in this case and facilitate a settlement.

## IV.   CONCLUSION

For all the reasons set forth above, Defendants request this Court to stay this suit until final resolution of the *Kagy* litigation.

Respectfully submitted,

BREGMAN, BERBERT, SCHWARTZ
& GILDAY, LLC

Date: 6/5/07

By: _____
Douglas M. Bregman, 218354
Edward P. Henneberry, 456202
7315 Wisconsin Avenue
Suite 800 West
Bethesda, Maryland 20814
(301) 656-2707
*Counsel for Defendant Steven R. Perles*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of June, 2007, a copy of the foregoing Memorandum of Law was served upon the following by first class mail, postage prepaid, and by electronic mail:

John W. Karr, Esq.
Karr & Allison
Suite 300
1920 N Street, N.W.
Washington, D.C. 20036
*Counsel for Plaintiff*

Eric C. Rowe, Esq.
Geoffrey J. Greeves, Esq.
Greenberg Traurig, LLP
800 Connecticut Avenue, N.W.
Washington, D.C. 20006
*Counsel for Defendant Greenberg Traurig, LLP*

_____
Edward P. Henneberry

F:\Home\THenneberry\Perles, Steven\Motion to Stay\Motion for Stay V4.doc