# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Thomas Fortune Fay,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:05cv01209 (PLF) |
| | ) |
| **Steven R. Perles, et al.,** | ) |
| Defendants. | ) |
| | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CONSOLIDATE CASE No.1:05cv01209(PLF) WITH CASE No. 1:01cv105(ESH), AND FOR AN ORDER PRESERVING FUNDS IN REGISTRY

*Background*

In the spring of 1996, Messrs. Fay and Perles formed an oral partnership agreement for the limited purpose of prosecuting cases under 28 U.S.C. § 1605(a)(7), of the Foreign Sovereign Immunities Act (hereafter, "FSIA"). Under the name, "Fay and Perles, FSIA Litigation," they have successfully prosecuted FSIA cases since then. When she learned in late December, 2000, that three FSIA judgments against the Islamic Republic of Iran were about to be paid from Iranian-owned funds previously "blocked" and on deposit in the U. S. Treasury, a former employee of Mr. Perles, Anne Marie Kagy, notified Mr. Perles that she was asserting an undocumented (*i.e.,* not by authority of a written agreement or court decision) attorney's lien of some $2 million against these payments.

On January 18, 2001, Messrs. Fay and Perles jointly authorized a wire transfer of $2

1

million from a bank account maintained in their joint individual names (not partnership or law firm names) to a client trust fund account maintained by Steven Schneebaum, the lawyer Mr. Perles had hired to deal with Ms. Kagy's claims against him.[1]  It is undisputed that Mr. Fay and Mr. Perles each owned half of the $2 million that had been transferred. It is undisputed that Mr. Schneebaum was retained solely by Mr. Perles to deal only with Ms. Kagy's claims against him, and that Mr. Schneebaum has no retainer agreement with Mr. Fay and has never represented him or his interests. At the time of the funds transfer, Mr. Schneebaum was a partner at Patton Boggs, LLP.

      A day after the money was transferred into the trust account, on January 19, 2001, Mr. Perles filed a complaint in which he sought a declaration of what, if anything, he owed to Ms. Kagy for work she claimed to have done in the three cases.[2]  On February 12th, Ms. Kagy counterclaimed against him and his law firm for legal fees she claimed he owed her for her work in those cases. Ms. Kagy did not sue Mr. Fay; at no time did she move to amend her counterclaim to include Mr. Fay in the litigation, or otherwise claim that he owed her money for anything she had done for Mr. Perles; Mr. Perles did not move to include his partner or their partnership in the lawsuit under any theory, and made no claims against him associated with Ms. Kagy's, including no claim for contribution. Ms. Kagy obtained a final judgment against Mr. Perles on April 21, 2005.

      Two weeks after Ms. Kagy filed her counterclaim, on February 26th, Messrs. Fay and

---

[1] A copy of the wire transfer between banks is attached hereto as "Exhibit A."

[2] *Perles/Kagy*, Case No.1:01cv105 (ESH),

Perles executed a written partnership agreement memorializing their 1996 oral agreement and containing language that specifically regulated and constrained the exercise by either of them of ex parte authority over money and obligations generated in FSIA cases.[3]

Other than an early meeting at which Mr. Fay answered questions put to him by Messrs. Perles and Schneebaum, and appearances at deposition and trial in response to subpoenas issued by Ms. Kagy (which included separate preparation sessions with lawyers for both sides), Mr. Fay did not participate in the Kagy/Perles litigation.

In October, 2004, Mr. Schneebaum moved his law practice from Patton Boggs (hereafter, "PB") to Greenberg Traurig, LLP (hereafter, "GrTr"), and in December, 2004, moved the trust account from PB's bank to GrTr's bank.

In May, 2005, Mr. Fay discovered that money in the Schneebaum lawyer's trust fund had been substantially used for purposes other than that to which it had been expressly limited. No effort had been made before then to consult with Mr. Fay, to apprise him that Mr. Perles wished to use the entrusted funds to underwrite the costs of his prosecution and defense of *Perles/Kagy* or to obtain Mr. Fay's prior approval to use the funds to do so, including the payment of Mr. Schneebaum's legal fees. Notwithstanding their failure to do so, or perhaps because of it, Mr. Perles unilaterally (a) authorized disbursements from the trust fund account to

---

[3] A copy of the written agreement is attached hereto as "Exhibit C." The language referenced provides, ". . . nor at any time shall any Partner sign the firm's name nor pledge the firm's credit nor in any other manner act as surety or guarantor in any paper, bill, bond, note, or draft or other obligation whatsoever, nor assign, pledge, mortgage, sell or otherwise dispose of, any Partnership property or any interest therein or do anything or permit any act whereby the Partnership's money, interest or property or its interest therein, may be liable to seizure, attachment, or execution, except upon mutual consent of both of the Partners."

