1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEVEN R. PERLES, | ) | C.A. NO. 01-105(TPJ) |
| PLAINTIFF, | ) | |
| VS. | ) | WASHINGTON, D.C. |
| | ) | OCTOBER 17, 2002 |
| ANNE MARIE KAGY, | ) | 10:30 A.M. |
| DEFENDANT. | ) | |

TRANSCRIPT OF MOTIONS HEARING

BEFORE THE HONORABLE THOMAS PENFIELD JACKSON

UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:　　STEVEN SCHNEEBAUM, ESQ.
　　　　　　　　　　　 DAVID ROSENFELD, ESQ.

FOR THE DEFENDANT:　　MARK CUMMINGS, ESQ.
　　　　　　　　　　　 DAVID SHER, ESQ.

COURT REPORTER:　　　 FRANK J. RANGUS, OCR

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT PRODUCED BY COMPUTER.

# I N D E X

| ARGUMENTS OF COUNSEL: | PAGE |
|---|---|
| MR. SCHNEEBAUM | 6 |
| MR. CUMMINGS | 13 |

1  THE DEPUTY CLERK: CIVIL ACTION 2001-105, STEVEN R.
2  PERLES VS. ANNE MARIE KAGY. STEVEN SCHNEEBAUM AND DAVID
3  ROSENFELD REPRESENTING THE PLAINTIFF. DAVID SHER AND MARK
4  CUMMINGS REPRESENTING THE DEFENDANT. THIS IS A MOTIONS
5  HEARING.
6  THE COURT: GOOD MORNING, LADIES AND GENTLEMEN.
7  YOU HAVE FAVORED ME WITH A LOT OF PAPER HERE, WHICH I
8  FORTUNATELY HAVE HAD AN OPPORTUNITY TO GO THROUGH. I HAVE SOME
9  SOMEWHAT EXTRANEOUS QUESTIONS AT THE OUTSET. IS IT CORRECT
10 THAT THE DEFENDANT'S NAME IS PRONOUNCED KAGY [PRONOUNCED KAUJ]?
11 MR. CUMMINGS: KAGY [PRONOUNCED KAY-GEE], YOUR HONOR.
12 THE COURT: KAGY?
13 MR. CUMMINGS: YES, YOUR HONOR. K-A-G-Y.
14 THE COURT: ALL RIGHT. I HAD AN ACQUAINTANCE AT ONE
15 TIME WHO WAS OF CZECHOSLOVAKIAN ORIGIN AND THE NAME SPELLED AS
16 MISS KAGY'S NAME WAS SPELLED WAS PRONOUNCED KAGY.
17 MR. CUMMINGS: SHE'S DEFINITELY IRISH.
18 THE COURT: BEG YOUR PARDON?
19 MR. CUMMINGS: SHE'S DEFINITELY IRISH, YOUR HONOR.
20 THE COURT: ALL RIGHT. WHERE IS THIS FEE AT THIS
21 POINT? IS IT IN MR. PERLES' TRUST ACCOUNT?
22 MR. SCHNEEBAUM: THE FEE HAS BEEN PAID TO MR. PERLES,
23 YOUR HONOR.
24 THE COURT: IS IT IN HIS TRUST ACCOUNT?
25 MR. SCHNEEBAUM: HE HAS SET ASIDE A FUND, AN ESCROW

Jun 02 2006 12:40  HP LASERJET 3330                                  p.4
Case 1:05-cv-01209-PLF   Document 34-8   Filed 07/27/2007   Page 4 of 12

