IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS F. FAY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STEVEN R. PERLES, )<br>)<br>and )<br>)<br>GREENBERG TRAURIG, LLP, )<br>)<br>Defendants. ) | Civil No. 1:05CV01209 |

## AFFIDAVIT OF STEVEN R. PERLES

I, Steven R. Perles, being over eighteen years of age and competent to testify in a court of law, do hereby depose and state as follows

1. I am a member in good standing of the Bar of the District of Columbia. I am currently in private practice and operate my own law practice known as The Perles Law Firm, P.C., located at 1146 19th Street, N.W., Washington, D.C. 20036.

2. Since 1986, my law practice has been devoted to representing the families of American victims of terrorist attacks and other international outlaw conduct abroad in lawsuits against foreign governments who have sponsored and/or provided material support to the perpetrators of such conduct.

3. In order to assist my law practice with the representation of such individuals, I associated myself with Thomas F. Fay, Esq. Mr. Fay provided professional services concerning various aspects of those cases including, but not limited to, proof of

damages. Mr. Fay operates his own law practice in the District of Columbia known as Thomas F. Fay, P.C.

4. In or about 1996, the Perles and Fay law practices entered into a partnership arrangement for the purpose of representing persons qualified to bring claims under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605 *et seq.*, and we labeled our partnership agreement the "Fay and Perles, FSIA Litigation." On February 26, 2001, this Partnership Agreement was reduced to writing.

5. To assist the Perles/Fay partnership in collecting funds relating to judgments entered in connection with the terrorism cases, the partnership hired a number of attorneys to work with experts to calculate damages and offer proof at evidentiary hearings relating to damages. Under the terms of the Partnership Agreement and through course of dealing, Mr. Fay and I agreed to and did bear an equal share in the fees owed to experts, investigators, and attorneys who provided professional services in connection with various terrorism cases.

6. For example, in the matter known as *Peterson, et al. v. The Islamic Republic of Iran*, Civil No. 1:01CV02094 (RCL) (D.D.C. 2001) ("*Peterson* litigation"), the partnership has hired Mr. John W. Karr, Esq., Plaintiff's counsel in the present proceeding, to assist the partnership in proving damages in connection with the judgment entered as to liability entered in that case on May 30, 2003.

7. The *Peterson* litigation was brought on behalf of some 850 individual family members and estates of the 241 deceased Marines who were the victims of 1983 suicide bombing of the Marine barracks in Beirut, Lebanon. The action also includes a modest number of survivors of the attack and their immediate family members. Due to

the enormity of this litigation, the partnership retained approximately 15 damages attorneys in or around 2003, like Mr. Karr, and assigned each of them a block of approximately 10-15 families. Similar to the other damages attorneys involved in the *Peterson* litigation, Mr. Karr was responsible for proving damages on behalf of the assigned family members the were assigned to him by the partnership.

8. In that regard, Mr. Karr's job duties included, but were not limited to, interviewing witnesses, preparing the families for damages hearings before special masters, and attending evidentiary damage hearings before special masters, and otherwise assisting experts in calculating damage figures to be proven at evidentiary hearings relating to that litigation.

9. In connection with his legal services in the *Peterson* litigation, Mr. Karr entered into a written fee agreement with the partnership under which he is entitled to receive approximately 3% of the damages that are awarded to and collected by the block of families that he represented on behalf of the partnership when those funds are made available by the U.S. Treasury Department.

10. Special masters assigned to review and weigh evidence relating to potential damage awards in the *Peterson* litigation have already issued reports finding that the average damage award per family member will be approximately $20 million. These reports are before Judge Lambreth for final review and/or modification. Accordingly, if Mr. Karr represents 10 families, he stands to earn approximately $6

3

million which will be paid out of the funds received by the partnership from the *Peterson* litigation.[1]

11. Pursuant to the Perles/Fay Partnership Agreement, I am responsible for my co-equal share of the fee earned by Mr. Karr for his work in the *Peterson* litigation. Indeed, this arrangement is consistent with the terms of the Partnership Agreement and the parties' course of dealing as Mr. Fay and I have agreed to and did pay our equal shares of the fees owed to various other professionals retained in connection with the terrorism cases.

12. Mr. Karr works for the partnership, receives instructions from the partnership, and is required to provide reports concerning the status of the *Peterson* litigation as it relates to the Plaintiff family members assigned to him by the partnership. Given his work with the Perles/Fay Partnership, Mr. Karr has firsthand knowledge of the terms of the agreement between the partners to share equally in the fees and expenses of the professionals we retained to perform various services. In that regard, Mr. Karr and the other damage attorneys may be called as fact witnesses in this litigation to offer testimony concerning their knowledge as to the contractual and/or working arrangement between the parties and/or any discussions that Mr. Karr may have had with Mr. Fay regarding the same.

13. At no time prior to the initiation of this lawsuit, did Mr. Karr disclose to me his intention to represent Mr. Fay in this matter or attempt to secure my consent to such representation. I did not know of Mr. Karr's role in this proceeding until after being served with a copy of the Complaint filed by Mr. Fay.

---

[1] The $6 million figure is calculated as follows: 10 family members multiplied by $20 million equals $200 million. As Mr. Karr's fee arrangement is for 3% of this total amount under this example, he would earn $6 million.

4

14. Further Affiant sayeth not.

## AFFIRMATION

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY AND UPON PERSONAL KNOWLEDGE THAT THE CONTENTS OF THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT.

Date: 31 July 07     By: _____
                          Steven R. Perles, Esq.

State of _District of Columbia_

County of _District of Columbia_

Personally appeared before me, a Notary Public, in and for said county and state, on this 31st day of July, 2007, the within named Steven R. Perles, known to me, or satisfactorily proven, to be the person whose name is subscribed to the within the instrument and who acknowledges that he executed the same for the purpose therein contained.

_____
Notary Public

Print Name: Keyauna Chase

My Commission Expires:
October 14, 2011

F:\Home\THenneberry\Perles, Steven\Motion to Disqualify\Perles Affidavit V5 - CLEAN.DOC

5