United States District Court for the District of Columbia

| | |
|---|---|
| Thomas Fortune Fay, | ) |
| | ) Case No. 1:05-01209 (PLF) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Steven R. Perles, and | ) |
| Greenberg Traurig, LLP, | ) |
| | ) |
| Defendants. | ) |

**Memorandum Opposing Motion to Disqualify Counsel**

Thomas Fortune Fay, by counsel undersigned, opposes the motion of Steven Perles to disqualify plaintiff's counsel, John W. Karr.

The District of Columbia Court of Appeals has observed that "Disqualification of an attorney is a serious step. Disqualification may severely affect the monetary interest and the reputation of an attorney. Moreover, disqualification negates a client's right to freely choose his counsel." *Derrickson v. Derrickson*, 541 A.2d 149, 152 (D.C. 1988). As the court said in *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir. 1978), cited with approval in *Derrickson*, "there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters [courts] must be solicitous of a client's right freely to choose his counsel."

Mr. Perles' motion is based in the main on supposition, and on a very few facts which he has distorted beyond recognition so that they might be wedged into the rubrics of Rule 1.7 of the Rules of Professional Conduct. A motion to disqualify cannot be

based on such a tenuous foundation.  "Like any exercise of discretion, however, a court's ruling either way must rest on 'valid reasons' and a 'specific factual predicate.'"  *In re Estate of Tran Van Chuong*, 623 A.2d 1154, 1160 n.12 (D.C. 1993) (*en banc*) (quoting *Johnson v. United States*, 398 A.2d 354, 364 (D.C. 1979)).

    The Court cannot but question Mr. Perles' delay in filing this motion (Mr. Karr has been representing Mr. Fay for over two years, in this Court and in the Court of Appeals).   More than two decades ago, this Court took notice of the rise of disqualification motions as "increasingly popular 'tools of the litigation process, being used . . . . for purely strategic purposes. . .'  Accordingly, courts have in recent years become more and more skeptical of motions to disqualify counsel, and they now approach them with cautious scrutiny."  *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 28 (D.D.C. 1984), citing *Rice v. Baron*, 456 F. Supp. 1361, 1368 (S.D.N.Y. 1978); *Allegaert v. Perot*, 565 F.2d 246, 251 (2d Cir. 1977).

    The motion to disqualify should be denied promptly, and Messrs. Fay and Karr should be compensated for having been required to oppose it.

1. <u>Mr. Karr Has Not Represented Mr. Perles or His Partnership at Any Time</u>

    Mr. Perles takes great liberties, to say the least, in his descriptions of relationships with other lawyers.  Reckless might be the more fitting description.  According to Mr. Perles, he "retained" the professional services of Thomas F. Fay to handle certain aspects of the terrorism cases which became a practice focus of both men.  In fact, Mr. Perles and Mr. Fay formed a partnership for the practice of law.  Mr. Perles never "retained" the services of Mr.  Fay.

    Mr. Perles contends that the partnership of Fay and Perles "*hired* approximately

15 damages attorneys, like Mr. John W. Karr, Esq., Plaintiff's counsel in the present proceeding." In reality, the partnership entered into agreements with attorneys, including Mr. Karr, to represent not Fay and Perles, but their *clients*, in developing the evidence to support the individual damage cases in the *Peterson* case. The agreement neither provides not suggests that Mr. Karr became an attorney for the Fay and Perles partnership, nor that he was hired by Fay and Perles as an employee ( for example, an associate attorney). The agreement provided that Mr. Karr would receive no compensation save for a small percentage of the contingent fee, and contingent expenses, payable only when monies were recovered on behalf of the clients, U.S. Marines and their families.

Mr. Perles contends that in representing Mr. Fay, Mr. Karr "simultaneously represent[s] the interests of the partnership" of Fay and Perles, and that this adversely impacts Mr. Karr's "representation of the partnership" in the *Peterson* litigation because "Mr. Karr cannot discern what positions on that partnership issue reflect the partnership's true interest." The "issue" to which Mr. Perles refers is, of course, whether Mr. Fay agreed to bear half the cost of litigation between Mr. Perles and his former employee, Anne-Marie Kagy, arising not out of the *Peterson* litigation but out of the earlier *Flatow* case.

The vice in this argument is that Mr. Karr does not represent the partnership in the *Peterson* litigation, or for any other purpose. Rule 1.7(b) provides:

> (b) Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:
>
> > (1) That matter involves a specific party or parties, and a position to be taken by that client in that matter is adverse to a position taken or to be taken by

another client in the same matter, even though that client is unrepresented or represented by a different lawyer;

(2) Such representation will be or is likely to be adversely affected by representation of another client;

(3) Representation of another client will be or is likely to be adversely affected by such representation; or

(4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.

