IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS F. FAY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 1:05CV01209 |
| ) | |
| STEVEN R. PERLES, ) | |
| ) | |
| and ) | |
| ) | |
| GREENBERG TAURIG, LLP, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT STEVEN R. PERLES' MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

Defendant, Steven R. Perles ("Perles"), by and through his undersigned counsel, and pursuant to Rule 7 of the Federal Rules of Civil Procedure, hereby moves to disqualify Mr. John Karr, as Plaintiff's counsel in this action, and in support thereof states as follows:

**I.      BACKGROUND**

Since 1996, Mr. Perles, through his law practice known as the Perles Law Firm, P.C., has primarily devoted his practice to representing the victims of terrorist attacks in lawsuits against foreign governments who have provided material support to the perpetrators of such conduct. Indeed, Mr. Perles was intimately involved in the drafting of new legislation under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605 *et. seq.*, to allow the victims of terrorist attacks to file suit in federal courts in the

United States against nations that sponsor and/or provide any form of assistance to facilitate acts of terrorism against American citizens abroad.

To assist Mr. Perles in representing persons qualified to the bring claims under FSIA, he retained the professional services of Plaintiff Thomas F. Fay ("Fay") to handle the intricate discovery aspects of those cases. At that time, Mr. Fay operated his own law practice in the District of Columbia known as Thomas F. Fay, P.C.[1] In or about 1997, the Perles and Fay law practices entered into a partnership arrangement for the limited purpose of prosecuting claims under FSIA and labeled their partnership agreement "Fay and Perles, FSIA Litigation." On February 26, 2001, the Partnership Agreement was reduced to writing. *See* Partnership Agreement, attached hereto as **Ex. A**. The partnership leased space at 501 G Street, N.W., Washington, D.C. 20001, where it established its central business location.[2] Mr. Fay currently maintains his law practice at that address.[3]

The partnership arrangement was mutually advantageous for both law practices. Mr. Perles' primary area of expertise involved developing creative ways to bring and maintain lawsuits against foreign governments that aided and abetted terrorist attacks against American citizens abroad. Mr. Fay, on the other hand, focused on the development of facts necessary to bring these cases to trial. Due to the scale and complexity of these FSIA lawsuits, the partnership hired a number of attorneys to work

---

[1] Since in or about 2001, Mr. Fay has interchangeably referred to his law practice as either "Thomas F. Fay, Attorney-at-Law," or "Thomas F. Fay, P.A." Under either label, Mr. Fay has always maintained his law office in the District of Columbia where it operates today.

[2] Due to the inherently sensitive subject matter of the types of cases that Messrs. Perles and Fay handled in connection with lawsuits brought under FSIA, the partnership receives its mail at 601 Pennsylvania Avenue, N.W., Washington, D.C. 20004.

[3] Although Mr. Perles' name remains on the lease for that office space, Mr. Fay, by fiat, has taken over the space for his law practice and pays all of its rent.

with experts to calculate damages upon completion of the liability phase of a lawsuit. Under the terms of the Partnership Agreement and through course of dealing, Messrs. Perles and Fay agreed to and did bear an equal share in the fees owed to experts, investigators, and attorneys who provided professional services in connection with their terrorism cases.[4]  *See* Tr. Trans. at pp. 96, 104, attached hereto as **Ex. B**.

A poignant example of this equal division of professional fees occurred in the matter known as *Peterson, et al. v. The Islamic Republic of Iran, et al.*, 264 F. Supp.2d 64 (D.D.C. 2003) ("Peterson litigation").  In this case, the partnership represents 850 individual family members and estates of the 241 servicemen killed in connection with the 1983 suicide bombing attack of the Marine barracks in Beirut, Lebanon.  *See* Perles Aff. at ¶¶ 6-7, attached hereto as **Ex. C**.  Following entry of judgment as to liability in favor of the Plaintiff family members by this Court on May 30, 2003, the partnership hired approximately 15 damages attorneys, like Mr. John W. Karr, Esq., Plaintiff's counsel in the present proceeding, to assist the partnership in proving damages in connection with the judgment entered in that case. (*Id.*).  The partnership assigned each of these attorneys a block of approximately 10-15 family members.  Similar to the other damage attorneys involved in the *Peterson* litigation, Mr. Karr is responsible for proving damages on behalf of the assigned family members that he represents on behalf of the partnership. (*Id*. at ¶ 7).