Mr. Schneebaum totaling more than $400,000., (b) frequently represented to the court that the funds on deposit in the trust account were intact,[4] and (c), after judgment was entered, proposed to deposit what remained in the trust fund as security for the judgment in lieu of a supersedeas bond on appeal.

After learning of these unauthorized transactions, Mr. Fay sent Mr. Perles and Mr. Schneebaum a letter disavowing a willingness to pledge Mr. Fay's million dollar component of the entrusted money as security for the judgment against Mr. Perles, and demanded return of his $1 million from the Schneebaum/GrTr trust account.[5] When Mr. Fay's demand was ignored, Mr. Fay notified Gr Tr and its bank of his adverse claim of $1 million of the funds on deposit in the trust account, filed a post-judgment motion in *Perles/Kagy* on June 20th under Fed. Rule Civ. Pro. 24 (a) for an order authorizing him to intervene in the district court for the limited purpose of challenging Mr. Perles's proposed use of the trust fund to substitute for a supersedeas bond, and filed *Fay/Perles,* Case No.1:05cv01209 (PLF) to recover the money that he owns.

GrTr likewise rejected Mr. Fay's demand for return of his money, decided not to file an interpleader action and, following the district court's denial of Mr. Fay's motion to intervene in *Perles/Kagy*, paid most of the balance of the trust account into the registry of the

---

[4] The trial record confirms that on six separate occasions, October 17, 2002 (tr., p.3, l. 20 to p.5, l. 6); January 29, 2003 (tr., p. 42, l.12 to p. 43, l.10); December 16, 2003 (tr., p.27, lls. 4 to 24); March 17, 2004 (proposed findings of fact and conclusions of law); September 7, 2004 (Responses to Report and Recommendations); and January 5, 2004 (Schneebaum letter to Mag. Judge Kay), express representations were made to the district court that the funds on hold in escrow in the trust account were preserved and could not be invaded. Copies of each of the cited documents are attached hereto as collective "Exhibit D."

[5] A copy of Mr. Fay's letter dated   is attached hereto as "Exhibit E."

court for just that purpose. Because judgment had been entered two months earlier, there was no basis for Mr. Fay to intervene other than to try to prevent Mr. Perles's post-judgment effort to misuse money belonging to Mr. Fay.

On the same day, June 20th, Mr. Fay filed *Fay/Perles,* Case No. 1:05cv1209(PLF) against Mr. Perles and Mr. Schneebaum's law firm, the holder of the trust fund, Greenberg Traurig, LLP, seeking return of his half ($1 million) of the trust fund, and interest on that sum, and punitive damages for its conversion. Motions of Mr. Perles for summary judgment and to dismiss and of Greenberg Traurig for judgment on the pleadings were denied.

Cross appeals in *Perles/Kagy* of the April 21, 2005 judgment against Mr. Perles were filed, briefed and argued by Mr. Perles and Ms. Kagy, as was Mr. Fay's appeal of the August 29, 2005 order rejecting his motion to intervene. On January 16, 2007, the April 21st judgment was reversed and the case remanded to the district court "to calculate Kagy's equitable compensation for her work on the two cases." Mr. Fay's claims were not addressed on the merits; his appeal was dismissed as moot, given the resolution of Ms. Kagy's claims.