4

```
 1   AMOUNT, WHICH WE ARE HOLDING, MY LAW FIRM IS HOLDING.
 2           THE COURT: ALL RIGHT. IN THE AMOUNT OF EIGHT MILLION
 3   DOLLARS?
 4           MR. SCHNEEBAUM: NO.
 5           THE COURT: IN THE AMOUNT OF WHAT?
 6           MR. SCHNEEBAUM: WELL, IN AN AMOUNT SMALLER THAN THE
 7   EIGHT MILLION. MR. PERLES HAS SET ASIDE AN AMOUNT WHICH HE
 8   BELIEVES WILL BE SUFFICIENT TO SATISFY ANY JUDGMENT.
 9           THE COURT: WELL, I'VE GOT A PRAYER FOR EQUITABLE
10   TRUST HERE, AND I NEED TO KNOW HOW MUCH THAT TRUST IS.
11           MR. SCHNEEBAUM: WELL, THERE IS INDEED A CLAIM FOR AN
12   EQUITABLE LIEN ON THE FUNDS.
13           THE COURT: ALL RIGHT. DO YOU ACKNOWLEDGE THAT THERE
14   IS A LIEN AT THIS POINT?
15           MR. SCHNEEBAUM: WE DO NOT. THERE HAS BEEN AN
16   ASSERTION OF ONE, WHICH, OF COURSE, WE CHALLENGED. ALL THAT WE
17   HAVE --
18           THE COURT: I UNDERSTAND YOU CHALLENGED IT, BUT THE
19   QUESTION IS, YOU ARE TREATING IT AS AT LEAST TEMPORARILY
20   FROZEN.
21           MR. SCHNEEBAUM: WE ARE TREATING THE ESCROW AMOUNT
22   THAT WE HAVE SET ASIDE AS TEMPORARILY FROZEN.
23           THE COURT: HOW MUCH IS THAT AMOUNT?
24           MR. SCHNEEBAUM: IT IS ABOUT TWO MILLION DOLLARS.
25           THE COURT: ABOUT TWO MILLION DOLLARS. ALL RIGHT, AND
```

```
 1   AMOUNT, WHICH WE ARE HOLDING, MY LAW FIRM IS HOLDING.
 2         THE COURT:  ALL RIGHT.  IN THE AMOUNT OF EIGHT MILLION
 3   DOLLARS?
 4         MR. SCHNEEBAUM:  NO.
 5         THE COURT:  IN THE AMOUNT OF WHAT?
 6         MR. SCHNEEBAUM:  WELL, IN AN AMOUNT SMALLER THAN THE
 7   EIGHT MILLION.  MR. PERLES HAS SET ASIDE AN AMOUNT WHICH HE
 8   BELIEVES WILL BE SUFFICIENT TO SATISFY ANY JUDGMENT.
 9         THE COURT:  WELL, I'VE GOT A PRAYER FOR EQUITABLE
10   TRUST HERE, AND I NEED TO KNOW HOW MUCH THAT TRUST IS.
11         MR. SCHNEEBAUM:  WELL, THERE IS INDEED A CLAIM FOR AN
12   EQUITABLE LIEN ON THE FUNDS.
13         THE COURT:  ALL RIGHT.  DO YOU ACKNOWLEDGE THAT THERE
14   IS A LIEN AT THIS POINT?
15         MR. SCHNEEBAUM:  WE DO NOT.  THERE HAS BEEN AN
16   ASSERTION OF ONE, WHICH, OF COURSE, WE CHALLENGED.  ALL THAT WE
17   HAVE --
18         THE COURT:  I UNDERSTAND YOU CHALLENGED IT, BUT THE
19   QUESTION IS, YOU ARE TREATING IT AS AT LEAST TEMPORARILY
20   FROZEN.
21         MR. SCHNEEBAUM:  WE ARE TREATING THE ESCROW AMOUNT
22   THAT WE HAVE SET ASIDE AS TEMPORARILY FROZEN.
23         THE COURT:  HOW MUCH IS THAT AMOUNT?
24         MR. SCHNEEBAUM:  IT IS ABOUT TWO MILLION DOLLARS.
25         THE COURT:  ABOUT TWO MILLION DOLLARS.  ALL RIGHT, AND
```

```
 1   IT'S IN YOUR TRUST ACCOUNT?
 2          MR. SCHNEEBAUM: YES, IT IS.
 3          THE COURT: NOW, IS IT MY UNDERSTANDING THAT, AM I
 4   CORRECTLY UNDERSTANDING THE FEE ARRANGEMENT FOR MR. PERLES
 5   HIMSELF WAS THAT THE AMOUNT THAT HE RECEIVED WAS ROUGHLY
 6   ONE-SIXTH OF THE AGGREGATE OF THE TWO JUDGMENTS?
 7          MR. SCHNEEBAUM: THAT IS CORRECT, YES, YOUR HONOR.
 8          THE COURT: ALL RIGHT, BEING HIS 50-50 DIVISION WITH
 9   MR. FAY OF A ONE-THIRD CONTINGENT FEE?
10          MR. SCHNEEBAUM: CORRECT.
11          THE COURT: NOW, LET ME TELL YOU TENTATIVELY WHAT MY
12   INCLINATION IS WITH RESPECT TO THIS CASE AND THE PENDING
13   MOTIONS BEFORE ME, AND THEN YOU ARE INVITED TO TRY TO DISABUSE
14   ME OF ANY PRECONCEPTIONS IN WHICH YOU THINK I AM IN ERROR.
15          I AM SATISFIED THAT AT THIS POINT THE CASE IS GOING TO
16   HAVE TO BE TRIED. THERE IS, IN MY JUDGMENT, A SUFFICIENT
17   NUMBER OF FACTS WHICH ARE NOT CLEAR TO ME FROM THIS RECORD THAT
18   I CANNOT SAY THAT THE PLAINTIFF IS ENTITLED TO DECLARATORY
19   JUDGMENT IN ANY RESPECT AT THIS POINT, AND SO I AM TENTATIVELY
20   INCLINED TO DENY THE MOTION FOR SUMMARY JUDGMENT.
21          AND, SIMILARLY, I'M INCLINED TO DENY, FOR ROUGHLY THE
22   SAME REASON, THE MOTION TO DISMISS COUNTS ONE, TWO, AND FOUR OF
23   THE COUNTERCLAIM ON STATUTE-OF-FRAUDS GROUNDS. DEPENDING UPON
24   HOW THE FACTS RESOLVE THEMSELVES, THERE ARE SEVERAL COLORABLE
25   BASES UPON WHICH I WOULD BE OBLIGED TO FIND THAT THE STATUTE OF
```