The only portions of Rule 1.7(b) which could be implicated in this case are sub-section (3) (representation of another *client*) or sub-section (4) (impact of the lawyer's outside responsibilities or interests on the representation of the client in the instant case). "The existence of an attorney-client relationship," *Derrickson*, *supra*, or a financial interest in another entity, *see Palumbo v. Tele-Communications*, 157 F.R.D. 129, 132 (D.D.C. 1994), are the concerns of this rule.[1]

No argument can be made, nor has one been made, that Mr. Karr would not serve the interests of his clients in the *Peterson* case, the victims of the 1983 Marine Barracks bombing, because of the position of his with respect to funding litigation between Mr. Perles and Anne-Marie Kagy. Mr. Karr represents clients of the Fay/Perles partnership for limited purposes, and his loyalty and zeal in that representation have nothing to do with an internal dispute between Messrs. Perles and Fay over partnership finances. He does not represent the partnership in any capacity at all.

---

[1] In *Palumbo*, disqualification was ordered because the lawyer, who had recently been an owner of the Baltimore cable system and director of its general partner, was held to be "essentially suing himself").

In the context of a motion to disqualify counsel, the Second Circuit was guided by the "longstanding rule that, when dealing with ethical principles . . . we cannot paint with broad strokes. The lines are fine and must be so marked." *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir. 1977). Mr. Perles urges this Court to use a broad brush to hold that Mr. Karr, by agreeing to assist the Fay/Perles partnership with a case by becoming counsel for a limited purpose to several of the partnership's clients, will err either in his loyalty to Mr. Fay, or to the Fay/Perles partnership. This argument requires as its predicate that Mr. Karr owes the partnership duties beyond the competent and zealous representation of the firm's clients.

2. Mr. Karr Is Not a Necessary or a Likely Witness

As Mr. Perles has asserted, the Fay/Perles partnership enlisted the aid of approximately 15 lawyers to serve as co-counsel to develop evidence of damages of the partnership's clients in the *Peterson* litigation. A number of these lawyers have participated much more closely and regularly in the preparation of the *Peterson* case, and have worked with the partnership on other matters. Some of them have shared offices with the partnership, at 601 Pennsylvania Ave., N.W., Suite 900, or at 501 G St., N.W. Any of these lawyers might be called to testify about the relations between Mr. Fay and Mr. Perles, or about arrangements for the representation of the *Peterson* clients. Any of them would likely know more about these matters than Mr. Karr.

Further, Mr. Perles has made no showing, nor offered so much as a suggestion, how Mr. Karr might one day give necessary testimony in the dispute between Mr. Perles and Anne-Marie Kagy, or in Mr. Perles' dispute with Mr. Fay. To his recollection, Mr. Karr met Mr. Perles only once, in connection with a meeting in New York with

5

representatives of the American Jewish Committee, to which each had been invited independently for discussions about separate cases in which each represented parties. (Karr Decl., ¶3.)  Mr. Karr has known Mr. Fay for approximately 30 years, and has represented him for over the past decade in a variety of matters. (Karr Decl., ¶2.)  Mr. Karr knows nothing of the Fay/Perles partnership other than what he has learned in the course of representing Mr. Fay.  And as a "damages attorney" in the *Peterson* case, Mr. Karr did not represent Mr. Perles or the Fay/Perles partnership.  (Karr Decl., ¶5.)

> Rule 3.7 provides:
>
> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) The testimony relates to an uncontested issue;
>
> (2) The testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) Disqualification of the lawyer would work substantial hardship on the client.

Under Rule 3.7, disqualification is possible only if the lawyer is likely to be a necessary witness.  In this case, no potential testimony by Mr. Karr has been, or can be, identified as necessary; indeed, no potential testimony has been identified at all.  Moreover, Rule 3.7 disqualification is not absolute, because sub-section (3) provides an exception where disqualification would work a substantial hardship on the client.  Mr. Perles' attempt to show the necessary predicate for Rule 3.7 disqualification fails, and must be rejected.

3. Mr. Karr Possesses No Confidences of Mr. Perles

Mr. Karr has never represented Mr. Perles or the Fay/Perles partnership, and met Mr. Perles only once, on a train trip to New York.  On that trip, conversation between the

two did not go beyond pleasantries, and they represented different interests of different clients.