As part of his job duties in connection with proving damages in the *Peterson* litigation, Mr. Karr was responsible for, among other things, interviewing and/or deposing witnesses, attending discovery disputes before special masters, filing discovery-

---

[4]  This practice and custom is evident in Mr. Fay's agreement to bear his co-equal share of the legal fees incurred in connection with the *Kagy* litigation and by wiring of his co-equal share of $2,000,000.00 to Patton Boggs, LLP's escrow account.

3

related motions with the Court, and otherwise assisting experts in calculating damage figures to be proven at evidentiary hearings on behalf the plaintiffs. (*Id.* at ¶ 8). Simply put, Mr. Karr works for the partnership, receives instructions from the partnership, and is required to provide reports concerning the status of the *Peterson* litigation as it relates to the Plaintiff family members assigned to him by the partnership. (*Id.* at ¶ 12). Given his work with the Perles/Fay Partnership, Mr. Karr has firsthand knowledge of the terms of the agreement between the partners to share equally in the fees and expenses of the professionals we retained to perform various services. (*Id.*).

In connection with his legal services, Mr. Karr entered into a written fee agreement with the partnership which provides that he is entitled to receive approximately three percent (3%) of the damages that are awarded and collected by the block of families that he represented on behalf of the partnership when those funds are made available by the U.S. Treasury Department from the frozen assets of The Islamic Republic of Iran.  At a minimum, Mr. Karr is estimated to receive approximately $6 million of which Mr. Perles is contractually obligated to pay one-half of this fee.  In brief, Mr. Karr works for and will ultimately receive compensation for his legal services from the partnership. (*Id.* at ¶¶ 10-11).

Special masters assigned to review and weigh the evidence relating to potential damages evidence presented in the *Peterson* litigation have already issued reports finding that the average damage award per family member will be approximately $20 million. These reports are currently before Judge Lambreth for final review and/or modification.

4

Accordingly, if Mr. Karr represents 10 family members, he stands to earn approximately $ 6 million which are paid out of the funds received by the partnership.[5]  (*Id.* at ¶ 10).

At no time prior to the initiation of this lawsuit, did Mr. Karr disclose to Mr. Perles his intention to represent of Mr. Fay in this matter or attempt to obtain Mr. Perles' consent to such representation.  Mr. Perles had no knowledge of Mr. Karr's role in this proceeding until Mr. Fay filed and served his Complaint upon him.  (*Id.* at ¶ 13).

## II. LEGAL ARGUMENT

### A. Mr. Karr's Dual Representation Of Plaintiff In This Proceeding And The Perles/Fay Partnership In Other Litigation Creates An Actual Conflict Of Interest Which Requires His Disqualification.

It is well-settled under District of Columbia law that a lawyer for a partnership represents the entity, not its individuals partners, and may only serve individual partners "… if the lawyer is convinced that differing interests are not present."  *See, e.g.*, *Griva v. Davison*, 637 A.2d 830, 838 (D.C. 1994).  In fact, this ethical constraint is codified in the D.C. Rules of Professional Conduct.  *See* D.C. Rule of Prof. Conduct 1.7, Cmt. [13] ("[a] lawyer who represents a corporation, partnership … or other organization-type client, is deemed to represent that specific entity, and not its shareholders, owners, partners, members, or other constituents.").[6]

---

[5] The $6 million figure is calculated as follows: 10 family members multiplied by $20 million equals $200 million.  As Mr. Karr's fee arrangement is for 3% of this total amount under this example, he would earn $6 million.

[6] Rule 1.7(b) provides, in relevant part: "Except as otherwise permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if: (1) That matter involves a specific party or parties, and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter, even though that client is unrepresented or represented by a different lawyer; (2) Such representation will be or is likely to be adversely affected by representation of another client; (3) Representation of another client will be or is likely to be adversely affected by such representation."