*Argument*

**I. Common Property and Common Issues of Law and Fact.**

Mr. Fay's core claim is that he owns $1 million of the money that was deposited in Gr Tr's trust fund account and is now on deposit in the court's registry in *Perles/Kagy*. His complaint in *Fay/Perles* is that Mr. Perles's retention and use of his money in contravention of their agreement unjustly enriched Mr. Perles, and that Mr.Perles and Gr Tr have tortiously converted his property. He contends that each of them deposited $1 million into the trust account

in response to the assertion by Ms. Kagy of a $2 million attorney's fee lien on the gross proceeds of the judgments in the three cases on which she had worked. for Mr. Perles. When the deposit was made, no lawsuit(s) had been filed. When *Perles/Kagy* materialized, and when the dust settled on the competing claims of Perles and Kagy and Mr. Fay remained untouched by them, Messrs. Perles and Schneebaum necessarily understood that Mr. Fay's half of the deposit was unaffected and would remain his until someone, Ms. Kagy or Mr. Perles, asserted a claim against it. Neither ever did, until after Ms. Kagy got judgment against Mr. Perles. If there had been any understanding to the contrary, Mr. Schneebaum would have been obligated to obtain from Mr. Fay a written agreement, instructions and authorizations concerning the use of his half of the money that had been deposited into his client fund trust account. And had Mr. Perles any question then about Mr. Fay's ownership of that half the deposit, he would certainly have brought Mr. Fay into *Perles/Kagy* for contribution. Neither did so until Mr. Fay requested the return of his money when his right to it finally ripened on the entry of judgment at the end of the long pendency of *Perles/Kagy*.

      Mr. Perles has now stated in his motion for a stay in *Fay/Perles* that "[a]t issue in this proceeding [*Fay/Perles*] is the amount of *contribution* to be paid by Messrs. Perles and Fay towards Ms. Kagy's fee and the litigation costs involved with that suit."[6] (Emphasis added) He goes on to state, "[t]hus, the damages asserted by Mr. Fay in this action [*Fay/Perles*] cannot be calculated until the *Kagy* case is concluded."[7] Finally, he asserts, without explication, "[f]urther,

---

[6] See, Exhibit E, attached hereto.

[7] *Id.*

the Court's decision in the *Kagy* case [*Perles/Kagy*] may serve to narrow the issues presented here [*Fay/Perles*]."[8] Taking him at his word, Mr. Perles makes clear that he intends to revive his effort to have *Fay/Perles* decided in his favor in his collateral action with Ms. Kagy, without Mr. Fay's participation, notwithstanding the *Fay/Perles* court's rejection of such a theory in the Memorandum Opinion dated March 26, 2007, denying his summary judgment motion. If Mr. Perles means what he says, both cases relate to common property and involve common issues of fact and law, and should, therefore, be consolidated for trial.

"The decision whether to consolidate cases under Rule 42(a) is within the broad discretion of the trial court." *Stewart v. O'Neill,* 225 F. Supp. 2d 16, 20 (D.D.C. 2002). In *Chang v. United States* , 217 F.R.D. 262, 265, the Court stated, "[g]enerally speaking, when exercising their discretion with respect to consolidation of actions, courts weigh considerations of convenience and economy against considerations of confusion and prejudice." . . . "Consolidation may increase judicial efficiency by reducing presentation of duplicative proof at trial, eliminating the need for more than one judge to familiarize themselves with the issues presented, and reducing excess costs to all parties and the government. . . . Consolidation is particularly appropriate where, as here, 'two cases each involve review of the same underlying decision.' See, *Biochem Pharma, Inc. v. Emory University,* 148 F. Supp. 2d 11, 12 (D.D.C. 2001).

*Chang, supra*, went on to say, "[f]ar from rendering this litigation more unwieldy, consolidation would increase efficiency by reducing the possibility of duplicative discovery and by achieving judicial economy in the adjudication of potentially dispositive motions involving

---

[8] *Id.*

similar material facts, a single group of actors present during the events at issue, and common questions of law."

### II. Preservation of the Trust Fund

Notwithstanding their obvious awareness of the express term of the Fay/Perles agreement, that ". . . nor at any time shall any Partner sign the firm's name nor pledge the firm's credit nor in any other manner act as surety or guarantor in any paper, bill, bond, note, or draft or other obligation whatsoever, nor assign, pledge, mortgage, sell or otherwise dispose of, any Partnership property or any interest therein or do anything or permit any act whereby the Partnership's money, interest or property or its interest therein, may be liable to seizure, attachment, or execution, except upon mutual consent of both of the Partners," Mr. Perles and Mr. Schneebaum have continued to thumb their collective nose at the plain meaning of the quoted language, and common sense and experience dictate that they will continue to do so and to ignore the mandates of the agreement.[9] They certainly did so despite their misrepresented, repeated assurances to the district court and the universal imperatives associated with trust funds held in escrow that this particular fund would remain intact. Add to that Mr. Perles's boast to another lawyer that "he bought a house in Massachusetts and put the property in the name of his children and that his lawyers had fixed things so that no creditor of his will be able to satisfy a judgment entered against him,"[10] and it becomes clear beyond question that when the trust funds