Page 41

[1] A: That's correct.
[2] Q: So basically, you elected not to accept an
[3] additional roughly 5 million dollars in order to go
[4] ahead and seek the punitive damages in the full
[5] amount?
[6] A: I don't know what the right amount is. But
[7] each of the three families elected not to accept
[8] the 10 percent incremental bonus. There's some
[9] confusion in the press about this, so I want to
[10] make sure it's correct. It's not 10 percent of the
[11] judgment. It's a 10 percent bonus on compensatory
[12] damages.
[13] Q: And the total compensatory damages that
[14] you got on behalf of these three families was
[15] roughly what?
[16] A: 49, 50 million dollars plus interest.
[17] Q: So 10 percent of that would be 5 million
[18] dollars?
[19] A: That's correct. These three families
[20] agreed to forego 5 million dollars in order to
[21] continue enforcement activities in support of the
[22] punitive damages. That's correct.
[23] MR. SHER: Thank you.
[24] THE COURT: Have you dispersed to the
[25] families the amount of their compensatory damages?

Page 42

[1] THE WITNESS: Certainly. We went through
[2] the standard procedure that one goes through at the
[3] conclusion of a personal injury case. Did a
[4] settlement sheet. Obtained the requisite sign-offs
[5] of the families. And did a standard disbursement.
[6] THE COURT: Have you dispersed your fee to
[7] yourself?
[8] THE WITNESS: I believe Mr. Schneebaum
[9] testified that —
[10] THE COURT: Mr. Schneebaum doesn't
[11] testify.
[12] THE WITNESS: I'm sorry. Excuse me. Mr.
[13] Schneebaum advised the Court that I did not
[14] disperse an amount that Mr. Schneebaum deemed
[15] appropriate to compensate Ms. Kagy. And money went
[16] directly from the trust account for this litigation
[17] to Mr. Schneebaum's trust account at Patton Boggs.
[18] THE COURT: But the balance has been
[19] dispersed to you?
[20] THE WITNESS: That is correct.
[21] MR. SCHNEEBAUM: Your Honor, just to
[22] clarify that. The court will perhaps recall that
[23] in the oral argument —
[24] THE COURT: I recall. I understand that
[25] that is still on deposit in your trust account.