Mr. Perles has offered not more in his affidavit than his speculation that "Given his work with the Perles/Fay partnership, Mr. Karr has firsthand knowledge of the terms of the agreement between the partners to share equally in the fees and expenses of the professionals we retained to perform various services." In short, Mr. Karr could be called to authenticate the agreement he entered into to represent certain clients of the partnership, not the partnership itself. Mr. Perles cannot venture to suggest that Mr. Karr had learned anything of the dealings between Messrs. Fay and Perles prior to his representation of Mr. Fay, nor that he (Perles) had ever provided any information to Mr. Karr, because no such communications took place.

In sum, the instant action bears no relationship to the *Peterson* litigation. In the related action, Mr. Perles and Anne-Marie Kagy have sued one another over the latter's claim for legal fees for work she did on the *Flatow* case. In the instant action, Mr. Fay has sued Mr. Perles to recover $1,000,000 he owns and which was deposited in a trust account that Mr. Perles now proposes to use to pay his legal fees in the *Kagy* case without Mr. Fay's consent. The arrangement between Mr. Karr and Mr. Fay bears no relation to the *Flatow* case, or to Ms. Kagy's claim. The notion that Mr. Karr has learned of any agreement to "share equally in the fees and expenses" of professionals because he is co-counsel in the *Peterson* case is simply wrong. Nothing about his agreement with the partnership describes the expense sharing arrangements between the partners, nor has any such information come to his attention except through his representation of Mr. Fay, of which Mr. Perles has known from its inception. It scarcely bears noting that a lawyer

engaged by one of two partners cannot be disqualified from representing his client in a dispute with the other partner by virtue of having received information in the course of that representation.

4. Mr. Perles' Motion is Late and Prejudicial

The facts, such as they are, on which Mr. Perles bases his motion have been known from day one of this litigation. Now, after Mr. Karr has represented Mr. Fay in proceedings to intervene in August, 2005, and in the Court of Appeals, and after Mr. Karr has spent many hours analyzing the facts and developing the case on behalf of Mr. Fay, Mr. Perles has moved to disqualify him. Mr. Perles and his counsel can hardly be considered naive or inexperienced. It defies credulity that they waited until now to raise the issues before the Court. Such delay threatens real prejudice to Mr. Fay, both in depriving him of his counsel of choice and of counsel who has invested a great deal of time and effort in developing his case. It also suggests the sort of "purely strategic purpose" that this court and the Second Circuit warned of more than twenty years ago.

5. Conclusion

Mr. Perles' motion is a transparent strategic ploy, and scarcely more than a sham. It is characterized by incomprehensible arguments.[2] The tortured thinking reflected in such arguments, written by highly competent counsel, strongly suggests that there was no basis in fact or law for the motion. The notion that co-counsel might be disqualified from

---

[2] *E.g.*, the argument that "representation of Mr. Fay in this proceeding will adversely impact Mr. Karr's representation of the partnership in the Peterson litigation because by virtue of the parties' disagreement over the terms of the partnership agreement, Mr. Karr cannot discern what positions on that partnership issue reflect the partnership's true interest." (Motion, at 10.)

representing one law firm partner against another by virtue of their joint representation of other clients is taken from whole cloth.  Given the judicial admonitions about the sensitivity of disqualification motions, the scrutiny to which they must be subjected, and the clear requirement that they be based on a sufficient factual predicate and not on supposition, merit an award of attorneys' fees for opposing this motion.  Counsel has worked over four and one-half hours in preparing this memorandum and supporting documents, at the rate of $325 per hour.[3]

      For the foregoing reasons, Mr. Fay respectfully opposes the motion to disqualify, and asks that the Court entertain an application for an award of fees for the work of his lawyers in opposing it.

                                      Respectfully submitted,

                                      /s/   **Theodore S. Allison**
Theodore S. Allison (Bar No. 441089)
KARR & ALLISON, P.C.
1300 19th Street, N.W., Suite 402
Washington, D.C.  20036

Telephone (202) 331-7600

Attorneys for Plaintiff

---

[3] Counsel has been practicing law for 23 years, and his *Laffey* rate is $425.00.  (*See Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985).)

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2007, true copies of the foregoing reply memorandum were served on the interested parties by electronic means: Douglas Bregman and Edward P. Henneberry, Bregman, Berbert, Schwartz & Gilday, PLLC, 7315 Wisconsin Ave., Bethesda, MD; Eric C. Rowe, Greenberg Traurig LLP, 800 Connecticut Ave., NW Suite 500, Washington, DC 20006.

                                          /s/ Theodore S. Allison
                                          Theodore S. Allison