An attorney may only represent both a partnership and one of its partners, where such representation "would be likely to involve . . . representing differing interests, only if (1) it is obvious that the attorney can adequately represent the interests of each and (2) each consents to the representation (3) after full disclosure." *See Griva,* 637 A.2d at 838 (citations omitted). Moreover, a lawyer is prohibited from representing two clients with inimical interests because the simultaneous representation constitutes a breach of the lawyer's fiduciary duties owed to both clients. *See, e.g., BCCI Holdings, S.A. v. Clifford*, 964 F. Supp. 468, 481-82 (D.D.C. 1997) (plaintiffs stated a valid claim against their attorneys based on their dual representation of corporate parties with adverse interests in connection with the acquisition of a bank by a bank holding company).

Applying former Disciplinary Rule 5-105, the D.C. Bar Ethics Commission addressed the precise issue of a lawyer's dual representation of an association and one of its members:

> The attorney cannot represent both the association and one of its members: (a) if the attorney's independent professional judgment in behalf of either the association or the member "*will be or is likely to be adversely affected*" by his [or her] representation of the other; or (b) if representing both the association and one of its members "would be likely to involve him [or her] in representing differing interests."

*See* D.C. Bar Ethics Comm. Op. No. 159 (1985) (citing 113 Daily Wash. L. Rptr. 202 at 2120 (1985)) (emphasis added). Thus, even where there has been full disclosure and consent, situations exist where representation of a partnership and one of its partners will be ethically proscribed. *See, e.g., Clay v. Doherty*, 608 F. Supp. 295, 302 n. 5 ("If a reasonable observer perceives a likelihood of adverse effect under [former] DR 5-105(B), then, by definition, the 'obviously adequate' prong of [former] DR 5-105 (C) test cannot

6

be satisfied.").[7]  Indeed, this Court has held that "it is not improper for a court to disqualify an attorney merely because it cannot predict with certainty whether a potential conflict may turn into a full-blown conflict at trial." *United States v. Childress*, 731 F. Supp. 547 (D.D.C. 1990).

This ethical prohibition is even more absolute where a lawyer simultaneously represents a small partnership and one of its individual partners in matters involving partnership issues. *See Griva, supra* (reversing the lower court and holding that material issues of fact existed as to whether Rules 1.7 and 1.13 prohibited a law firm from jointly representing a small partnership and two of its partners against a third partner in various business matters involving the partnership); ABA Comm. on Ethics and Prof. Resp., Formal Op. No. 361 (1991) ("In small partnerships, as with closely held corporations, it is more difficult to distinguish between representation of the entity and of its individual owners.").

Applying these principles, Mr. Karr's joint representation of Plaintiff in this matter and of the partnership in the *Peterson* litigation creates an outright conflict of interest which requires his immediate disqualification as Mr. Fay's attorney in this proceeding. At the outset, it must be pointed out that Mr. Karr failed to disclose to or obtain Mr. Perles' consent to this representation as required by D.C. Rule of Prof. Conduct 1.7(c). This failure alone is sufficient to disqualify Mr. Karr as Mr. Fay's counsel in this action. *See Avianca, Inc. v. Correia*, 705 F. Supp. 666, 679-80 (D.D.C. 1989) (attorney providing dual representation violated the disciplinary rules by failing to

---

[7] Former DR 5-105(B) provides that: "A lawyer shall not continue multiple employment if the exercise of his [or her] independent professional judgment on behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him [or her] in representing differing interests, except to the extent permitted under DR 5-105 (C)."

7

seek informed consent of the clients involved). In addition, the attorney-client relationship between Messrs. Karr and Fay, on the one hand, and Mr. Karr and the partnership, on the other hand, creates an unavoidable conflict of interest because he is representing one of partnership's individual partners in a suit against the other partner involving business affairs relating to the partnership.