---

[9] See letter dated May 14, 2007 from Mr. Schneebaum to Mr. Perles, a copy of which is attached hereto as "Exhibit F," p. 3, in which he directs Mr. Perles to " . . . give me authority to proceed in the manner I have proposed, by directing me to pay to the firm all of the money now on deposit with Greenberg Traurig."

[10] See, affidavit of Jane Carol Normen, Esq., attached hereto as "Exhibit G."

emerge from the court's registry, they will evaporate in the mists of legal fees and whatever else stimulates the whimsy of the trustees.

28 U.S.C. § 2041 and §2042 regulate the deposit and withdrawal "of moneys in pending or adjudicated cases." As recently as 1916, in a case whose ruling that survives intact to the present, in construing an earlier version (but having the identical purpose) of these statutes, the Court stated, "[t]here can be no doubt of court's authority to make special orders in pending cases for special deposits, to the end that funds shall be safeguarded in the interests of parties concerned." *United States v Conway Lumber Co.,* 234 F 961 (D.C. NH 1916).

Even absent the direct authority conferred by the statute, the Court can reach the same result through the exercise of its inherent power. "Exercise of judicial power by entry of orders not expressly sanctioned by rule or statute in order to correct the legal process or avert its misfunction has been approved in varied circumstances." *Arizona v. Manypenny*, 672 F.2d 761, 765, cert. denied, 459 U.S. 850 (1982).

With respect to inherent power, "[w]hen rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 (1991) "As early as 1812, the Supreme Court stated that "certain implied powers must necessarily result to our courts of justice, from the nature of their institution," explaining that such powers "cannot be dispensed with in a court, because they are necessary to the exercise of all others." *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L. Ed. 259(1812)   The inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct.  And the subsequent revocation of a coextensive statutory grant of power does not necessarily act to circumscribe the

9

court's inherent power that preexisted the statutory grant. *Iao Xing Ni v. Gonzales,* 2007 U.S. App. LEXIS 16687, 14-17 (2d Cir. 2007)

**III. Conclusion.**

The issues affecting ownership of common property associated with claims common to both cases are now blended, and if the court does not protect that property and prevent its disappearance – as the court thought it was doing while Case No.1:01cv0105 (ESH/AK) was inching toward resolution – nothing will be left of Mr. Fay's money to return to him.

Ms. Kagy's entitlement to legal fees was not settled when Mr. Fay filed *Fay/Perles* or when he attempted to intervene in *Perles/Kagy*. Thus, Mr. Fay's ownership of half the money deposited in the court's registry has become an issue, by Mr. Perles's own assertion. Mr. Schneebaum's client fund trust account was not an issue in the *Perles/Kagy* litigation, and could not have been tried in that action because Mr. Fay was not a party in that case, and the one party, Mr. Perles, who could have been aware that the issue existed at all, elected not to join Mr. Fay as a party in *Perles/Kagy*. Mr. Fay certainly had no reason to know or even suspect that it was an issue. Ownership of Mr. Fay's money never surfaced as an issue until the *Perles/Kagy* case was completed the first time, and it was only then that Mr. Fay discovered that Mr. Perles had not kept his bargain or his word. The issue ought to be resolved in the context of the underlying action.

Accordingly, as a matter of fairness and judicial efficiency and economy these cases involving common property and common issues of law and fact should be consolidated , and the $1,450,000. remaining in trust should be preserved by remaining in the custody of the district court. No conceivable damage to Messrs. Perles and Schneebaum can result, but if not protected

by a court order, Mr. Perles has assured everyone in his own words that Mr. Fay's money will be unrecoverable by him.

Respectfully submitted,

_____/s/   John W. Karr_____
John W. Karr (Bar #57430)
Karr & Allison, PC
1300 19th Street, NW    Suite 402
Washington, DC 20036
202/331-7600
Attorney for plaintiff, Thomas Fortune Fay