[1] MR. SCHNEEBAUM: Yes.
[2] THE COURT: The sum that could conceivably
[3] be recoverable by Ms. Kagy is in your trust
[4] account.
[5] MR. SCHNEEBAUM: I'm not sure that I want
[6] to agree with that proposition. We set aside an
[7] amount in the trust account that, at least in my
[8] professional opinion, is far in excess of what I
[9] thought she could recover. But in any case, it is
[10] that amount of money and it is there.
[11] THE COURT: All right. Understood.
[12] MR. SHER: Your Honor, just one follow-up
[13] question.

FURTHER RECROSS-EXAMINATION
BY MR. SHER:

[16] Q: In the dispersement of the monies from the
[17] trust account, you didn't disperse them from the
[18] trust account. You dispersed them to yourself
[19] personally?
[20] A: I'm sorry. I don't understand.
[21] Q: You dispersed them from the Wachovia Bank,
[22] where the monies were originally deposited by wire;
[23] correct?
[24] A: Yes.
[25] Q: To yourself, as far as your fees and

Page 43

[1] interest were concerned. To yourself personally.
[2] Not to your PC.
[3] A: That's not correct. It went to my PC.
[4] Q: Okay. And then you dispersed it from your
[5] PC to yourself personally?
[6] A: That's correct.
[7] Q: And the difference that you're talking
[8] about that was put in Patton Boggs, was that put in
[9] an interest bearing account?
[10] A: You'll have to ask Mr. Schneebaum that
[11] question. I don't know the answer to that. I
[12] don't know what Patton Boggs' protocol is.
[13] MR. SHER: Very well. Thank you.
[14] THE COURT: All right. The evidentiary
[15] record is closed.
[16] MR. SCHNEEBAUM: No. Actually, Your
[17] Honor, we have a couple of additional rebuttal
[18] witnesses.
[19] THE COURT: You do?
[20] MR. SCHNEEBAUM: Very brief ones. I don't
[21] think any of them will be on direct certainly not
[22] more than ten minutes each.
[23] THE COURT: Okay. Let's take a brief
[24] recess. We are going to recess at noon today for
[25] the midday recess.



```
 1  think this requires any factual evidence or testimony, we submit
 2  that that is erroneous as a matter of law for this reason.
 3         Miss Kagy at the time that Mr. Perles collected the
 4  proceeds from the Treasury imposed an equitable lien on his
 5  receipt or on that portion of his receipt that was equivalent to
 6  her claimed fee.  That money was not available to Mr. Perles for
 7  investment or anything else.  That money was trapped by the
 8  equitable lien, and we submit that as a matter of law it would
 9  be the height of unfairness to permit Miss Kagy by imposing the
10  equitable lien to assure that Mr. Perles' money earns very
11  little or no interest and then, when it comes time for payment,
12  to contend that she was deprived of the benefit of that money.
13         If he had been able to take it away and she simply
14  sued him in contract, she might have a theory, but she did not.
15  She asserted an equitable lien, and Judge Jackson in open court
16  asked me during oral argument at one of our hearings whether we
17  had in fact respected that by segregating an amount of money
18  that we thought was sufficient to satisfy any judgment she might
19  make, and I assured Judge Jackson that we had.
20         THE COURT:  And invested the money?
21         MR. SCHNEEBAUM:  No, that we had segregated it.  In
22  fact, it is being held in my law firm's trust account to this
23  day and as the Court is aware law firm trust accounts Court earn
24  interest at far lower rates than the prime rate.
25         THE COURT:  But ultimately when the disbursement will
```

C (4)

Page 28

1  occur, will there be disbursement of the initial original corpus
2  or the corpus plus any interest realizing from the trust fund?
3          MR. SCHNEEBAUM: I believe, if I have portrayed their
4  argument correctly, perhaps we can make one thing a little
5  simpler because we would concede that she is entitled to
6  interest that actually accrued to the amount in the trust
7  account --
8          THE COURT: As opposed to any objective rate of
9  interest?
10         MR. SCHNEEBAUM: Opposed to any objective rate of
11 interest that would be applicable if Mr. Perles had had the
12 freedom to do what he pleased with that money as opposed to
13 being under the constraint that he was under.
14         THE COURT: I understand.
15         MR. SCHNEEBAUM: Okay. So that's our contention with
16 respect to interest. Again, if the Court holds that she is
17 entitled to that interest, so be it. We also do not contest, we
18 do not contest that she will be entitled to post judgment
19 interest under 1961 in this case. That is to say, whenever a
20 judgment is entered in this case, then the Treasury bill coupon
21 rate on that day will govern interest that will continue to
22 accrue from that day until the day that she is ultimately paid
23 by Mr. Perles assuming that the case -- the decision withstands
24 appeal. So that's all I wanted to say about interest.
25         The next issue then having shown the Court what goes