As a result of this dual representation, Mr. Karr has learned of confidential information about Mr. Perles which he otherwise would not have possessed or had access to but for his representation of the partnership in the *Peterson* litigation. On this basis Mr. Karr should be disqualified because "the risk of this potential conflict of interest burgeoning into an actual conflict during trial is simply too great to be ignored." *See Childress*, 731 F. Supp. at 551 (granting defendant's motion to disqualify co-conspirator's defense counsel where counsel learned confidential information about the defendant through prior representation); *Griva*, 637 A.2d at 840 ("a lawyer for an entity cannot represent constituents of an entity when such representation *may prejudice* the interests of that entity and thus a dispute between the constituents makes it impossible to know what the entity's interests are.").

Finally, Mr. Karr's dual representation of the partnership and Mr. Fay could create a situation whereby Mr. Perles' interests in the partnership are adversely affected as a result of Mr. Karr's breach of his fiduciary duties owed to the partnership and its individual partners. In that regard, and taking into consideration the small size of the partnership, Mr. Perles himself could be considered a client of Mr. Karr. *See* ABA Formal Op. No. 361, *supra*. Concomitantly, any conflict in Mr. Karr's fiduciary

obligations reflected in those representations would cover any possible conflict that might arise if Mr. Perles is considered an individual client of his law firm.

### B. Rule 1.7(b) Precludes Mr. Karr From Representing Plaintiff In This Proceeding Because The Position Taken By Plaintiff In This Action Is Materially Adverse To The Interests Of The Partnership Which He Also Represents.

D.C. Rule of Prof. Conduct 1.7(b) states in relevant part:

> Except as otherwise permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if: (1) That matter involves a specific party or parties, and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter, even though that client is unrepresented or represented by a different lawyer; (2) Such representation will be or is likely to be adversely affected by representation of another client; (3) Representation of another client will be or is likely to be adversely affected by such representation.

The position asserted by Mr. Fay in this litigation is adverse to the position taken by one of his partners in the same matter and by the partnership in its other business affairs. Mr. Perles contends that he does not owe Mr. Fay the money he seeks to recover in this litigation because the parties agreed to bear an equal share in the fees owed to experts, investigators, and attorneys who provided professional services in connection with their terrorism cases. (Tr. Trans. at pp. 96, 104). Consistent with this agreement, Mr. Fay agreed to bear his co-equal share of the legal fees incurred in connection with the *Kagy* litigation and wired his co-equal share of $1,000,000.00 to Patton Boggs, LLP's escrow account.

Curiously, Mr. Fay disavows this agreement and has retained Mr. Karr in this litigation to advocate his changed position. To the extent that the parties' respective positions are at odds with another, Mr. Karr should not be permitted to represent Mr. Fay in a suit against his only other partner, Mr. Perles, and simultaneously represent the

9

interests of the partnership. Representation of Mr. Fay in this proceeding will adversely impact Mr. Karr's representation of the partnership in the *Peterson* litigation because by virtue of the parties' disagreement over the terms of the Partnership Agreement, Mr. Karr cannot discern what positions on that partnership issue reflect the partnership's true interest. In short, the interests of the partnership and Mr. Fay may diverge and prove inimical.

        **C.**      **Rule 3.7 Requires Disqualification Of Plaintiff's Counsel Because Mr. Karr Is Likely To Be Called As A Witness At Trial.**

D.C. Rule of Professional Conduct 3.7 provides that:

> (a) A lawyer shall not act as an advocate at trial in which the lawyer is likely to be a necessary witness except where: (1) The testimony relates to an uncontested issue; (2) The testimony relates to the nature and value of legal services rendered in the case; or (3) Disqualification of the lawyer would work substantial hardship on the client.

This prohibition has been applied with force by federal courts in this jurisdiction. *See, e.g., Rosen v. NLRB,* 735 F.2d 564, 574-75 (D.C. Cir. 1983) (no waiver possible where attorney was only individual capable of rebutting arguments made by witnesses for the opposing party); *Council for the Hall Register of Health Serv. Providers in Psychology v. Am. Home Assur. Co.*, 632 F. Supp. 144, 147 (D.D.C. 1985) (disqualification mandatory under ABA Code of Prof. Resp. DR 5-102 (A) where attorney's testimony was necessary); *Groper v. Taft*, 717 F.2d 1415, 1418 (1983) (disqualification was proper where it became clear that attorney who had represented both a closely-held corporation and one of its officers in her individual capacity ought to be called as a witness in litigation to dissolve the corporation).