# Greenberg Traurig

Steven M. Schneebaum
Tel 202.530.8544
Fax 202.331.3101
schneebaums@gtlaw.com

March 31, 2005

Hon. Alan Kay
United States Magistrate Judge
United States District Court
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Re:   *Perles v. Kagy*, C.A. No. 1:01-cv-105

Dear Judge Kay:

This will follow up on the representations I made during our telephonic status call earlier this afternoon. The question addressed here is the calculation of interest on the funds held in escrow by Patton Boggs. This refers to the *Flatow* part of Ms. Kagy's prospective judgment.

Judge Huvelle's Order of November 29, 2004, directed that prejudgment interest be calculated from January 17, 2001, "to date." I am assuming that, given that the interest in question is prejudgment, and that her Order is not a "judgment" as that term is used in the Rules, she intended that the prejudgment interest not to end on November 29, but to continue to accrue at the actual escrow funds rate until the date of judgment.

Although the payment to Mr. Perles was dated January 17, 2001, Patton Boggs deposited the funds on January 31. It took a few days to decide how to proceed and then to set up the necessary paperwork. Obviously, the actual interest received during that period of two weeks was zero.

The table I presented to the Court on January 25 was current through December 22, 2004, because that is the date on which the Patton Boggs account was closed (I had left that firm in mid-October). The balance was then deposited in a Greenberg Traurig escrow account, which has accrued interest since that date at the rate of 1.30% per annum.

Thus, in the submission of Perles, P.C., when Your Honor resolves all open *quantum meruit* issues, a final order can be issued calling for payment of a sum certain: $1,339,675.35, plus interest at 1.30% from December 23, 2004 until the date of judgment with respect to *Flatow*, plus whatever may be the award in the *Eisenfeld and Duker* portion of the case. This will vastly simplify the process of noticing, briefing, and deciding the appeal.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DENVER
FORT LAUDERDALE
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
PHILADELPHIA
PHOENIX
SILICON VALLEY
TALLAHASSEE
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
WILMINGTON
ZURICH

Greenberg Traurig, LLP | Attorneys at Law | 800 Connecticut Avenue, NW | Suite 500 | Washington, D.C. 20006
Tel 202.331.3100 | Fax 202.331.3101                              www.gtlaw.com

Page 219

Hon. Alan Kay
March 31, 2005
Page 2

For ease of reference, below is another copy of the table set out in my January 25 letter, which shows the calculation of interest and the crediting of that interest to the account. I have just now faxed to Mr. Sher the document that I got from Patton Boggs, according to which Riggs Bank states the interest rate that the Perles funds accrued during the entire time they were on deposit. I trust that he will find it acceptable.

### Interest on the Kagy Breach of Contract Claim

| Start date | Beg. balance | End date | No. of days | Rate | Acc. interest | End balance |
|---|---|---|---|---|---|---|
| 1/31/01 | $1,261,745.71 | 9/30/01 | 242 | 2.60% | $21,750.42 | $1,283,466.13 |
| 10/01/01 | $1,283,466.13 | 11/30/01 | 61 | 2.00% | $4,289.94 | $1,287,756.07 |
| 12/01/01 | $1,287,756.07 | 11/30/02 | 365 | 1.50% | $19,316.34 | $1,307,072.41 |
| 12/01/02 | $1,307,072.41 | 9/30/03 | 304 | 1.50% | $16,329.45 | $1,323,401.86 |
| 10/01/03 | $1,323,401.86 | 9/30/04 | 366 | 1.00% | $13,234.02 | $1,336,635.88 |
| 10/01/04 | $1,336,635.88 | 12/22/04 | 83 | 1.00% | $3,039.47 | $1,339,675.35 |

I will be glad to address any concerns of the Court with respect to the foregoing.

Yours sincerely,

*[signature]*
Steven M. Schneebaum

Cc: David Sher, Esq.