        One of the core issues involved in this suit concerns the application of the Partnership Agreement as it relates to the parties' contribution of fees paid to any

professionals that they hired in connection with their terrorism cases. Notably, the parties are at odds over whether the terms of the Partnership Agreement require both partners to pay an equal, one-half share towards the professional fees owed to Ms. Kagy in connection with the legal services that she performed in two terrorism cases at issue in the matter known as *Perles, P.C. v. Kagy*, Civil No. 01-0105 (D.D.C. 2001) ("*Kagy* litigation").

Mr. Perles contends that the Partnership Agreement covers the payment of such fees earned by Ms. Kagy. *See* Counterclaim at ¶¶ 11, 21-27, 31. Consistent with that agreement, Mr. Perles contends that Mr. Fay is also obligated to pay one-half of the legal fees incurred by Mr. Perles in connection with the *Kagy* litigation based on the parties' course of dealing and Mr. Fay's own trial testimony:

> [Mr. Perles and I] agreed that the people we owed money to that worked on the case would all be paid without trying to go through a lot of scrambling arithmetic on who paid that expert or whatever," and that "I felt it would be fair for me to throw something in [for Ms. Kagy] because Steve had insisted on paying half the amount we were paying Vic Holm, who would primarily work for me.

(Tr. Trans. at pp. 96, 104). To the contrary, Mr. Fay contends that the Partnership Agreement did not obligate him to pay any portion of the professional fees earned by Ms. Kagy in connection with those legal services or any legal fees incurred in the *Kagy* litigation because she worked exclusively for Mr. Perles' law practice. Thus, there is a disputed issue of material fact concerning the terms of that agreement.

As Mr. Karr worked for the partnership in connection with the *Peterson* litigation, received instructions from both partners, and is entitled to receive one-half of his compensation from Mr. Perles in connection with the legal services that he provided in that litigation, he has first-hand knowledge as to how the Partnership Agreement was to

11

be applied towards the payment of professionals. In that regard, Mr. Karr may be called as a fact witness in this litigation because he can testify as to his understanding as to the terms of the Partnership Agreement and to any statements made by Messrs. Perles and Fay concerning such terms. Accordingly, there is a genuine need for Mr. Karr's testimony because by virtue of his business and/or financial arrangement with the partnership, he has intimate knowledge as to the parties' understanding of their Partnership Agreement and their course of dealing with other professionals.

### III.   CONCLUSION

For all the reasons set forth above, Defendant Steven R. Perles requests this Court to disqualify Mr. Karr as Plaintiff's counsel in the present proceeding.

Respectfully submitted,

BREGMAN, BERBERT, SCHWARTZ
& GILDAY, LLC

By:_____/s/_____
Douglas M. Bregman, Bar No. 218354
Edward P. Henneberry, Bar No. 456202
7315 Wisconsin Avenue
Suite 800 West
Bethesda, Maryland 20814
(301) 656-2707
*Counsel for Defendant Steven R. Perles*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of February, 2008, a copy of the foregoing Motion to Disqualify and Memorandum in Support was served upon the following by first class mail, postage prepaid, and by electronic mail:

>John W. Karr, Esq.
>Karr & Allison
>Suite 300
>1920 N Street, N.W.
>Washington, D.C. 20036
>*Counsel for Plaintiff*
>
>Eric C. Rowe, Esq.
>Greenberg Traurig, LLP
>800 Connecticut Avenue, N.W.
>Washington, D.C. 20006
>*Counsel for Defendant Greenberg Traurig, LLP*

>/s/
>Edward P. Henneberry

F:\Home\THenneberry\Perles, Steven\Motion to Disqualify\Memorandum of Law II.doc